**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) )  Chapter 11 |
| GigaMonster Networks, LLC, *et al.*,[1] | )  Case No. 23-10051 (___) |
| Debtors. | ) )  (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL**
**ORDERS AUTHORIZING THE DEBTORS TO (A) CONTINUE**
**OPERATING CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN**
**PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN**
**EXISTING BUSINESS FORMS, AND (D) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (the "Debtors" or the "Company")

in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby file this motion (the

"Motion") seeking entry of an interim order (the "Interim Order") and a final order (the "Final

Order"), substantially in the forms attached to this Motion as **Exhibit A** and **Exhibit B**, pursuant

to sections 105, 345, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

"Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure

of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"),

(i) authorizing the Debtors to (a) continue operating the Cash Management System (as defined

herein), (b) honor and pay the Bank Fees (as defined herein) in the normal course, and (c) maintain

existing business forms, and (ii) granting certain related relief, as described more fully herein.  In

support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: GigaMonster Networks, LLC (2854); Gigasphere Holdings LLC (0250); GigaMonster, LLC (3014); Fibersphere Communications LLC (0163); and Fibersphere Communications of California LLC (5088). The Debtors' business address is 350 Franklin Gateway, Suite 300, Marietta, GA 30067.

**Jurisdiction**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  The Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2.

**Background**

4.      On the date hereof (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are managing their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner has been appointed in the Debtors' chapter 11 cases, and no committees have been appointed or designated.

5.      The Company develops and deploys universal access networks ("UANs") in multi-family and commercial real estate properties, providing internet, video and other network services to approximately 400 customer properties and nearly 35,000 end-user subscribers.  The Company's differentiated UAN platform enables seamless connectivity across all Internet, mobile,

nonstandard computing devices that connect wirelessly to a network, and smart home devices. Through the use of a common network in a building, the Company is able to provide connectivity solutions such as energy tools, smart door locks, and security systems.  The Company's best-in-class sales & marketing and customer care practices drive strong relationships with property owners and result in top subscriber satisfaction.

6.      The factual background regarding the Debtors, including their historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of Rian Branning in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference.

### Cash Management System

7.      In the ordinary course of business, the Debtors utilize a centralized cash management system (the "Cash Management System") to collect, manage, and disburse funds used in their business.  The Cash Management System is essential to the stability of the Debtors' assets and business objectives, and to maximizing the value of their estates.

8.      As of the Petition Date, the Debtors maintain three (3) bank accounts (the "Bank Accounts") at Regions Bank ("Regions" or the "Bank").  Payments to creditors are made from the Bank Accounts, in a variety of ways, including checks, drafts, wire transfers, credit cards, and automated clearinghouse ("ACH") transfers.  A general diagram of the movement of funds within the Cash Management System is attached hereto as **Exhibit C**, and a summary of bank accounts and a short description of the purpose of each account is attached hereto as **Exhibit D** (the "Bank Accounts").

9.      All funds on deposit in the Debtors' Bank Accounts are insured by the Federal Deposit Insurance Corporation to the extent provided by law.   The Bank is on the Region 3 U.S.

Trustee's list of approved depository institutions. The Debtors do not invest any of their excess cash on hand.

10.    The following is a brief narrative summary of the typical cash flow for the key accounts in the Cash Management System.[2] Further explanation is provided on **Exhibit C** to this Motion:

    a. Deposit Lockbox Account (X8248): The Debtors utilize a deposit lockbox account to accept check and electronic payments from individuals and vendors. The Debtors receive daily deposits and daily reports on what is deposited. On occasion the Debtors receive checks at their PO Box or at their main office address, in which case deposits are made electronically.

    b. Payroll Account (X8272): All payroll transactions are run through the payroll account. The payroll account is a ZBA account in which cash is swept daily.

    c. Operating Account (X8280): All outgoing checks, wires, and ACH payments are made from the operating account. The operating account is a ZBA account in which cash is swept daily.

**Bank Fees**

11.    The Debtors incur certain fees and charges in connection with the ordinary course operation of the Cash Management System, including, without limitation, those fees as specified in the prepetition agreements entered into between the Debtors and the Bank (collectively, the "Bank Fees"). The Bank Fees include account maintenance charges, charges relating to ACH and wire transfers, lockbox and depository service charges, and other customary miscellaneous charges. On average, the Debtors incur approximately $1,700 in Bank Fees per month. In the ordinary course of business and typically on a monthly basis, the Bank charges the Debtors and

---

[2] Pursuant to existing contracts with third parties, including DIRECPATH LLC, regarding DirectTV service the Debtors receive certain cash receipts or make disbursements from the Bank Accounts for amounts due to, or owing from, DIRECPATH LLC. Subject to all of the Debtors' contractual and legal rights, the Debtors seek authorization, in their discretion, to continue to utilize their Cash Management System postpetition for such transactions, consistent with historical practice and will keep detailed accounting records postpetition related to these transactions.

deducts from the appropriate bank accounts certain service charges, and other fees, costs, and expenses. The Debtors believe there is approximately one month's worth of Bank Fees ($1,700) that has accrued prepetition and is outstanding as of the Petition Date. Accordingly, the Debtors seek approval to pay prepetition Bank Fees up to $1,700 and to pay any postpetition Bank Fees and, for the Bank to deduct, any such Bank Fees in the ordinary course when due.

**Business Forms**

12.    The Debtors utilize numerous preprinted business forms in the ordinary course of their business (including, without limitation, letterhead, purchase orders, invoices, and checks), including in connection with their Cash Management System. The Debtors would be required by the United States Trustee (the "U.S. Trustee") under the U.S. Trustee's *Operating Guidelines for Chapter 11 Case* (the "U.S. Trustee Guidelines") to incur the expense and delay of ordering entirely new business forms referencing the Debtors' status as debtors-in-possession absent relief from the Court. To the extent necessary, the Debtors seek authority to use pre-existing business forms without such a reference in order to minimize expense to the estate. The Debtors submit that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtors will likely be aware of their status as debtors-in-possession and, therefore, changing business forms is unnecessary and would be unduly burdensome. In accordance with Local Rule 2015-2(a), to the extent the Debtors exhaust their existing supply of checks, the Debtors will reissue checks with the designation "Debtor-in-Possession" and the corresponding case number.

**Credit Card Program**

13.    As part of the Cash Management System, in the ordinary course of business, Regions provides the Debtors with access to corporate credit cards used by the Debtors' employees pursuant to a corporate credit card program (the "Credit Card Program").  The Credit Card Program is used to provide employees with the ability to cover certain payments for employment-related expenses, such as travel expenses, and other necessary and approved company expenditures.

14.    Employees must obtain prior approval in accordance with company policy before incurring expenses to be paid by the Debtors.  Once an expense is approved, it is submitted to the accounts payable system for payment.  If an employee makes an unauthorized charge through the Credit Card Program, the employee is responsible for the unauthorized charge.  The Debtors, however, remain liable to Regions for payment on account of such charge if the employee does not remit payment.

15.    As of the Petition Date, Regions has issued 50 corporate credit cards under the Credit Card Program.  Debtor GigaMonster Networks, LLC pays all obligations incurred under the Credit Card Program (collectively, such obligations and guarantee of such obligations, the "Credit Card Obligations").  Before the Petition Date, the Debtors incurred Credit Card Obligations in the amount of approximately $80,000 in the aggregate per month.  Postpetition, the Debtors expect to incur approximately $62,000 per month in Credit Card Obligations.

16.    The Credit Card Program is an integral part of the Cash Management System. Continued use of the credit cards by employees for business-related purchasing needs is essential to the continued operation of the Debtors' businesses.  As applicable, and to the extent not otherwise authorized under any order of this Court granting the relief requested in the Wages

Motion,[3] the Debtors seek authority to (a) continue using credit cards and incurring Credit Card Obligations on a postpetition basis pursuant to the Credit Card Program; and (b) honor all past and future Credit Card Obligations of any of the Debtors to Regions and any of its affiliates in connection with the Credit Card Program, in the ordinary course of business on a postpetition basis, including, without limitation, making timely payments on account of any charges that were made under the Credit Card Program both prior to and after the Petition Date.

### Intercompany Transactions and Claims

17.     In the ordinary course of business, the Debtors engage in intercompany transactions ("Intercompany Transactions") with each other, which in turn give rise to intercompany receivables and payables (each, an "Intercompany Claim") in the ordinary course of their business. In addition, the Debtors have one non-debtor foreign affiliate -- GigaMonster Networks Costa Rica S.R.L.  (the "Non-Debtor Affiliate") – based in Costa Rica and that provides call center services for the Debtors' customers.  The Debtors engage in Intercompany Transactions with the Non-Debtor Affiliate.   On average, the Debtors transfer approximately $160,000 per month to the Non-Debtor Affiliate to fund its operations, including for payroll, rent, and operating expenses.  The services of the Non-Debtor Affiliate are critical to the Debtors' ongoing operations.

18.     The Debtors generally account for and record all Intercompany Transactions and Intercompany Claims in their centralized accounting system, the results of which are recorded concurrently on the Debtors' balance sheets and regularly reconciled.  The accounting system requires that all general ledger entries be balanced at the legal entity level, and, therefore, when

---

[3] The "Wages Motion" means the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing, But Not Directing, the Debtors to (A) Pay Prepetition Employee Wages, Salaries, and Other Compensation, and Reimburseable Employee Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief,* filed contemporaneously herewith.

the accounting system enters an intercompany receivable on one entity's balance sheet, it also automatically creates a corresponding intercompany payable on the applicable affiliate's balance sheet.  This results in a net balance of zero when consolidating all intercompany accounts.  All accounting entries, including Intercompany Transactions are recorded in the Debtors' accounting system.

19.    The Debtors expect that the Non-Debtor Affiliate will need the same ongoing monthly funding to manage its operations during the pendency of these chapter 11 cases and will need to engage in Intercompany Transactions with the Debtors.  Thus, the Debtors seek authority to continue Intercompany Transactions with the Non-Debtor Affiliate in the ordinary course of business and in compliance with the terms of the proposed DIP financing, solely to the extent that the Debtors determine, in the exercise of their business judgment and consistent with past practices, that doing so is necessary to maximize the value of their estates. Any such Intercompany Transactions will be subject to the terms of the DIP Order including, without limitation, the approved DIP financing budget.

20.    Through the relief requested by this Motion, the Debtors intend to continue undertaking Intercompany Transactions on account of obligations arising on a postpetition basis as between Debtors.  The Debtors maintain, and will continue to maintain, records of these transfers of cash and bookkeeping entries on a postpetition basis, and can ascertain, trace, and account for the Intercompany Transactions on demand.

**The Debtors' Bank Accounts Comply with Section 345 of the Bankruptcy Code**

21.    Pursuant to the U.S. Trustee Guidelines, the U.S. Trustee generally requires chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee's office.  As

8

noted above, the Bank Accounts are maintained at Regions, which has executed a Uniform Depository Agreement ("UDA") with, and is designated as an authorized depository by the U.S. Trustee, pursuant to the U.S. Trustee Operating Guidelines.  For this reason and the reasons articulated above, the Debtors submit that they are in compliance with section 345 of the Bankruptcy Code and with the U.S. Trustee Operating Guidelines.

### **Relief Requested**

22.    The Debtors seek entry of the Interim Order and Final Order, pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Rules 6003 and 6004 of the Bankruptcy Rules, and Rule 2015-2 of the Local Rules, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, authorizing the Debtors to (a) continue operating the Cash Management System, (b) honor and pay the Bank Fees in the normal course, including any prepetition Bank Fees, (c) maintain existing business forms, and (d) granting certain related relief, as described more fully herein.

### **Basis for Relief**

**A.    Maintaining the Existing Cash Management System
is Essential to Debtors' Operational Stability**

23.    The U.S. Trustee Guidelines require a debtor-in-possession to, among other things:

a.  establish one debtor-in-possession bank account for all estate monies required for the payment of taxes, including payroll taxes;

b.  close all existing bank accounts and open new debtor-in-possession accounts;

c.  maintain a separate debtor-in-possession account for cash collateral; and

d.  obtain checks that bear the designation "debtor-in-possession" and reference the bankruptcy case number and type of account on such checks.

24.     These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date. Enforcement of this provision of the U.S. Trustee Guidelines during these chapter 11 cases would severely disrupt the administration of the Debtors' estates.  Accordingly, the Debtors respectfully request authorization to operate the Bank Accounts in the same manner as was maintained in the ordinary course of business prior to the Petition Date.

25.     Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  Additionally, courts in this and other districts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).  The Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

26.     Here, continued use of the Cash Management System will facilitate the chapter 11 cases by, among other things, avoiding administrative inefficiencies and expenses associated with disrupting this system and minimizing delays in the payment of postpetition obligations. The Debtors respectfully submit that parties in interest will not be harmed by the maintenance of the

existing Cash Management System because the Debtors employ appropriate mechanisms and internal control procedures to prevent unauthorized payments on account of obligations incurred before the Petition Date.  As such, maintaining the Cash Management System is in the best interests of the Debtors' estates.

27.     Furthermore, as discussed above, in the ordinary course of business, the Debtors conduct transactions through electronic wire transfers and other similar methods.  If the Debtors' ability to conduct transactions by debit, wire, credit card, ACH transfer, or other similar methods is impaired, their estates will incur additional and unnecessary costs.  Accordingly, the Debtors submit that it is in the best interests of all stakeholders for the Court to grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check.

**B.      Authorizing (i) the Bank to Continue to Maintain, Service, and Administer the Bank Accounts and (ii) the Debtors to Pay Bank Fees, Each in the Ordinary Course of Business, Is Warranted**

28.     The Debtors respectfully request that the Court authorize the Bank to continue to maintain, service, and administer the Bank Accounts as an account of the Debtors as debtors-in-possession, without interruption and in the ordinary course of business.  In this regard, the Bank should be authorized to receive, process, honor, and pay any and all checks, ACH transfers, other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; provided, however, that any check, advise, draft, or other notification that the Debtors advised the Bank to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Bank only to the extent authorized by order of the Court.

29.     The Debtors further request that the Court authorize the Bank to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be

11

honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date. The Debtors also request that, to the extent a Bank honors a prepetition check or other item drawn on any account either (i) at the direction of the Debtors, (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, the Bank will not be deemed to be liable to the Debtors or their estates on account of such prepetition check or other item honored postpetition. The Debtors respectfully submit that such relief is reasonable and appropriate because the Bank is not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

30. The Debtors further request that the Court authorize them to pay the Bank Fees and authorize the Bank to (i) continue to charge the Bank Fees and (ii) charge-back returned items to the applicable Bank Account, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course of business. The Debtors' inability to pay the prepetition Bank Fees or to continue to pay the Bank Fees in the ordinary course of business postpetition could hinder their ability to manage the Cash Management System to the detriment of the Debtors' estates.

31. Courts in this district routinely have waived the U.S. Trustee Operating Guidelines in operating chapter 11 cases with ongoing business operations and restructuring efforts. *See*, *e.g.*, *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) (authorizing the Debtors' continued use of existing bank accounts); *In re TZEW Holdco, LLC*, Case No. 20-10910 (CSS) (Bankr. D. Del. April 14, 2020) (same); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Aug. 20, 2019) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019) (same).

**C.      The Court Should Authorize the Debtors to Continue**
         **Using Their Existing Business Forms**

32.      To avoid disruption of the Cash Management System and unnecessary expenses, pursuant to Local Rule 2015-2(a), the Debtors request authorization to continue to use their business forms substantially in the form existing immediately before the Petition Date, without reference to the Debtors' status as debtors-in-possession.  The Debtors submit that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtors will likely be aware of their status as debtors-in-possession and, thus, changing business forms is unnecessary and would be unduly burdensome.  In accordance with Local Rule 2015-2(a), to the extent the Debtors exhaust their existing supply of checks, the Debtors will reissue checks with the designation "Debtor-in-Possession" and the case number.

33.      In other large chapter 11 cases, courts in this district have allowed debtors to use their prepetition business forms without the "debtor in possession" label.  *See*, *e.g.*, *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) (authorizing debtors' continued use of preprinted check stock without a "Debtor in Possession" marking); *In re Riverbed Tech., Inc.,* No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) (same); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 26, 2021) (same); *In re Town Sports Int'l, LLC*, No. 20-12168 (CSS) (Bankr. D. Del. Oct. 13, 2020) (same); *In re Extraction Oil and Gas, Inc.*, No. 20-10548 (Bankr. D. Del. July 13, 2020) (same).

**D.      Continued Performance of Intercompany Transactions Is Warranted**

34.      As stated above, the Debtors routinely engaged in Intercompany Transactions before the Petition Date.  In this regard, section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "enter into transactions, including the sale or lease of property of the estate, in the

ordinary course of business . . . and [] use property of the estate in the ordinary course of business without notice or a hearing."  Additionally, under section 503(b)(1)(A) of the Bankruptcy Code, "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate . . .".

35.     The Debtors believe that they do not require the Court's approval to continue entering into and performing under the Intercompany Transactions because such transactions are in the ordinary course of business within the meaning of section 363(c)(1) of the Bankruptcy Code. The Intercompany Transactions are not just a matter of routine in the Debtors' business; they are the types of transactions that are common among many business enterprises that operate through affiliates.  Yet, precisely because of their routine nature, the Intercompany Transactions are integral to the Debtors' ability to operate their businesses and successfully emerge from chapter 11.  Accordingly, out of an abundance of caution, the Debtors request express authority to engage in such transactions postpetition.

36.     Similar relief has been granted in other comparable multi-debtor chapter 11 cases in this district and others.  *See*, *e.g.*, *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) (authorizing postpetition intercompany transactions between debtors and granting administrative expense status to intercompany claims related thereto); *In re Riverbed Tech., Inc.,* No. 21-11503 (CTG) (Bankr. D. Del. Nov 18, 2021) (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) (same); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 26, 2021) (same); *In re Town Sports Int'l, LLC*, No. 20-12168 (CSS) (Bankr. D. Del. Oct. 13, 2020) (same).

E.      **Granting Administrative Expense Priority to Postpetition
        Intercompany Claims is Necessary and Appropriate**

37.     The Debtors also request that the Court grant  administrative expense status to all

Intercompany Claims that arise postpetition as a result of an Intercompany Transaction, subject

and junior in all respects to any superpriority claims, including adequate protection claims.  If

Intercompany Claims are accorded such status, each entity using funds that flow through the Cash

Management System will continue to bear the ultimate responsibility for its ordinary-course

transactions with affiliates.

38.     The Debtors' funds are aggregated in the Cash Management System.  The Debtors

track all fund transfers in their accounting system and have the ability to identify and account for

all Intercompany Transactions, including all cash receipts and disbursements.  Continuation of the

Intercompany Transactions is in the best interests of the Debtors, their estates, and parties in

interest.  To ensure that each individual Debtor will not fund, at the expense of its creditors, the

operations of another entity, the Debtors request that, pursuant to sections 503(b)(1) and 507(a) of

the Bankruptcy Code, all Intercompany Claims arising after the Petition Date be accorded

administrative expense priority (junior, in all events, to payment of the claims and liens of the DIP

Lender set forth in the DIP Order and the Breakup Fee and Expense Reimbursement contemplated

by the Stalking Horse APA).

**Satisfaction of Bankruptcy Rule 6003**

39.     The Debtors believe that they are entitled to immediate authorization for the relief

contemplated by this Motion.  Pursuant to Bankruptcy Rule 6003, "[e]xcept to the extent that relief

is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the

filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell, lease, or

otherwise incur an obligation regarding property of the estate, including a motion to pay all or part

15

of a claim that arose before the filing of the petition, but not a motion under Rule 4001." To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm. For reasons discussed above, the relief requested herein is integral to the Debtors' administrative activities in these Chapter 11 Cases and necessary to preserve the value of their business and maximize the value of their estates for the benefit of all stakeholders. Failure to receive such authorization and other relief during the first twenty-one (21) days of these Chapter 11 Cases would severely disrupt the administration of the Debtors' estates at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

40.     Nothing contained herein is intended or shall be construed as: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

### Waiver of Bankruptcy Rule 6004

41.     The Debtors seek a waiver of any stay of the effectiveness of any order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale or lease

of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth in the Motion, the relief requested herein is essential to prevent immediate and irreparable harm to the Debtors' business operations. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

### Notice

42.     The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel the lenders under the Debtors' postpetition credit facility (the "DIP Lenders"); (d) counsel to the lenders under the Debtors' prepetition credit facility (the "Prepetition Lender"); (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in which the Debtors conduct business; (g) the Bank; and (h) any party that requests service pursuant to Bankruptcy Rule 2002. As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required by Local Rule 9013-1(m).

### No Prior Request

43.     No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request entry of the proposed Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (i) authorizing the Debtors to (a) continue operating the Cash Management System, (b) honor and pay the Bank Fees in the normal course, including any prepetition Bank Fees, and (c) maintain existing business forms, and (ii) granting such further relief as may be appropriate and proper.

Dated:   January 16, 2023                          PACHULSKI STANG ZIEHL & JONES LLP

                                                   */s/ Laura Davis Jones*
                                                   Laura Davis Jones (DE Bar No. 2436)
                                                   David M. Bertenthal (CA Bar No. 167624)
                                                   Timothy P. Cairns (DE Bar No. 4228)
                                                   919 North Market Street, 17th Floor
                                                   P.O. Box 8705
                                                   Wilmington, Delaware  19899 (Courier 19801)
                                                   Telephone:  (302) 652-4100
                                                   Facsimile:  (302) 652-4400
                                                   Email: ljones@pszjlaw.com
                                                          dbertenthal@pszjlaw.com
                                                          tcairns@pszjlaw.com

                                                   Proposed Counsel to the Debtors and Debtors in Possession

## **EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| GigaMonster Networks, LLC, *et al.*,[1] | ) | Case No. 23-10051 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE**
**OPERATING CASH MANAGEMENT SYSTEM, (B) HONOR AND**
**PAY BANK FEES, (C) MAINTAIN EXISTING BUSINESS FORMS,**
**(II) SCHEDULING A FINAL HEARING, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors

and debtors-in-possession (collectively, the "Debtors"), seeking entry of an interim order (this

"Interim Order"), pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Rules 6003 and

6004 of the Bankruptcy Rules, and Rule 2015-2 of the Local Rules, (i) authorizing the Debtors to

(a) continue operating the Cash Management System, (b) honor and pay the Bank Fees in the

normal course, including any prepetition Bank Fees, and (c) maintain existing business forms, and

(ii) granting certain related relief, all as more fully set forth in the Motion; and upon consideration

of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States*

*District Court for the District of Delaware*, dated February 29, 2012; and this Court having found

that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: GigaMonster Networks, LLC (2854); Gigasphere Holdings LLC (0250); GigaMonster, LLC (3014); Fibersphere Communications LLC (0163); and Fibersphere Communications of California LLC (5088). The Debtors' business address is 350 Franklin Gateway, Suite 300, Marietta, GA 30067.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at an interim hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted on an interim basis, as set forth in this Interim Order.

2.    The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2023, at __:__ __.m., prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2023. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.    Subject to any interim or final order approving the Debtors' use of cash collateral and/or any postpetition financing facility, including any documents providing for such debtor in possession financing and the budget governing such debtor in possession financing or use of cash collateral (in either case, a "DIP Order"), the Debtors are authorized, but not directed, to: (a) continue operating the Cash Management System, substantially as identified on **Exhibit C** to the Motion and as described in the Motion; (b) honor their prepetition obligations related thereto; (c) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors in possession; (d) continue to perform

2

Intercompany Transactions; (e) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit D** to the Motion, and need not comply with certain guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines (to the extent applicable); (f) treat the Debtor Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (g) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; and (h) pay the Bank Fees, including any prepetition amounts and any ordinary course Bank Fees incurred in connection with the Bank Accounts and to otherwise perform their obligations under the documents governing the Bank Accounts; *provided* that in the case of each of (a) through (h), such action is taken in the ordinary course of business and consistent with historical practices.

4.       The Bank is authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business consistent with historical practices, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order; *provided* that the Debtors shall only instruct or request any Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Bank for payment after the Petition Date as authorized by an order of the Court.

5.       The Bank is authorized to debit the Debtors' accounts in the ordinary course of business, consistent with historical practices, without the need for further order of this Court for:

3

(a) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtors' accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

6.      Any existing agreements between or among the Debtors, the Bank, and other parties shall continue to govern the postpetition cash management relationship between the Debtors and the Bank, and all of the provisions of such agreements, including, without limitation, the termination, fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Bank may, with the consent of the DIP Lender, but without further order of this Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, consistent with historical practices and the Debtors' prepetition secured debt agreements, including, without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Interim Order.

7.      To the extent any of the Debtors' Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until a date that is thirty (30) days from the Petition Date, without prejudice to seeking an additional extension, to either come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines or to make such other arrangements as are agreed to by the U.S. Trustee or approved by the Court; *provided* that nothing

herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached. The U.S. Trustee's and the Debtors' rights to seek further relief from this Court on notice in the event that the aforementioned Bank is unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

8.      For the Bank at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of the date of entry of this Interim Order, the Debtors shall (a) contact such bank, (b) provide such bank with each of the Debtors' employer identification numbers, and (c) identify each of their Bank Accounts held at such bank as being held by a debtor in possession in the Debtors' bankruptcy cases. For any Bank at which the Debtors hold Bank Accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the Bank to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Interim Order.

9.      Subject to the terms hereof, the Debtors are authorized, but not directed, in the ordinary course of business consistent with historical practices and the Debtors' prepetition secured debt agreements (and with the consent of the DIP Lender), to open any new bank accounts or close any existing Bank Accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate, provided that the Debtors give notice to the U.S. Trustee and any official committees appointed in these chapter 11 cases within 15 days of opening or closing a bank account. The relief granted in this Interim Order is extended to any new bank account opened by the Debtors in the ordinary course of business after the date hereof (and with the consent of the DIP Lender), which account

shall be deemed a "Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Bank," provided that any new domestic bank account opened by the Debtors shall be established at an institution that is a party to a Uniform Depository Agreement with the U.S. Trustee or is willing to immediately execute such a Uniform Depository Agreement.

10.    All banks maintaining any of the Bank Accounts that are provided with notice of this Interim Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date; *provided*, *however*, that any such bank shall not be found to be in violation of this Interim Order nor liable to the Debtors or their estates should any such bank honor or pay any bank payment (a) in a good faith belief that the Court has authorized such payment to be honored, or (b) as the result of a mistake made despite implementation of customary item handling procedures.

11.    The Bank is authorized, without further order of this Court, to deduct any applicable fees from the applicable Bank Accounts in the ordinary course of business consistent with historical practices and pursuant to the applicable agreements governing each Bank Account.

12.    The Bank is authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers, including, without limitation, on account of checks that have been dishonored or returned as a result of insufficient funds in the Bank Accounts, in each case to the same extent the Debtors were responsible for such items prior to the Petition Date.

13.     Subject to the terms set forth herein, any bank, including the Bank, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

14.     Any banks, including the Bank, are further authorized to honor the Debtors' directions (with the consent of the DIP Lender) with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; provided that the Bank shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

15.     The Debtors are authorized, but not directed, to continue using the Credit Card Program in the ordinary course of business and consistent with prepetition practices, including by paying to Regions prepetition and postpetition Credit Card Obligations outstanding with respect thereto, subject to the limitations of this Interim Order, the DIP Order, and any other applicable interim and/or final orders of this Court.

16.     The Debtors are authorized, but not directed, to continue engaging in Intercompany Transactions in connection with the Cash Management System in the ordinary course of business, consistent with historical practices; provided, however, that any disbursements of cash from the

Debtors to the Non-Debtor Affiliate shall not exceed $160,000 in the aggregate each month, subject to the DIP Order and any approved DIP budget.  The Debtors shall maintain accurate and detailed records of all Intercompany Transactions and the payment of Intercompany Claims so that all transactions may be readily traced, ascertained, and recorded properly on applicable intercompany accounts (if any) and distinguished between prepetition and postpetition transactions for the purposes of determining administrative expense status.

17.     All postpetition payments from a Debtor to another Debtor or non-Debtor under any postpetition Intercompany Transactions authorized hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code, which shall be subject and junior to (a) claims, including adequate protection claims, granted in connection with the DIP Order and (b) the Breakup Fee and Expense Reimbursement contemplated by the Stalking Horse APA.

18.     Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien or setoff right, in favor of any person or entity, that existed as of the Petition Date.

19.     Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an

implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

20.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

21.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

22.     Notwithstanding anything to the contrary contained herein, any payment to be made, and any authorization contained, hereunder shall be subject to: (x) any order approving the Debtors' use of cash collateral and/or any postpetition financing facilities (the "DIP Order") the documentation in respect of any such postpetition financing facilities and/or use of cash collateral (the "DIP Documents"), the budget governing any such postpetition financing and/or use of cash collateral (the "DIP Budget"); and (y) any and all claims, liens, security interests and priorities granted in connection with such postpetition financing facilities and/or use of cash collateral (the "DIP Claims"). To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

23.     The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003.

24.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

25.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

26.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion to the extent that such actions are not prohibited by the terms of the DIP Order.

27.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>Exhibit B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| GigaMonster Networks, LLC, *et al.*,[1] | ) | Case No. 23-10051 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: Docket No. __** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
OPERATING CASH MANAGEMENT SYSTEM, (B) HONOR AND PAY BANK
FEES, (C) MAINTAIN EXISTING BUSINESS FORMS, (II) SCHEDULING
A FINAL HEARING, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), seeking entry of a final order (this "Final Order"), pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Rules 6003 and 6004 of the Bankruptcy Rules, and Rule 2015-2 of the Local Rules, (i) authorizing the Debtors to (a) continue operating the Cash Management System, (b) honor and pay the Bank Fees in the normal course, including any prepetition Bank Fees, and (c) maintain existing business forms, and (ii) granting certain related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: GigaMonster Networks, LLC (2854); Gigasphere Holdings LLC (0250); GigaMonster, LLC (3014); Fibersphere Communications LLC (0163); and Fibersphere Communications of California LLC (5088). The Debtors' business address is 350 Franklin Gateway, Suite 300, Marietta, GA 30067.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for

a hearing on the Motion were appropriate under the circumstances and no other notice need be

provided; and this Court having reviewed the Motion and having heard the statements in support

of the relief requested therein at an interim hearing before this Court (the "Hearing"), and the Court

having entered an interim order on the Motion [Docket No. ___] (the "Interim Order") and notice

of a final hearing having been provided; and this Court having determined that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the

proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis, as set forth in this Final Order.

2.      Subject to any interim or final order approving the Debtors' use of cash collateral

and/or any postpetition financing facility, including any documents providing for such debtor in

possession financing and the budget governing such debtor in possession financing or use of cash

collateral (in either case, a "DIP Order"), the Debtors are authorized, but not directed, to: (a)

continue operating the Cash Management System, substantially as identified on **Exhibit C** to the

Motion and as described in the Motion; (b) honor their prepetition obligations related thereto; (c)

use, in their present form, all preprinted correspondence and Business Forms (including letterhead)

without reference to the Debtors' status as debtors in possession; (d) continue to perform

Intercompany Transactions; (e) continue to use, with the same account numbers, the Bank

Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit D** to

the Motion, and need not comply with certain guidelines relating to bank accounts set forth in the

U.S. Trustee Guidelines (to the extent applicable); (f) treat the Debtor Bank Accounts for all

purposes as accounts of the Debtors as debtors in possession; (g) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; and (h) pay the Bank Fees, including any prepetition amounts and any ordinary course Bank Fees incurred in connection with the Bank Accounts and to otherwise perform their obligations under the documents governing the Bank Accounts; *provided* that in the case of each of (a) through (h), such action is taken in the ordinary course of business and consistent with historical practices.

3.      The Bank is authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business consistent with historical practices, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order; *provided* that the Debtors shall only instruct or request any Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Bank for payment after the Petition Date as authorized by an order of the Court.

4.      The Bank is authorized to debit the Debtors' accounts in the ordinary course of business, consistent with historical practices, without the need for further order of this Court for: (a) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtors' accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in

3

connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

5.     Any existing agreements between or among the Debtors, the Bank, and other parties shall continue to govern the postpetition cash management relationship between the Debtors and the Bank, and all of the provisions of such agreements, including, without limitation, the termination, fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Bank may, with the consent of the DIP Lender, but without further order of this Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, consistent with historical practices and the Debtors' prepetition secured debt agreements, including, without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Final Order.

6.     To the extent any of the Debtors' Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until a date that is thirty (30) days from the Petition Date, without prejudice to seeking an additional extension, to either come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines or to make such other arrangements as are agreed to by the U.S. Trustee or approved by the Court; *provided* that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached. The U.S. Trustee's and the Debtors' rights to seek further relief from this Court on notice in the event that the aforementioned Bank is unwilling to

execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

7.      For the Bank at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of the date of entry of this Final Order, the Debtors shall (a) contact such bank, (b) provide such bank with each of the Debtors' employer identification numbers, and (c) identify each of their Bank Accounts held at such bank as being held by a debtor in possession in the Debtors' bankruptcy cases. For any Bank at which the Debtors hold Bank Accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the Bank to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Final Order.

8.      Subject to the terms hereof, the Debtors are authorized, but not directed, in the ordinary course of business consistent with historical practices and the Debtors' prepetition secured debt agreements, to open any new bank accounts or close any existing Bank Accounts and enter into any ancillary agreements (and with the consent of the DIP Lender), including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate, provided that the Debtors give notice to the U.S. Trustee and any official committees appointed in these chapter 11 cases within 15 days of opening or closing a bank account. The relief granted in this Final Order is extended to any new bank account opened by the Debtors in the ordinary course of business after the date hereof (and with the consent of the DIP Lender), which account shall be deemed a "Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Bank," provided that any new domestic bank account opened by the Debtors shall be

established at an institution that is a party to a Uniform Depository Agreement with the U.S. Trustee or is willing to immediately execute such a Uniform Depository Agreement.

9.      All banks maintaining any of the Bank Accounts that are provided with notice of this Final Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date; *provided*, *however*, that any such bank shall not be found to be in violation of this Final Order nor liable to the Debtors or their estates should any such bank honor or pay any bank payment (a) in a good faith belief that the Court has authorized such payment to be honored, or (b) as the result of a mistake made despite implementation of customary item handling procedures.

10.     The Bank is authorized, without further order of this Court, to deduct any applicable fees from the applicable Bank Accounts in the ordinary course of business consistent with historical practices and pursuant to the applicable agreements governing each Bank Account.

11.     The Bank is authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers, including, without limitation, on account of checks that have been dishonored or returned as a result of insufficient funds in the Bank Accounts, in each case to the same extent the Debtors were responsible for such items prior to the Petition Date.

12.     Subject to the terms set forth herein, any bank, including the Bank, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order

of this Court, and no bank that honors a prepetition check or other item drawn on any account that

is the subject of this Final Order (a) at the direction of the Debtors, (b) in a good-faith belief that

this Court has authorized such prepetition check or item to be honored, or (c) as a result of a

mistake made despite implementation of reasonable customary handling procedures, shall be

deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such

prepetition check or other item being honored postpetition, or otherwise deemed to be in violation

of this Final Order.

13.     Any banks, including the Bank, are further authorized to honor the Debtors'

directions (with the consent of the DIP Lender) with respect to the opening and closing of any

Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors'

instructions; provided that the Bank shall not have any liability to any party for relying on such

representations to the extent such reliance otherwise complies with applicable law.

14.     The Debtors are authorized, but not directed, to continue using the Credit Card

Program in the ordinary course of business and consistent with prepetition practices, including by

paying to Regions prepetition and postpetition Credit Card Obligations outstanding with respect

thereto, subject to the limitations of this Final Order, the DIP Order, and any other applicable

interim and/or final orders of this Court.

15.     The Debtors are authorized, but not directed, to continue engaging in Intercompany

Transactions in connection with the Cash Management System in the ordinary course of business,

consistent with historical practices; provided, however, that any disbursements of cash from the

Debtors to the Non-Debtor Affiliate shall not exceed $160,000 in the aggregate per month subject

to the DIP Order and any approved DIP budget.  The Debtors shall maintain accurate and detailed

records of all Intercompany Transactions and the payment of Intercompany Claims so that all

transactions may be readily traced, ascertained, and recorded properly on applicable intercompany accounts (if any) and distinguished between prepetition and postpetition transactions for the purposes of determining administrative expense status.

16.     All postpetition payments from a Debtor to another Debtor or non-Debtor under any postpetition Intercompany Transactions authorized hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code, which shall be subject and junior to (a) claims, including adequate protection claims, granted in connection with the DIP Order and (b) the Breakup Fee and Expense Reimbursement contemplated by the Stalking Horse APA.

17.     Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien or setoff right, in favor of any person or entity, that existed as of the Petition Date.

18.     Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant

to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

19.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

20.     Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

21.     Notwithstanding anything to the contrary contained herein, any payment to be made, and any authorization contained, hereunder shall be subject to: (x) any order approving the Debtors' use of cash collateral and/or any postpetition financing facilities (the "DIP Order") the documentation in respect of any such postpetition financing facilities and/or use of cash collateral (the "DIP Documents"), the budget governing any such postpetition financing and/or use of cash collateral (the "DIP Budget"); and (y) any and all claims, liens, security interests and priorities granted in connection with such postpetition financing facilities and/or use of cash collateral (the "DIP Claims"). To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

22.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

23.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

24.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion to the extent that such actions are not prohibited by the terms of the DIP Order.

25.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**Exhibit C**

**Cash Management Schematic**



All deposits from vendors, properties and individual customers are sent to the Lockbox
GigaMonster Networks Lockbox 8248
Payments arrive via checks sent to Lockbox in Birmingham Alabama, checks sent to office in Marietta, Georgia.
All credit cards are processed with merchant services are automatically deposited here. All payments sent via AC or Echeck are deposited to this account
GigaMonster Networks Payroll 8272
GigaMonster Networks Operating 8280
ZBA accounts. Daily automatic sweep by Regions of the lockbox to cover and payments that are made from these accounts
Biweekly payroll
Checks written to vendors
401k funding
ACH/wires to vendors
HAS/FSA contributions
Direct withdrawals made by vendors

**Exhibit D**

**List of Bank Accounts**

| | Debtor | Bank | Type of Account | Last 4 Digits of Account Number |
|---|---|---|---|---|
| 1. | GigaMonster Networks, LLC | Regions Bank | Deposit (Lockbox) | X8248 |
| 2. | GigaMonster Networks, LLC | Regions Bank | Payroll (ZBA) | X8272 |
| 3. | GigaMonster Networks, LLC | Regions Bank | Operating (Checking / ZBA) | X8280 |