# EXHIBIT C

**Stalking Horse Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| GigaMonster Networks, LLC, *et al.*,[1] | Case No. 23-_____ (___) |
| Debtors. | (Jointly Administered) |

**ORDER (I) APPROVING THE SALE OF ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS
AND ENCUMBRANCES, (II) APPROVING THE ASSUMPTION
AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES IN CONNECTION THEREWITH AND (III) GRANTING RELATED RELIEF**

This matter coming before the Court on the *Motion of the Debtors for Entry of Orders: (I)(A) Approving Bidding Procedures of the Sale of the Stalking Horse Assets and Other Assets, (B) Authorizing the Debtors to Enter Into the Stalking Horse Agreement for Stalking Horse Assets and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving the Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. [•]] (the "Sale Motion"), filed by the debtors (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"); and the Court having previously entered the *Order (I) Approving*

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number, are: GigaMonster Networks, LLC (2854); Gigasphere Holdings, LLC (0250); GigaMonster, LLC (3014); Fibersphere Communications, LLC (0163); and Fibersphere Communications of CA, LLC (5088).  The Debtors' business address is 350 Franklin Gateway, Suite 300, Marietta, GA 30067.

*Bidding Procedures and Bid Protections in Connection with the Sale of the Stalking Horse Assets and Other Assets, (II) Scheduling Bid Deadlines and the Auction, (III) Approving Form and Manner of Notice Thereof, and (IV) Granted Related Relief* [Docket No. [•]] (the "Bidding Procedures Order"); and Bel Air Internet LLC and Everywhere Wireless, LLC (collectively, the "Purchaser") having submitted the highest or best bid for the Assets, as reflected in that certain *Asset Purchase Agreement*, dated as of January [•], 2023, by and among Purchaser, as purchaser, and the Debtors, as sellers (the "Asset Purchase Agreement"),[2] a copy of which is attached hereto as Exhibit 1; and the Court having conducted a hearing to consider certain relief requested in the Sale Motion on [•] (the "Sale Hearing"), at which time all objecting and interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and considered (i) the Sale Motion, (ii) the Asset Purchase Agreement, (iii) the Bidding Procedures, (iv) the Bidding Procedures Order, (v) the record of the Bidding Procedures Hearing, (vi) the [*Debtor's Declarations*] [Docket No. [•]],and (viii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation the Court having determined that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion and approval of the Asset Purchase Agreement is in the best interest of the Debtors, their estates and their creditors, and the Debtors having demonstrated good, sufficient and sound business justifications for the relief granted herein;

---

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Asset Purchase Agreement (as hereinafter defined), or, if not defined in the Asset Purchase Agreement, then as defined in the Sale Motion, as applicable.

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Final Order</u>.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.    <u>Statutory Predicates</u>.  The statutory and other legal predicates for the relief sought in the Sale Motion and granted herein are sections 105, 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6004, 6006, 9007 and 9014 of the Bankruptcy Rules and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

D.    <u>Notice and Opportunity to Be Heard</u>.  As evidenced with the certificates of service filed with the Court [Docket Nos. [•]], the Debtors have provided proper, timely, adequate and sufficient notice of, and a fair and reasonable opportunity to object and be heard with respect to, the Sale Motion, the Bidding Procedures, the Bidding Procedures Order, the Auction, the Sale Hearing, the sale of the Assets pursuant to the Asset Purchase Agreement

---

[3]    The findings and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during the Sale Hearing.

-3-

(the "<u>Sale Transaction</u>") free and clear of any Interests (as hereinafter defined) within the meaning of section 363(f) of the Bankruptcy Code, the [Notice of ____] [Docket No. [•]] (the "<u>Notice of Successful Bidder</u>"), the Assumption and Assignment Notice [Docket No. [•]] and the assumption and assignment of the executory contracts and unexpired leases to be assumed and assigned to the Purchaser at Closing pursuant to this Order and the terms of the Asset Purchase Agreement (collectively, the "<u>Purchased Contracts</u>"), in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 6006, 9007 and 9014, Local Rules 2002-1, 6004-1 and 9006-1 and the Bidding Procedures Order, to all persons and entities entitled to such notice, including the Sale Notice Parties (as defined in the Bidding Procedures) and all other persons and entities as directed by the Court. Such notice was good, sufficient and appropriate under the circumstances, including but not limited to providing each Counterparty a full and fair opportunity to object to the assumption and assignment of its Contract and its proposed Cure Cost; and no other or further notice of any of the foregoing is required. With respect to parties in interest whose identities could not be reasonably ascertained by the Debtors, the Publication Notice published in [•] on [•], 2023 was sufficient and reasonably calculated to provide notice to such parties under the circumstances. The Debtors published the Sale Motion, Bidding Procedures Order, the Bidding Procedures, the Stalking Horse Agreement (and all exhibits and schedules thereto), the Sale Notice, the Assumption and Assignment Notice, and certain other documents relevant to the Sale on the Claims Agent Website.

E.    <u>Disclosures</u>. The disclosures made by the Debtors in the Sale Motion, the Sale Notice, the Assumption and Assignment Notice, the Notice of Successful Bidder and all other related notices and documents filed with the Court concerning the Asset Purchase Agreement

-4-

and Sale Transaction were complete and adequate.

F.    <u>Sound Business Purpose</u>.  The Debtors have demonstrated good, sufficient and sound business purposes and justifications for approval of the Sale Motion and the approval of and entry into the Sale Transaction, the Asset Purchase Agreement and any ancillary agreements thereto (i) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (ii) provide value and are beneficial to the Debtors' estates, and are in the best interests of the Debtors, their estates and their stakeholders; and (iii) are reasonable and appropriate under the circumstances.  Business justifications for entry into the Sale Transaction and the Asset Purchase Agreement include, without limitation, the following:  (i) the Asset Purchase Agreement constitutes the highest or best offer received for the Assets; (ii) the Asset Purchase Agreement presents the best opportunity to maximize the value of the Assets on a going-concern basis and to avoid decline and devaluation as a result of delay or liquidation; (iii) failure to consummate the Sale Transaction expeditiously, as provided under the Asset Purchase Agreement, could materially diminish creditor recoveries; and (iv) the immediate consummation of the Sale Transaction is necessary to maximize the value of the Debtors' estates.

G.    <u>Marketing Process</u>.  As demonstrated by (i) the [•] Declaration and (ii) the testimony adduced at the Bidding Procedures Hearing and the Sale Hearing, the Debtors and their advisors thoroughly marketed the Debtors' assets (including the Assets) and conducted the marketing and sale process as set forth in and in accordance with the Sale Motion and Bidding Procedures Order.  Based upon the record of these proceedings all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Debtor's assets

-5-

(including the Assets).

H.    Compliance with Bidding Procedures.  The Debtors conducted an open and fair sale process.  The sale process was non-collusive in all respects, and all interested parties were provided a full, fair and reasonable opportunity to make an offer to purchase the Assets.  The Debtors, the Purchaser and their respective counsel and other advisors have complied with the Bidding Procedures and the Bidding Procedures Order.

I.    Highest or Best Value.  The Debtors determined, in their reasonable business judgment, in a manner consistent with their fiduciary duties and, in consultation with the Consultation Parties, that the Purchaser's Qualified Bid, as documented in the Asset Purchase Agreement, was the highest or otherwise best Qualified Bid for the Assets.  Consummating the Sale Transaction will yield greater value to the Debtors' estates than would have been provided by any other available alternative transaction.

J.    Credit Bid.  Pursuant to paragraph [__] of the Final DIP Order (as defined below), the Court previously ordered that the DIP Lender (as defined in the Final DIP Order)] has the right to credit bid the full amount of the DIP Obligations (as defined in the Final DIP Order) in any sale of the DIP Collateral (as defined in the Final DIP Order).  As evidenced by [_____], the DIP Lender has properly and validly assigned such right to the Purchaser, and the Purchaser has properly and validly credit bid the amount of such obligations being credit bid pursuant to the Asset Purchase Agreement (the "Credit Bid Amount").

K.    Fair Consideration.  The consideration the Purchaser will pay under the Asset Purchase Agreement, including the Credit Bid Amount, constitutes (i) fair and reasonable consideration for the Assets; and (ii) reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent

-6-

Conveyance Act, the Uniform Voidable Transactions Act and other laws of the United States, any state, territory, possession thereof or the District of Columbia.

L.     <u>Free and Clear Sale</u>.  The Debtors may sell the Assets free and clear of all Interests (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Any holders of Interests that objected to the Sale Transaction or the Sale Motion and that have an Interest on the Assets could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Interest pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f) and, therefore, are adequately protected by having their Interests on the Assets attach solely to the proceeds of the Sale Transaction ultimately attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force and effect that such Interests had prior to the consummation of the Sale Transaction, subject to any rights, claims or defenses of the Debtors and their estates.  Any Interest holders that did not object, or that withdrew their objections, to the Sale Motion or the Sale Transaction, are deemed to have consented to the sale of the Assets free and clear of their respective Interests on the Assets pursuant to section 363(f)(2) of the Bankruptcy Code.

M.     <u>Purchaser's Reliance on Free and Clear Sale</u>.  The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction or the other transactions contemplated thereby if the sale of the Assets were not free and clear of all Interests (other than with respect to the Assumed Liabilities), or if the Purchaser would, or in the future could, be liable for any such Interests.  A sale of the Assets other than one free and clear of all Interests would adversely impact the Debtors, their estates and their creditors,

-7-

and would yield substantially less value for the Assets and the Debtors' estates, with less certainty than provided by the Sale Transaction. The total consideration to be provided under the Asset Purchase Agreement reflects the Purchaser's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to, and possession of, the Assets free and clear of all Interests, including, without limitation, any potential derivative, vicarious, transferee or successor liability Interests.

N.     "Interests". As used in this Order, the term "Interest" includes, in each case to the extent against or with respect to any of the Debtors or in, on, or against or with respect to any of the Assets: Liens, claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, Liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or unknown, inchoate or not, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (i) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, encumbrances, easements, servitudes, leases, subleases, rights-of-way, encroachments, restrictive covenants, rights of first refusal (and similar provisions), restrictions on transferability or other similar restrictions, rights of offset or recoupment, rights of use or possession, subleases, leases, conditional sale arrangements, or any similar rights, (ii) all claims, including, without limitation, all rights or causes of action

-8-

(whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of

recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions,

indemnification claims, or liabilities relating to any act or omission of the Debtors or any other

person, consent rights, options, contract rights, covenants, and interests of any kind or nature

whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless

of whether currently exercisable), whether arising prior to or subsequent to the commencement

of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or

otherwise; (iii) all debts, liabilities, obligations, contractual or tort rights and claims, and labor,

employment, and pension claims; (iv) any rights that purport to give any party a right or option

to effect any forfeiture, modification, right of first offer or first refusal, or consents, or

termination of the Debtors' or the Purchaser's interest in the Assets, or any similar rights; (v)

any rights under labor or employment agreements; (vi) any rights under pension,

multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the

Employment Retirement Income Security Act of 1974 (as amended, "ERISA")), health or

welfare, compensation or other employee benefit plans, agreements, practices, and programs,

including, without limitation, any pension plans of the Debtors or any multiemployer plan to

which the Debtors have at any time contributed to or had any liability or potential liability;

(vii) any other employee claims, including, without limitation, claims that might otherwise

arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the

Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor

Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age

Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act

of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended,

including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and

Section 4980B of the Internal Revenue Code of any similar state law, (i) state discrimination

laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other

state or federal benefits or claims relating to any employment with the Debtors or any of their

predecessors, or (l) the WARN Act (29 U.S.C. §§ 2101, et seq.) or any state or other laws of

similar effect; (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances,

including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes

arising under or out of, in connection with, or in any way relating to the operation of the assets

or businesses of the Debtors prior to the Closing; (x) any unexpired and executory contract or

unexpired lease to which a Debtor is a party that is not an Assumed Contract; (xi) any other

Excluded Liabilities under the Asset Purchase Agreement; and (xii) Interests arising under or

in connection with any acts, or failures to act, of any of the Debtors or any of the Debtors'

predecessors, Affiliates, or Subsidiaries, including, but not limited to, Interests arising under

any doctrines of successor, transferee, or vicarious liability, violation of the Securities Act, the

Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or

aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or

otherwise.

        O.      <u>No Successor or Other Derivative Liability</u>.  By consummating the Sale

Transaction pursuant to the Asset Purchase Agreement, the Purchaser is not a mere

continuation of any of the Debtors or any Debtor's estate, and there is no continuity of

enterprise or otherwise or common identity between the Purchaser and any Debtor.  The

Purchaser is not holding itself out as a continuation of any Debtor.  The Purchaser is not a

successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and

-10-

the Sale Transaction does not amount to a consolidation, merger or de facto merger of the

Purchaser and the Debtors or any of the Debtors' estates.  Neither the Purchaser nor any of its

affiliates or their respective successors, assigns, members, partners, principals or shareholders

(or the equivalent thereof) shall assume or in any way be responsible for any obligation or

liability of any Debtor (or any affiliate of any Debtor) or any Debtor's estate, except as

expressly provided in the Asset Purchase Agreement.  The sale and transfer of the Assets to

the Purchaser, including the assumption by the Debtors and assignment, transfer and/or sale to

the Purchaser of any of the Purchased Contracts, will not subject the Purchaser to any liability

with respect to the operation of the Debtors' businesses prior to the Closing or by reason of

such transfer, except that, upon the Closing, the Purchaser shall remain liable for the

applicable Assumed Liabilities.

     P.    <u>Good Faith</u>.  The Debtors, the Purchaser and their respective counsel and other

advisors have negotiated and entered into the Asset Purchase Agreement and each of the

transactions contemplated thereby in good faith, without collusion and from arms'-length

bargaining positions.  The Purchaser is a good faith purchaser, and is acting in good faith

within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all of

the protections afforded thereby.  The Debtors were free to deal with any other party interested

in acquiring all or some of the Assets.  Neither the Debtors nor the Purchaser have engaged in

any conduct that would cause or permit the Sale Transaction, the Asset Purchase Agreement or

any of the transactions contemplated thereby to be avoided or subject to monetary damages

under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections

363(m) of the Bankruptcy Code.  The Purchaser has not violated section 363(n) of the

Bankruptcy Code by any action or inaction.  Specifically, the Purchaser has not acted in a

-11-

collusive manner with any person or entity, and the Purchaser's participation in and bidding at the Auction were not controlled by any agreement among bidders. All payments to be made by the Purchaser and all agreements entered into by the Purchaser and the Debtors under the Asset Purchase Agreement in connection with the Sale Transaction have been disclosed and are appropriate. The Asset Purchase Agreement was not entered into, and the Sale Transaction is not being consummated, for the purpose of hindering, delaying or defrauding creditors under laws of the United States, any state, territory, possession thereof or the District of Columbia, or any other applicable law. Neither the Debtors nor the Purchaser have entered into the Asset Purchase Agreement (or any ancillary documentation executed in connection therewith) or are consummating the Sale Transaction with any fraudulent or otherwise improper purpose, or for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction.

Q.      <u>Insider Status</u>.  The Purchaser is not an "insider" of any Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling stockholders (or the equivalent thereof) exists between the Purchaser and any of the Debtors.

R.      <u>Assumption and Assignment of Purchased Contracts</u>.  The assumption and assignment of the Purchased Contracts are an integral part of the Sale Transaction, are in the best interests of the Debtors and their estates and represent the valid and reasonable exercise of the Debtors' sound business judgment.  Specifically, the assumption and assignment of the Purchased Contracts (i) are necessary to sell the Assets to the Purchaser as contemplated by the Asset Purchase Agreement, (ii) allow the Debtors to sell the Assets to the Purchaser as a

-12-

going concern, (iii) limit the losses suffered by the Counterparties to the Purchased Contracts and (iv) maximize the recoveries of other creditors of the Debtors by eliminating claims against the Debtors' estates that would arise from the Debtors' rejection of the Purchased Contracts.  Any Counterparty to any Contract that has not actually filed with the Court and served on the Objection Notice Parties (as defined in the Bidding Procedures) an objection to the Debtors' assumption and assignment of such Contract, or to the applicable Cure Costs, as of the date specified in the Bidding Procedures Order (as such date may have been modified or extended in accordance with the terms of the Bidding Procedures Order) is deemed to have consented to the assumption and assignment of the Contract, and to the applicable Cure Costs.

S.    <u>Compliance with Section 365 of the Bankruptcy Code</u>.  The Debtors have met all requirements of section 365(b) of the Bankruptcy Code with respect to the assumption and assignment of each of the Purchased Contracts.  The Debtors have provided adequate assurance (within the meaning of section 365(b)(1) of the Bankruptcy Code) of cure of any default existing under any of the Purchased Contracts on or before the Closing Date and responsibility for satisfaction of such cure obligations will be addressed as provided for in the Asset Purchase Agreement.  The Purchaser has demonstrated adequate assurance of future performance of and under the Purchased Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Purchased Contracts shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in the Purchased Contracts or other restrictions prohibiting their assignment or transfer.

T.    <u>Modifications to Purchased Contracts</u>.  Subject to the terms and requirements of the Asset Purchase Agreement, including sections 1.6 and 1.8 thereof, the Purchaser had the

-13-

right to timely add or remove Contracts on the Appendix A list of Purchased Contracts.  The

Purchaser would not have agreed to the Sale Transaction without such modification rights.

The notice and opportunity to object provided to Counterparties to such Purchased Contracts

and to other parties in interest, as set forth in the Bidding Procedures Order and in this Order,

fairly and reasonably protect any rights that such Counterparties and other parties in interest

may have with respect to such Purchased Contracts.

U.    <u>Property of the Estates</u>.  The Assets constitute property of the Debtors' estates

within the meaning of section 541(a) of the Bankruptcy Code.

V.    <u>Validity of the Sale Transaction</u>.  The consummation of the Sale Transaction is

legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code,

including sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) and all of the applicable

requirements of such sections have been complied with in all respects in connection with the

Sale Transaction.  As of the Closing, the sale and assignment of the Assets and the Purchased

Contracts to the Purchaser will be a legal, valid and effective transfer of the Assets and the

Purchased Contracts, and will vest the Purchaser with all right, title and interest of the Debtors

in and to the Assets and the Purchased Contracts free and clear of all Interests (other than any

Interests expressly assumed under, or expressly permitted by, the Asset Purchase Agreement)

to the fullest extent permitted section 363 of the Bankruptcy Code.  The Debtors have full

corporate or other applicable authority to execute the Asset Purchase Agreement and all other

documents contemplated thereby, and the Sale Transaction has been duly and validly

authorized by all necessary corporate action of the Debtors.  Upon entry of this Order, other

than any consents identified in the Asset Purchase Agreement, no consent or approval from

any other person, entity or legal authority is required to consummate the Sale Transaction.

-14-

W.      <u>No Sub Rosa Plan</u>.  Neither the Sale Transaction nor the Asset Purchase

Agreement impermissibly restructures the rights of any of the Debtors' creditors or

impermissibly dictates the terms of a liquidating plan of reorganization of the Debtors.

Neither the Sale Transaction nor the Asset Purchase Agreement constitutes a <u>sub rosa</u> or <u>de

facto</u> plan of reorganization or liquidation.

X.      <u>No Stay of Order</u>.  Time is of the essence to implement the Asset Purchase

Agreement and consummate the Sale Transaction.  The Sale Transaction must be approved

and consummated promptly in order to preserve the value of the Assets and to maximize the

value to the Debtors, their estates, their creditors and all other parties in interest and to ensure

the Debtors' compliance with their obligations under their post-petition financing agreements.

The Debtors have demonstrated compelling circumstances and sound business justifications

for the immediate approval and consummation of the Sale Transaction as contemplated by the

Asset Purchase Agreement. Notwithstanding the provisions of Bankruptcy Rules 6004(h),

6006(d), 7062 or any applicable provisions of the Local Rules, this Order shall not be stayed

and shall be effective and enforceable immediately upon entry.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      <u>Sale Motion Granted</u>.  The Sale Motion and the relief requested therein (to the

extent not previously granted by the Court pursuant to the Bidding Procedures Order or

otherwise) are GRANTED and approved as set forth herein.

2.      <u>Objections Overruled</u>.  Any objections to the Sale Motion or the relief requested

therein that have not been withdrawn, waived, adjourned or settled and all reservations of rights

included in such objections are hereby overruled on the merits with prejudice.

3.      <u>Sale Transaction Approved</u>.  The Asset Purchase Agreement and all transactions

contemplated thereby are APPROVED.

4.      <u>Prior Findings of Fact and Conclusions of Law</u>.  The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, and the findings of fact recited above are incorporated herein by reference. In the event that the terms of this Order and the Bidding Procedures Order are in conflict, this Order will control.

5.      <u>Debtors' Performance</u>.  The Debtors are hereby authorized to enter into and perform their obligations under the Asset Purchase Agreement, and to take such other actions as may be necessary or desirable to effectuate the terms of the Asset Purchase Agreement and other instruments or documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Asset Purchase Agreement, the Sale Transaction or this Order, including, without limitation, deeds, assignments, stock powers, transfers of membership interests and any other instruments of transfer, without further order of the Court.  In accordance with the terms of the Asset Purchase Agreement, the Debtors are hereby further authorized to take all other actions as may reasonably be requested by the Purchaser or otherwise for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to the Purchaser's possession any or all of the Assets and the Purchased Contracts, as may be necessary or appropriate for the Debtors to perform their obligations under the Asset Purchase Agreement and consummate the Sale Transaction, without further order of the Court.

6.      The Debtors are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases and other documents with respect to the Assets that are necessary or appropriate to effectuate the Asset Purchase Agreement, the Sale Transaction

-16-

or this Order, including, as applicable, amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate (in all cases subject to the terms of the Asset Purchase Agreement).

7.    Valid Transfer.  Effective as of the Closing Date, the sale and assignment of the Assets and the Purchased Contracts by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Assets and the Purchased Contracts, notwithstanding any requirement for approval or consent by any person, and will vest the Purchaser with all right, title and interest of the Debtors in and to the Assets and the Purchased Contracts, free and clear of all Interests (other than any Interests expressly assumed under, or expressly permitted by, the Asset Purchase Agreement), pursuant to section 363(f) of the Bankruptcy Code.

8.    Free and Clear Sale.  Except to the extent specifically provided in the Asset Purchase Agreement, upon the Closing Date, the Debtors shall be, and hereby are, authorized and empowered, pursuant to sections 105, 363(b), 363(f) and 363(k) of the Bankruptcy Code, to sell and transfer to the Purchaser the Assets.  The sale and transfer of the Assets to the Purchaser shall vest the Purchaser with all right, title and interest of the Debtor in and to the Assets free and clear of any and all Interests of any person or entity (other than any Interests expressly assumed under, or expressly permitted by, the Asset Purchase Agreement) to the maximum extent permitted by section 363 of the Bankruptcy Code, with all such Interests to attach to the proceeds of the Sale Transaction attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force and effect that such Interests had prior to the consummation of the Sale Transaction, subject to

-17-

any rights, claims or defenses of the Debtors or their estates.  Following the Closing, no holder

of any Interest on any of the Assets shall interfere with the Purchaser's use or enjoyment of any

of the Assets based on or related to such Interest or any actions that the Debtors have taken or

may take in their Chapter 11 Cases and no interested party may take any action to prevent,

interfere with or otherwise enjoin consummation of the Sale Transaction.

9.       The provisions of this Order authorizing the sale and transfer of the Assets free

and clear of Interests shall be self-executing, and neither the Debtors nor the Purchaser shall be

required to execute or file releases, termination statements, assignments, consents or other

instruments in order to effectuate, consummate or implement the provisions of this Order.  For

the avoidance of doubt, on or after the Closing Date, the Debtors and/or the Purchaser shall be

authorized, but not directed, to file any such releases, termination statements, assignments,

consents or other instruments in any jurisdiction to record the release, discharge and termination

of Interests on the Assets pursuant to the terms of this Order.

10.      <u>Direction to Creditors</u>.  This Order shall be (a) effective as a determination that,

as of the Closing Date, all Interests on the Assets (except as otherwise expressly assumed

under, or expressly permitted by, the Asset Purchase Agreement) shall be unconditionally

released, discharged and terminated as to the Purchaser and the Assets; and (b) binding upon all

persons and entities, including all the Debtors' creditors and any holder of an Interest on any of

the Assets, and all such persons and entities are hereby authorized and directed to execute such

documents and take all other actions as may be reasonably necessary to release their respective

Interests on the Assets, if any.  If any person or entity that has filed a financing statement,

mortgage, mechanics lien, <u>lis pendens</u> or other document, instrument, notice or agreement

evidencing any Interest on the Assets has not delivered to the Debtors on or before the Closing,

-18-

in proper form for filing and executed by the appropriate parties, termination statements,
releases or instruments of satisfaction that the person or entity has with respect to the Assets,
subject to the terms of the Asset Purchase Agreement, the Debtors and/or the Purchaser are
authorized to (x) execute and file such termination statements, releases, instruments of
satisfaction or other documents with respect to the Assets on behalf of the applicable person or
entity; and (y) file, register or otherwise record a certified copy of this Order which, once filed,
registered or otherwise recorded, shall constitute conclusive evidence of the release of all
Interests on the Assets.  This Order is deemed to be in recordable form sufficient to be placed in
the filing or recording system of each and every federal, state, local, tribal or foreign
government agency, department or office.

      11.    <u>Authorization of Recording Officers</u>.  This Order shall be binding upon all
persons and entities, including filing agents or officers, title agents or companies, recorders of
mortgages or deeds, registrars, administrative agencies, governmental units or departments,
secretaries of state, governmental officials and all other persons or entities that may be required
by operation of law, the duties of their office or contract to accept, file, register or otherwise
record or release any documents or instruments regarding the Assets or who may be required to
report or insure any title or state of title in or to the Assets, (collectively, the "<u>Recording
Officers</u>").  All Recording Officers are hereby authorized to (a) accept any and all documents or
instruments necessary and appropriate to consummate the Sale Transaction or to record and
reflect that the Purchaser is the owner of the Assets free and clear of all Interests (unless
otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement)
and (b) strike all recorded Interests on the Assets from their records.

      12.    <u>Direction to Surrender the Assets</u>.  All persons or entities in possession or

control of any of the Assets, either presently or on or before the Closing Date, are directed to surrender possession or control of the Assets to the Purchaser on the Closing Date.

13.     <u>No Successor Liability</u>.  The Purchaser and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or the equivalent thereof) are not and shall not be (a) deemed a "successor" in any respect to any of the Debtors or any of their estates as a result of the consummation of the Sale Transaction or any other event occurring in the Debtors' Chapter 11 Cases under any theory of law or equity; (b) deemed to have, <u>de facto</u> or otherwise, merged or consolidated with or into any of the Debtors or any of their estates; (c) deemed to be an alter ego of or have a common identity with any of the Debtors; (d) deemed to have a continuity of enterprise with any of the Debtors; or (e) deemed to be a continuation or substantial continuation of any of the Debtors or any enterprise of any of the Debtors, including (with respect to clause (a) through (e) of this paragraph) within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, products liability or other law, doctrine rule or regulation (including any filing requirements under any such laws, rules or regulations) with respect to the Debtors' liability under such law, doctrine, rule or regulation.

14.     The Purchaser shall not assume, nor be deemed to have assumed or in any way be responsible for any liability or obligation, of any of the Debtors or any of their estates including, but not limited to, any Excluded Liabilities, any bulk sales law, successor or vicarious liability, liability or responsibility for any claim against any of the Debtors or against any insider of any of the Debtors or similar liability, except as otherwise expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities.  The Sale Motion, Sale Notice and Notice of Successful Bidder contain sufficient notice of such limitation in

accordance with applicable law.  Except for the Purchaser's assumption of the Assumed

Liabilities pursuant to the Asset Purchase Agreement, the transfer of the Assets and the

Purchased Contracts to the Purchaser under the Asset Purchase Agreement will not result in

(a) the Purchaser, its affiliates or any of their respective predecessors, successors, assigns,

members, partners, officers, directors, principals or shareholders (or the equivalent thereof) or

any of the Assets having any liability or responsibility for any claim against any of the Debtors

or against any insider of any of the Debtors (including, without limitation, Excluded

Liabilities); (b) the Purchaser, its affiliates or any of their respective predecessors, successors,

assigns, members, partners, officers, directors, principals or shareholders (or the equivalent

thereof) or any of the Assets having any liability whatsoever with respect to or be required to

satisfy in any manner, whether at law or in equity, whether by payment, setoff, recoupment or

otherwise, directly or indirectly, any Interests or Excluded Liabilities; or (c) the Purchaser, its

affiliates or any of their respective predecessors, successors, assigns, members, partners,

officers, directors, principals or shareholders (or the equivalent thereof) or any of the Assets

having any liability or responsibility to any of the Debtors except as is expressly set forth in the

Asset Purchase Agreement.

15.    Effective upon the Closing Date, all persons and entities are forever prohibited

and enjoined from commencing or continuing in any manner any action or other proceeding,

whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the

Purchaser, its assets (including the Assets) or its successors or assigns, with respect to any

(a) Interest on the Assets or (b) successor, transferee, vicarious or other similar liability or

theory of liability, including (i) commencing or continuing any action or other proceeding

pending or threatened, in any manner or place, that does not comply with, or is inconsistent

with, the provisions of this Order or other orders of the Court or the agreements or actions contemplated or taken in respect hereof or thereof; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Interest; (iv) asserting any setoff, right of subrogation or recoupment of any kind; or (v) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets.

16.    <u>Assumption and Assignment of Purchased Contracts</u>.  Under sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale Transaction, the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser free and clear of all Interests pursuant to the terms of the Asset Purchase Agreement, as modified by the terms of any amendments reached by the Purchaser and the respective Counterparty, is hereby approved, and the requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Upon the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser, each applicable Counterparty shall be forever barred, estopped and permanently enjoined from raising or asserting against the Debtors, the Purchaser or their respective property, any assignment fee, default, breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, known or unknown, liquidated or unliquidated senior or subordinate), counterclaim, defense, setoff or any other matter arising under or out of, in connection with or in any way related to, the Purchased Contracts existing as of the Closing Date or arising by reason of the Closing.  Upon the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser, the Purchaser shall be fully and irrevocably vested with all right, tile and interest of the Debtors in and to the

-22-

Purchased Contracts and the Purchased Contracts shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms.  The Debtors' assumption and assignment of the Purchased Contracts to the Purchaser shall not constitute a default under or a termination of any Contract.

17.    Cure Obligations.  Any defaults or other obligations under the Purchased Contracts shall be deemed cured by the Purchaser's payment or other satisfaction of the cure amounts, if any, associated with the Purchased Contracts, and established through the process set forth in the Bidding Procedures Order (the "Cure Costs").

18.    Cure Objections.  Except as provided herein, all objections to the Debtors' calculation of Cure Costs with respect to any of the Purchased Contracts (each such objection, a "Cure Objection") have been overruled, withdrawn, waived, adjourned, settled or otherwise resolved.  Any Cure Objections as to applicable Cure Costs that have not been resolved by the parties may be heard at a later date as set by the Court.  The pendency of a dispute relating to a particular Contract shall not prevent or delay the assumption or assignment of any other Contract or the closing of the Sale Transaction.

19.    Adequate Assurance.  The Purchaser has provided adequate assurance of future performance under the Purchased Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Any Adequate Assurance Objections that have not been withdrawn, waived, or adjourned or settled and all reservations of rights included in such objections are hereby overruled on the merits with prejudice.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser have been satisfied.

20.    Anti-Assignment Provisions Unenforceable.  No section or provision of any

-23-

Contract that purports to (a) prohibit, restrict or condition the assignment of a Contract,

including, but not limited to, the conditioning of such assignment on the consent of any

Counterparty to such Contract, or the granting of any right of first refusal or similar right to a

Counterparty; (b) authorize the termination, cancellation or modification of a Contract based on

the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances;

(c) declare a breach or default as a result of a change in control in respect of the Debtors; or

(d) provide for additional payments, profit sharing, penalties, conditions, renewals, extensions,

charges or other financial accommodations in favor of the Counterparty to a Contract, or

modification of any term or condition upon the assignment of a Contract or the occurrence of

the conditions set forth in subsection (b) above, shall have any force or effect, and any such

section or provision constitutes an unenforceable anti-assignment provision under section

365(f) of the Bankruptcy Code and/or is otherwise unenforceable under section 365(e) of the

Bankruptcy Code.

21.    <u>Direction to Contract Counterparties</u>.  All Counterparties to Purchased Contracts

assigned to the Purchaser in accordance with the terms of this Order and the Asset Purchase

Agreement shall cooperate with, and expeditiously execute and deliver upon, any reasonable

request of the Purchaser, and shall not charge the Purchaser for, any instruments, applications,

consents or other documents that may be required or requested by any governmental unit or

other public or quasi-public authority or other party to effectuate the applicable transfers in

connection with the Debtors' assumption and assignment of the Purchased Contracts to the

Purchaser; *provided that* this paragraph 21 shall be subject in all respects to provisions of the

Purchased Contract that are otherwise not unenforceable during the pendency of any

bankruptcy proceeding.

-24-

22.    <u>Modification of Purchased Contracts List</u>.  Subject to the terms and requirements of the Asset Purchase Agreement, including sections 1.6 and 1.8 thereof, the Purchaser had the right to timely add or remove Contracts on the Appendix A list of Purchased Contracts.  The Purchaser would not have agreed to the Sale Transaction without such modification rights.  The notice and opportunity to object provided to Counterparties to such Purchased Contracts and to other parties in interest, as set forth in the Bidding Procedures Order and in this Order, fairly and reasonably protect any rights that such Counterparties and other parties in interest may have with respect to such Purchased Contracts.

23.    <u>Licenses and Permits</u>.  To the extent provided in the Asset Purchase Agreement and available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Assets and the Purchased Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.  To the extent any license or permit necessary for the operation of the Assets is determined not to be an executory contract that may be assumed and assigned under section 365 of the Bankruptcy Code, the Purchaser shall apply for and obtain any necessary license or permit promptly after the Closing Date, and such license or permit of the Debtors shall remain in place for the Purchaser's benefit until a new license or permit is obtained.

24.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale Transaction.

25.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Assets to the Purchaser in accordance with the Asset Purchase Agreement and this Order.

26.     Purchase of Avoidance Actions.  Pursuant to this Order and the Asset Purchase Agreement, (a) the Purchaser is authorized to and shall purchase and acquire all of the rights and claims of Sellers available under the Bankruptcy Code in the Included Avoidance Actions (as defined in the Asset Purchase Agreement), and (b) Purchaser, or any other person claiming by, through or on behalf of the Purchaser (including by operation of law, sale, assignment, conveyance or otherwise) shall not pursue, prosecute, litigate, institute or commence an action based on, assert, sell, convey, assign or file any claim that relates to the Included Avoidance Actions.

27.     Good-Faith Purchaser.  The Purchaser is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded thereby.  Pursuant to section 363(m) of the Bankruptcy Code, the reversal or modification on appeal of this Order approving the Sale Transaction under subsection (b) or (c) of the Bankruptcy Code does not affect the validity of the Sale Transaction under this Order to the Purchaser, which purchased the Purchased Assets in good faith, whether or not the Purchaser knew of the pendency of the appeal, unless this Order and the Sale Transaction were stayed pending appeal.

28.     No Avoidance.  Neither the Sale Transaction nor the Asset Purchase Agreement is subject to avoidance, and no party is entitled to any damages or other recovery in connection therewith under section 363(n) of the Bankruptcy Code.

29.     Bulk Sales.  No bulk sales law, bulk transfer law or similar law of any state or

-26-

other jurisdiction shall apply in any way to the Sale Transaction.

30.     Back-Up Bidder.  In the event that the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of the Successful Bidder, the Debtors are authorized, but not required, without any other or further order or authorization from the Court and without any other or further notice, to consummate the sale with [_____], who is the Back-up Bidder(s) pursuant to the Auction,  pursuant to the terms of the asset purchase agreement(s) with any Back-up Bidder(s) that was filed with the Bankruptcy Court prior to the Sale Hearing (each, a "Back-up Bidder APA").  Upon _____ (__) days' prior notice by the Debtors, each Back-up Bidder must immediately proceed with the transaction contemplated under the applicable Back-up Bidder APA (subject to the terms and conditions (including outside dates) set forth in each such Back-up Bidder APA).  The bids of each Back-up Bidder shall be irrevocable as provided on the record of the Auction (subject to the terms and conditions (including outside dates) set forth in each such Back-up Bidder APA). In the event the Debtors consummate the transaction with a Back-up Bidder, such Back-up Bidder shall have all of the rights and privileges of the Successful Bidder for purposes of this Order, and shall be treated in all respects as the Successful Bidder under the terms of this Order.

31.     Amendments.  The Asset Purchase Agreement and any related agreements may be amended, supplemented or otherwise modified by the parties thereto and in accordance with the terms thereof, without further action or order of the Court; provided, that, any such amendment, supplement or modification shall not have a material adverse effect on the Debtors' estates or contravene the provisions of the Interim Order, the Final DIP Order or any other order of this Court.

32.     Binding Order.  This Order and the Asset Purchase Agreement shall be binding

-27-

upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case of any of the Debtors if any of these Chapter 11 Cases is converted from a case under chapter 11 to a case under chapter 7, all creditors of any and all of the Debtors (whether known or unknown), all Counterparties to any Purchased Contracts and all Recording Officers.  Neither the Sale Transaction nor the Asset Purchase Agreement shall be subject to rejection or avoidance under any circumstances.  This Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser and its respective successors and assigns.

33.        [Reserved.]

34.        Failure to Specify Provisions; Conflicts.  The failure specifically to include or mention any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Purchaser that the Asset Purchase Agreement be authorized and approved in its entirety, including any amendments thereto as may be made by the parties thereto in accordance with the terms thereof and this Order.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

35.        Mutual Releases.  Pursuant to section 5.3 of the Asset Purchase Agreement, and subject to the terms of such Agreement, effective upon the Closing, (a) Purchaser (individually and on behalf of its Affiliates) releases and waives any and all actual or potential claims, causes of action, Legal Proceedings and/or Liabilities, of whatever kind or nature (including attorneys' fees and costs), in law or equity, known or unknown, suspected or unsuspected, now existing or

-28-

hereafter arising, whether contractual, in tort or otherwise, which Purchaser or any of its

Affiliates had, have, or may have in the future against each Seller and each of its Affiliates and

their respective successors and assigns and all of their respective Representatives relating in any

way to the Assets or the Assumed Liabilities and (b) each Seller (individually and on behalf of

its Affiliates (disregarding for purposes of Section 5.3 of the Asset Purchase Agreement the

proviso in the definition of "Affiliates")) releases and waives any and all actual or potential

claims, causes of action, Legal Proceedings and/or Liabilities of whatever kind or nature

(including attorneys' fees and costs), in law or equity, known or unknown, suspected or

unsuspected, now existing or hereafter arising, whether contractual, in tort or otherwise, which

such Seller or Affiliate thereof had, have, or may have in the future against Purchaser and each

of its Affiliates and their respective successors and assigns and all of their respective

Representatives relating in any way to the Assets, Assumed Liabilities, Excluded Assets or the

Excluded Liabilities; provided that nothing in the Asset Purchase Agreement will be construed

to release any Person from any of its contractual obligations under the Asset Purchase

Agreement and the other agreements contemplated by the Transactions, including its

obligations in respect of the Assets, Assumed Liabilities, Excluded Assets and Excluded

Liabilities, as the case may be, each of which will remain fully effective and enforceable from

and after the Closing Date.

36.    <u>Automatic Stay</u>.  The automatic stay pursuant to section 362 of the Bankruptcy

Code is hereby modified to the extent necessary, without further order of the Court, to allow the

Purchaser to deliver any notice provided for in the Asset Purchase Agreement and to take any

and all actions permitted or required under the Asset Purchase Agreement in accordance with

the terms and conditions thereof.

37.     <u>No Stay of Order</u>.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 and any applicable Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.  The provisions of this Order shall be self-executing. Time is of the essence in implementing the Asset Purchase Agreements and closing the Sale Transaction.

38.     <u>Governing Terms</u>.  To the extent there is any inconsistency between the terms of this Order and the terms of the Asset Purchase Agreement, the terms of this Order shall govern.

39.     <u>Wind-Down Reserve</u>.  Cash proceeds derived from the sale of the Assets will be used by the Debtors to fund the Wind-Down Reserve in accordance with the provisions of the Interim Order and Final DIP Order.

40.     <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order and the Asset Purchase Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith; and (b) decide any issues or disputes concerning this Order, the Asset Purchase Agreement or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions and provisions hereof and thereof, and the status, nature and extent of the Assets and the Purchased Contracts.

41.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

## Exhibit 1

**Asset Purchase Agreement**