**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| GigaMonster Networks, LLC, *et al.*,[1] | Case No. 23-10051 (JKS) |
| Debtors. | (Jointly Administered) |
|  | **Re: Docket No. 12** |

**ORDER (I) APPROVING BIDDING PROCEDURES**
**AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF**
**THE STALKING HORSE ASSETS AND OTHER ASSETS, (II) SCHEDULING BID**
**DEADLINES AND THE AUCTION, (III) APPROVING FORM AND**
**MANNER OF NOTICE THEREOF, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"):  (a) approving bidding procedures, substantially in the form attached hereto as Exhibit 1 (the "SH Bidding Procedures"), to be used in connection with the sale (the "Sale") of certain of the Debtors' operating assets (collectively, the "Stalking Horse Assets") to Bel Air Internet LLC and Everywhere Wireless, LLC (the "Stalking Horse Bidder"), or alternatively, to such other bidder that submits the highest and best bid for the Stalking Horse Assets at auction, and approving the bidding procedures in the form attached hereto as Exhibit 1-A (the "Other Assets Bidding Procedures," and together with the SH Bidding Procedures, the "Bidding Procedures") to be used in connection with the Sale of the Debtors' other assets not included in the category of Stalking Horse Assets (the "Other Assets"),

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number, are:  GigaMonster Networks, LLC (2854); Gigasphere Holdings, LLC (0250); GigaMonster, LLC (3014); Fibersphere Communications, LLC (0163); and Fibersphere Communications of CA, LLC (5088).  The Debtors' business address is 350 Franklin Gateway, Suite 300, Marietta, GA 30067.

[2] Capitalized terms used but not defined herein have the meanings given to them in Motion, the Bidding Procedures attached hereto as **Exhibit 1** (for the Stalking Horse Assets) or **Exhibit 1-A** (for the Other Assets), or the Stalking Horse Agreement, as applicable.

(b) authorizing the Debtors to designate Bel Air Internet LLC and Everywhere Wireless, LLC as the Stalking Horse Bidder and to provide a break-up fee and expense reimbursement, as provided in the Stalking Horse Agreement (defined below) and potential break-up fee and expense reimbursement for the Other Assets, (c) scheduling an auction of the Stalking Horse Assets and auction for the Other Assets and scheduling the hearing to approve the Sale(s), (d) approving the form and manner of notices of the proposed sale hearing, substantially in the form attached to hereto as Exhibit 2, (e) authorizing procedures governing the potential assumption and assignment of the Debtors' certain executory contracts and unexpired leases in connection with the Sale(s), (each a "Potential Assumed Contract" and together, the "Potential Assumed Contracts"); and (f) approving the form and manner of notice to each relevant non-debtor counterparty to a Potential Assumed Contract of (A) the Debtors' calculation of the amount necessary to cure any defaults required to be cured under section 365 of the Bankruptcy Code under an applicable Potential Assumed Contract and (B) certain other information regarding the potential assumption and assignment of Potential Assumed Contracts in connection with the Sale(s), substantially in the form attached hereto as Exhibit 3; and (ii) an order (a) authorizing the sale of the Stalking Horse Assets and Other Assets free and clear of all liens, claims, interests, and encumbrances provided with such liens, claims, interests and encumbrances to attach to the proceeds of such sale, (b) authorizing the assumption and assignment of Potential Assumed Contracts; and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the

2

statements in support of the relief requested therein at a hearing before the Court (the "<u>Bidding Procedures Hearing</u>"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Bidding Procedures Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Court has jurisdiction to consider the Motion, the relief requested therein, and the transaction contemplated by the Stalking Horse Agreement in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue of the Chapter 11 Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      The bases for the relief requested in the Motion are sections 105, 363, 365, 503, 507, and 1146(a) of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), Rules 2002(a)(2), 6004, 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2002-1, 6004-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedures of the United States District Court for the District of Delaware (the "<u>Local Rules</u>").

3

D.     The Debtors' proposed notice of the Motion and the hearing thereon, including, without limitation, the Bidding Procedures and the proposed entry of this Order, is (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and (iii) adequate and sufficient under the circumstances of the Chapter 11 Cases, such that no other or further notice is required.

E.     The Debtors and their advisors, including Bank Street LLC, engaged in an extensive sale process before and after the commencement of these Chapter 11 Cases, since July 2022, to solicit and develop the highest or best offers for the Stalking Horse Assets and the Other Assets.

F.     A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the Bidding Procedures and payment of the break-up fee and expense reimbursement for the Stalking Horse Assets) has been afforded to parties in interest.

G.     The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest herein.

H.     Each of the Bidding Procedures comply with the requirements of Local Rule 6004-(1)(c).

I.     The Sale Notice attached hereto as **Exhibit 2** is fair, appropriate, and reasonably calculated to provide proper and sufficient notice to creditors, the Debtors' economic stakeholders, and other parties in interest of the Sale Hearing and the relief requested under the Motion, including, without limitation, the procedures and deadlines by which parties may object to the

Motion.  The Potential Assumption and Assignment Notice attached hereto as **Exhibit 3** is fair, appropriate, and reasonably calculated to provide each Counterparty to the Potential Assumed Contracts with proper and sufficient notice of the potential assumption and assignment of such Potential Assumed Contracts by the Successful Bidder(s) or any of their known proposed assignees (if different from the Successful Bidder) and the requirement that each Counterparty assert any objection to the proposed Cure Amounts prior to the Assumption and Assignment Objection Deadline or otherwise be barred from asserting claims arising from events occurring following assumption and assignment of such Potential Assumed Contracts. The Assumption and Assignment Procedures comply with section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

### SH Bidding Procedures

J.      The process for selecting Bel Air Internet LLC and Everywhere Wireless, LLC (the "Stalking Horse Bidder") as the "stalking horse" bidder was fair and appropriate under the circumstances and in the best interests of the Debtors' estates.  The Debtors have articulated good and sufficient reasons for the Court to: (i) approve the Bidding Procedures; (ii) schedule the Auction and approve the manner of notice of the Auction; (iii) approve the procedures for the assumption and assignment of the Potential Assumed Contracts, including notice of proposed Cure Amounts; and (iv) grant the Break-Up Fee and Expense Reimbursement, to the extent and as provided in that certain *Asset Purchase Agreement*, dated as of January 16, 2023, by and among the Debtors and the Stalking Horse Bidder (including all exhibits and schedules related thereto, the "Stalking Horse Agreement") and in this Order.

K.      The SH Bidding Procedures and the Stalking Horse Agreement were each negotiated among the Debtors and the Stalking Horse Bidder the parties at arms'-length and in

5

good faith.  The Stalking Horse Agreement represents the highest and otherwise best offer that the Debtors have received to date for the Stalking Horse Assets.  Without the Stalking Horse Bid, the Debtors would likely realize a lower price for the Stalking Horse Assets. As such, the contributions of the Stalking Horse Bidder to the process have indisputably provided a substantial benefit to the Debtors, their estates, and creditors in these chapter 11 cases. The Stalking Horse  Bid will enable the Debtors to continue their operations, preserve jobs, minimize disruption to the Debtors' business, and secure a fair and adequate baseline price for the Stalking Horse Assets at the Auction (if any), and, accordingly, will provide a clear benefit to the Debtors' estates, their creditors, and all other parties in interest.

L.     The SH Bidding Procedures in the form attached hereto as **Exhibit 1** are fair, reasonable and appropriate, are designed to maximize creditor recoveries from a sale of the Stalking Horse Assets and permit the Debtors to comply with their obligations and the Milestones provided under the *Interim Order Pursuant to the Sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2, (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling Final Hearing, and (IV) Granting Related Relief* [Docket No. 51] (the "DIP Order"), and are consistent with the Debtors' exercise of their fiduciary duties under applicable law.

M.     To the extent payable under the terms of the Stalking Horse Agreement, and this Order, the break-up fee and the expense reimbursement for the Stalking Horse Assets (together, the "SH Bid Protections"): (i)(a) shall be deemed an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) shall constitute allowed superpriority expense claims against the Debtors' estates pursuant to

6

sections 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code, and (c) shall have priority over and shall not be subordinate to any other superpriority administrative expense claims or administrative expense claims against the Debtors (including the Adequate Protection Superpriority Claim and Adequate Protection Liens (both as defined in the DIP Order)) other than the DIP Superpriority Claim, DIP Liens, and the Carve-Out (each as defined in the DIP Order); (ii) are commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (iii) are reasonably tailored to encourage, rather than hamper, bidding for the Stalking Horse Assets, by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Stalking Horse Assets; (iv) provide a substantial benefit to the Debtors' estates and stakeholders and all parties in interest herein; (v) are reasonable and appropriate; (vi) are a material inducement for, and condition necessary to, ensure that the Stalking Horse Bidder will continue to pursue the Stalking Horse Agreement to purchase the Stalking Horse Assets; and (vii) are reasonable in relation to the Stalking Horse Bidder's efforts and to the magnitude of the Sale and the Stalking Horse Bidder's lost opportunities resulting from the time spent pursuing such transaction. Unless it is assured that the SH Bid Protections will be available, the Stalking Horse Bidder is unwilling to remain obligated to consummate the Stalking Horse Agreement or otherwise be bound under the Stalking Horse Agreement, including, without limitation, the obligations to maintain its committed offer while such offer is subject to higher or otherwise better offers as contemplated by the Bidding Procedures.

N.     The Stalking Horse Bidder shall act as the "stalking horse bidder" for the Stalking Horse Assets in accordance with the Stalking Horse Agreement. The Stalking Horse Bidder is not

an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, officers, or controlling stockholders exists between the Stalking Horse Bidder and the Debtors.

O.     The SH Bid Protections, as approved by this Order, (i) are fair and reasonable, (ii) have been negotiated by the Stalking Horse Bidder and the Debtors at arm's-length and in good faith, (iii) provide a benefit to the Debtors' estates and stakeholders, and (iv) are necessary to ensure that the Stalking Horse Bidder will continue to pursue its Stalking Horse Agreement and transactions contemplated thereby.

P.     The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Order and thereby: (i) approve of the SH Bidding Procedures as contemplated by the Stalking Horse Agreement and the Motion; (ii) authorize the SH Bid Protections, under the terms and conditions set forth in the Stalking Horse Agreement; (iii) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing, and other deadlines set forth in the SH Bidding Procedures; (iv) approve the proposed noticing procedures (the "Noticing Procedures") and the forms of notice; and (v) approve the Assumption and Assignment Procedures and the forms of relevant notice.  Such compelling and sound business justification, which was set forth in the Motion, the First Day Declaration, and on the record at the Bidding Procedures Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

**Other Assets Bidding Procedures**

Q.     The Other Assets Bidding Procedures for the Other Assets, in the form attached hereto as **Exhibit 1-A**, are fair, reasonable and appropriate, are designed to maximize creditor recoveries from a sale of the Other Assets and permit the Debtors to comply with their obligations

8

and the Milestones provided under the DIP Order and are consistent with the Debtors' exercise of their fiduciary duties under applicable law.

R.    The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Order and thereby: (i) approve of the Other Assets Bidding Procedures; (ii) authorize the Other Assets Bid Protections (as defined below); (iii) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing, and other deadlines set forth in the Other Assets Bidding Procedures; (iv) approve the proposed Noticing Procedures and the forms of notice; and (v) approve the Assumption and Assignment Procedures and the forms of relevant notice.  Such compelling and sound business justification, which was set forth in the Motion, the First Day Declaration, and on the record at the Bidding Procedures Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

**IT IS HEREBY ORDERED THAT:**

1.    For the reasons stated on the record at the Bidding Procedures Hearing, the Motion is granted as set forth herein.

2.    All objections to the relief requested in the Motion, the filing and service of the proposed bidding procedures order approving the relief in the Motion, and the attachments to such order, that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are hereby overruled in all respects on the merits; except as otherwise stated on the record at the Bidding Procedures Hearing.

3.    The Bidding Procedures are hereby approved in their entirety, are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Assets and the Auction. The failure to specifically include or reference any particular provision of the Bidding

Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order. The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

**SH Bidding Procedures**

**I.      Approval of Dates and Deadlines Requested in the Motion.**

4.      <u>**Bid Deadline**</u>.  **February 24, 2023, at 4:00 p.m. (prevailing Eastern Time)**, is the deadline by which bids for the Stalking Horse Assets (as well as the deposit and all other documentation required under the Bidding Procedures for Qualified Bidders) must be submitted in accordance with the terms of the Bidding Procedures.

5.      <u>**Auction**</u>.  In the event the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids in addition to the Stalking Horse Bid, an Auction shall be conducted on **February 28, 2023, 10:00 a.m. (prevailing Eastern Time)** at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (or by videoconference to the live proceedings at this location) (the "<u>SH Auction</u>").  The Debtors shall provide notice of the date, time, and place of the SH Auction to the Qualified Bidders no later than one (1) day before such SH Auction, and will post notice of the date, time, and place of the Auction no later than one business day before such SH Auction on the website of Kroll, the Debtors' notice and claims agent at <u>https://cases.ra.kroll.com/GigaMonster</u> (the "<u>Case Information Website</u>"); provided, however that any creditor who wishes to physically attend the Auction (other than (i) the parties set forth in the Bidding Procedures (including the Qualified Bidders), and (ii) such other parties the Debtors deem appropriate), shall provide at least two (2) days' notice of such attendance

10

prior to the Auction by sending an email to counsel to the Debtors. The Debtors are authorized to conduct the SH Auction in accordance with the SH Bidding Procedures.

6.      As soon as is reasonably practicable following the conclusion of the SH Auction, if held, the Debtors shall file with the Court a notice of the SH Auction results and serve such notice by electronic mail (if known), or otherwise by overnight mail, on Counterparties and any other parties that have requested service pursuant to Bankruptcy Rule 2002. Objections to the conduct of the SH Auction, the Successful Bidder, or, if applicable, the Sale to the Successful Bidder or the Sale to the Stalking Horse Bidder must be made at the Sale Hearing.

7.      **Sale Hearing**. The Sale Hearing for the Stalking Horse Assets shall be held in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom No. 6, Wilmington, Delaware 19801, on **March 2, 2023, at 1:00 p.m. (prevailing Eastern Time)** or such other date and time that the Court may later direct or as agreed upon by the Debtors, the Successful Bidder(s), and the DIP Lender; *provided*, *however*, that the Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by filing a notice on the Court's docket or by announcement of any continued hearing in open Court or on the Court's docket; *provided*, *further*, that no such adjournment shall impair the rights of the Stalking Horse Bidder under the Stalking Horse Agreement or the DIP Lender under the DIP Order (including with respect to the milestones set forth in the DIP Documents (as defined in the DIP Order)).

## II.      Sale Objections.

8.      Objections to the Sale of the Stalking Horse Assets, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than **February 23, 2023, at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Sale Objection Deadline</u>")

and (d) be served on: (1) proposed counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones (ljones@pszjlaw.com); (2) proposed counsel to the official committee of unsecured creditors appointed in the Chapter 11 Cases (the "Committee"), (i)(a) Faegre Drinker Biddle & Reath LLP, 1177 Avenue of the Americas New York, New York 10036, Attn: Richard J. Bernard (richard.bernard@faegredrinker.com), and (b) Faegre Drinker Biddle & Reath LLP, 222 Delaware Avenue, Suite 1410 Wilmington, Delaware 19801, Attn: Patrick A. Jackson (patrick.jackson@faegredrinker.com); (3) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, Attn: Timothy J. Fox, Jr. (timothy.fox@usdoj.gov) (the "U.S. Trustee"); (4) counsel to the DIP Lenders and Stalking Horse Bidder, (i)(a) Jones Day, 901 Lakeside Avenue, Cleveland, Ohio 44114, Attn: Thomas M. Wearsch (twearsch@jonesday.com), (b) Jones Day, 100 High Street, Boston, MA 02110, Attn: John D. Casais (jcasais@jonesday.com), and (c) Jones Day, 250 Vesey Street, New York, NY 10281, Attn: Nicholas J. Morin (nmorin@jonesday.com), (ii) Choate Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: Brian P. Lenihan (blenihan@choate.com), and (iii) Delaware counsel to the DIP Lenders, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Zachary Shapiro (shapiro@rlf.com); (5) counsel to the Prepetition Lenders: Hogan Lovells US LLP, 390 Madison Avenue, New York, NY 10017, Attn: Erin N. Brady (erin.brady@hoganlovells.com) and Chris Bryant (chris.bryant@hoganlovells.com); and (6) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties").  The failure of any objecting person or entity to timely file an objection prior to the Sale Objection Deadline shall be a bar to the assertion at the Sale Hearing or thereafter of any objection to the relief requested by the

Debtors, or the consummation and performance of the Sale of the Stalking Horse Assets to the

Successful Bidder, including the Sale of the Stalking Horse Assets free and clear of all liens,

claims, interests, and other encumbrances (with the same to attach to the cash proceeds of the Sale

to the same extent and with the same order of priority, validity, force and effect which they

previously had against the Stalking Horse Assets, subject to the rights and defenses of the Debtors

and the Debtors' estates with respect thereto), and the Debtors' assumption and assignment of the

Potential Assumed Contracts to the Successful Bidder.

**III.     Auction, Bidding Procedures, and Related Relief.**

9.      The SH Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**

(for the Stalking Horse Assets), are incorporated herein and are hereby approved in their entirety,

and the SH Bidding Procedures shall govern the submission, receipt, and analysis of all Bids

relating to the sale of the Stalking Horse Assets.  Any party desiring to submit a Bid for the Stalking

Horse Assets shall comply with the SH Bidding Procedures and this Order.  The Debtors are

authorized to take any and all actions necessary to implement the SH Bidding Procedures.

10.     **Noticing Procedures**.  The Noticing Procedures as set forth in this Order and the

Motion, including the form of Sale Notice attached hereto as **Exhibit 2**, are hereby approved.

Within two (2) business days after entry of this Order,  the Debtors shall serve the Sale Notice by

email (where known) and by first-class mail upon: (a) counsel to the Committee; (b) the U.S.

Trustee; (c) counsel to DIP Lenders and Stalking Horse Bidder: (i)(1) Jones Day, 901 Lakeside

Avenue, Cleveland, Ohio 44114, Attn:  Thomas M. Wearsch (twearsch@jonesday.com), (2) Jones

Day, 100 High Street, Boston, MA 02110, Attn:  John D. Casais (jcasais@jonesday.com), and (3)

Jones  Day,  250  Vesey  Street,  New  York,  NY  10281,  Attn:    Nicholas  J.  Morin

(nmorin@jonesday.com), (ii) Choate Hall & Stewart LLP, Two International Place, Boston, MA

02110, Attn: Brian P. Lenihan (blenihan@choate.com), and (iii) Delaware counsel to the DIP

Lenders and Stalking Horse Bidder, Richards, Layton & Finger, P.A., One Rodney Square, 920

North King Street, Wilmington, DE 19801, Attn: Zachary Shapiro (shapiro@rlf.com); (d) counsel

to the Prepetition Lenders: Hogan Lovells US LLP, 390 Madison Avenue, New York, NY 10017,

Attn: Erin N. Brady (erin.brady@hoganlovells.com) and Chris Bryant

(chris.bryant@hoganlovells.com); (e) all known creditors of the Debtors (for whom identifying

information and addresses are available to the Debtors); (f) the Internal Revenue Service; (g) all

applicable federal, state, and local taxing authorities; (h) all persons and entities known by the

Debtors to have expressed an interest to the Debtors in the Stalking Horse Assets; (i) all persons

and entities known by the Debtors to have asserted any lien, claim, interest or encumbrance in the

Stalking Horse Assets (for whom identifying information and addresses are available to the

Debtors); (j) Counterparties to Potential Assumed Contracts; (k) any governmental authority

known to have a claim against the Debtors in the Chapter 11 Cases; (l) the United States Securities

and Exchange Commission; (m) the United States Attorney's Office for the District of Delaware;

(n) United States Attorney General's Office for the District of Delaware; (o) the Office of the

Attorney General and the Secretary of State in each state in which the Debtors operate; (p) all of

the parties entitled to notice pursuant to Bankruptcy Rule 2002; and (q) all other parties as directed

by the Court (collectively, the "Sale Notice Parties").  On or about the same date or as soon as

reasonably practicable, the Debtors, in their discretion, may publish the Sale Notice on the Case

Information Website and shall publish a notice substantially similar to the Sale Notice in *The New

York Times National Edition* or similar publication with national circulation.  Service of the Sale

Notice on the Sale Notice Parties and publication thereof in the manner described in this Order

constitutes good and sufficient notice of the SH Auction and the Sale Hearing.  No other or further

notice is required.   The Debtors may utilize the Sale Notice for either the Stalking Horse Assets Sale, and the Debtors may make appropriate revisions to the form of Sale Notice to address any differences between the Stalking Horse Assets Sale and the Other Assets Sale.

11.      **Cancellation or Adjournment of Auction**.  If the Debtors do not receive any Qualified Bids (other than the Stalking Horse Bid):  (a) the Debtors shall cancel the SH Auction and will not hold the SH Auction; (b) the Stalking Horse Bidder will be deemed the Successful Bidder for the Stalking Horse Assets; and (c) the Debtors shall be authorized to seek approval of the Stalking Horse Agreement for the Stalking Horse Assets at the Sale Hearing; *provided, however*, that the Debtors may, in their discretion, open the SH Auction solely for the purpose of reflecting on the record that no other Qualified Bids were received other than the Stalking Horse Bid for the Stalking Horse Assets.

12.      The Debtors reserve the right, in their business judgment, to adjourn the SH Auction one or more times, to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Transaction at the prevailing Overbid amount.  For the avoidance of doubt, no adjournment of the SH Auction or any change in the timeline set forth in the Bidding Procedures shall impair the rights of the Stalking Horse Bidder under the Stalking Horse Agreement or the DIP Lenders under the DIP Order (including with respect to the milestones set forth in the DIP Documents).

13.     **Stalking Horse; Bid Protections; IP Address Adjustment**.  Bel Air Internet LLC and Everywhere Wireless, LLC is approved as the Stalking Horse Bidder for the Stalking Horse Assets, pursuant to the terms of the Stalking Horse Agreement.

14.     The Stalking Horse Bid for the Stalking Horse Assets shall be subject to higher or otherwise better Qualified Bids, in accordance with the terms of the SH Bidding Procedures; provided that approval of the Stalking Horse Agreement is subject to entry of the Sale Order.

15.     The Stalking Horse Bidder is a Qualified Bidder, and the Stalking Horse Bid as set forth in the Stalking Horse Agreement is a Qualified Bid.

16.     No person or entity, other than the Stalking Horse Bidder, shall, with respect to any bid for the Stalking Horse Assets, be entitled to any expense reimbursement, breakup fees, "topping" fee, termination fee, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with the Court any request for expense reimbursement, breakup fees, "topping" fee, termination fee, or other similar fee or payment of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

17.     The SH Bid Protections are each approved on the terms set forth in the Stalking Horse Agreement.  Pursuant to sections 105, 363, 364, 503 and 507 of the Bankruptcy Code, the Debtors are authorized to pay the SH Bid Protections to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse Agreement without further order of the Court.  The SH Bid Protections shall only be payable if the conditions to payment of such amounts set forth in the Stalking Horse Agreement have been satisfied.  The SH Bid Protections, to the extent payable under the terms of the Stalking Horse Agreement and this Order, shall not be subject to reduction of any kind.  The SH Bid Protections: (i) shall be deemed an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code;

(ii) shall constitute allowed superpriority expense claims against the Debtors' estates pursuant to sections 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code, (iii) shall have priority over and shall not be subordinate to any other superpriority administrative expense claims or administrative expense claims against the Debtors (including the Adequate Protection Superpriority Claim and Adequate Protection Liens (both as defined in the DIP Order)) other than the DIP Superpriority Claim, DIP Liens, and the Carve-Out (each as defined in the DIP Order); and (iv) shall survive the termination of the Stalking Horse Agreement and dismissal or conversion of the Chapter 11 Cases.

18.     The SH Bid Protections shall be payable by the Debtors as set forth in Section 4.2 of the Stalking Horse Agreement and in accordance with terms thereof and this Order without further order from the Court.  Such payment will be paid from the proceeds of any Alternative Transaction (as defined in the Stalking Horse Agreement) with priority over any claims of the Prepetition Lenders.

19.     The IP Address Adjustment (as defined in the Stalking Horse Agreement) is approved on the terms set forth in the Stalking Horse Agreement.  Pursuant to sections 105, 363, 364, 503 and 507 of the Bankruptcy Code, in the event that an Alternative Transaction (as defined in the Stalking Horse Agreement) is consummated, Sellers shall pay the IP Address amount, if any, to Purchaser.   Such payment shall be made concurrent with the closing of such Alternative Transaction and shall be funded out of the proceeds of such Alternative Transaction.  The IP Address Adjustment amount, to the extent payable under the terms of the Stalking Horse Agreement and this Order, shall not be subject to reduction of any kind.

20.     For the reasons stated on the record at the Bidding Procedures Hearing, the Purchaser's right to receive the IP Address Adjustment amount (the "IP Address Adjustment Claim"):  (i) shall be deemed an actual and necessary cost and expense of preserving the Debtors'

estates, within the meaning of section 503(b) of the Bankruptcy Code; (ii) shall constitute allowed administrative expense claims against the Debtors' estates pursuant to sections 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code, and (iii) shall survive the termination of the Stalking Horse Agreement and dismissal or conversion of the Chapter 11 Cases.

21.     The IP Address Adjustment Claim shall be payable by the Debtors as set forth in Section 4.2 of the Stalking Horse Agreement and in accordance with terms thereof and this Order without further order from the Court.  Such payment will be paid from the proceeds of any Alternative Transaction with priority over any claims of the Prepetition Lenders.

## IV.   Credit Bidding

22.     Unless otherwise ordered by the Court, any Qualified Bidder who has a valid, perfected and enforceable lien on any assets of the Debtors' estates (a "Secured Creditor") and the right, power and authorization to credit bid claims secured by such liens, shall have the right to credit bid all or a portion of such Secured Creditor's secured claims within the meaning of, and subject to, section 363(k) of the Bankruptcy Code, including the rights of the Debtors, the Creditors' Committee and other parties in interest in the Chapter 11 Cases to object to such credit bid; provided that (i) a Secured Creditor shall have the right to credit bid its secured claim only with respect to the collateral by which such Secured Creditor is secured and (ii) with respect to Barings Asset-Based Income Fund (US), L.P. and Babif Giga Blocker LLC (the "Prepetition Lender"), if the Challenge Period Termination Date (as defined in the Interim DIP Order or Final DIP Order, as applicable) has not occurred at the time the Prepetition Lender submits a credit bid, the Prepetition Lender shall, as part of any such credit bid, provide a written undertaking to the Debtors that the Prepetition Lender and/or an affiliate shall promptly pay cash to the Debtors for any assets acquired through such credit bid if a successful Challenge (as defined in the Interim

18

DIP Order or Final DIP Order, as applicable) later results in the Prepetition Lender not having a valid, perfected and enforceable lien on all or a portion of such assets, with the amount of any such cash payment to be equal to the difference between the value of such acquired assets (as determined by the Court) and the value of the Prepetition Lender's security interest in such acquired assets remaining after such Challenge, if any. The written undertaking and identity of the entity(ies) providing such undertaking shall be reasonably satisfactory to the Debtors and Creditors' Committee.

23.     If a credit bid is submitted in respect of any portion of the Stalking Horse Assets, such bid shall, in addition to satisfying the requirements of paragraph 22, include an amount sufficient to pay the Break Up Fee and Expense Reimbursement in cash.  To the extent applicable, a credit bid must include a copy of the direction by the applicable lenders to the applicable agent to authorize the submission of such credit bid.  In addition, any credit bid of the Prepetition Secured Obligations (as defined in the DIP Order) by the Prepetition Lender shall include an amount sufficient in cash to repay the DIP Obligations (as defined in the DIP Order) in full.  For the avoidance of doubt, the requirements set forth in this paragraph shall not apply to any credit bid submitted by the Stalking Horse Bidder.

24.     As set forth in the DIP Order, the DIP Lender (as defined in the DIP Order) is permitted to credit bid any of the DIP Obligations (as defined in the DIP Order) in any sale of the DIP Collateral (as defined in the DIP Order), and may assign such right to any of its affiliates (including the Stalking Horse Bidder).

**Other Assets Bidding Procedures**

**V.      Approval of Dates and Deadlines Requested in the Motion.**

25.      <u>**Bid Deadline**</u>.  **February 22, 2023, at 4:00 p.m. (prevailing Eastern Time)**, is the deadline by which bids for the Other Assets (as well as the deposit and all other documentation required under the Other Assets Bidding Procedures for Qualified Bidders) must be submitted in accordance with the terms of the Other Assets Bidding Procedures.

26.      <u>**Auction**</u>.  In the event the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids for one or more groups of the Other Assets, an Auction shall be conducted on **February 28, 2023, 10:00 a.m. (prevailing Eastern Time)** at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (or by videoconference to the live proceedings at this location) (the "<u>Other Assets Auction</u>").  The Debtors shall provide notice of the date, time, and place of the Other Assets Auction to the Qualified Bidders no later than one (1) day before such Other Assets Auction, and will post notice of the date, time, and place of the Auction no later than one business day before such Other Assets Auction on the Case Information Website; provided, however that any creditor who wishes to physically attend the Auction (other than (i) the parties set forth in the Bidding Procedures (including the Qualified Bidders), and (ii) such other parties the Debtors deem appropriate), shall provide at least two (2) days' notice of such attendance prior to the Auction by sending an email to counsel to the Debtors. The Debtors are authorized to conduct the Other Assets Auction in accordance with the Other Asset Bidding Procedures.

27.      As soon as is reasonably practicable following the conclusion of the Other Assets Auction, if held, the Debtors shall file with the Court a notice of the Other Assets Auction results and serve such notice by electronic mail (if known), or otherwise by overnight mail, on

Counterparties and any other parties that have requested service pursuant to Bankruptcy Rule 2002.  Objections to the conduct of the Other Assets Auction, the successful bidder for one or more groups of the Other Assets, or, if applicable, the Sale to the Successful Bidder must be made at the Sale Hearing.

28.      **Sale Hearing**.  The Sale Hearing for the Other Assets shall be held in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom No. 6, Wilmington, Delaware 19801, on **March 2, 2023, at 1:00 p.m. (prevailing Eastern Time)** or such other date and time that the Court may later direct; *provided*, *however*, that the Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by filing a notice on the Court's docket or by announcement of any continued hearing in open Court or on the Court's docket.

## VI.      Sale Objections (Other Assets Sale).

29.      Objections to the Sale of the Other Assets, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than **February 23, 2023, at 4:00 p.m.** (prevailing Eastern Time) (the "Other Assets Sale Objection Deadline") and (d) be served on the Objection Notice Parties and counsel to the successful bidder(s).  The failure of any objecting person or entity to timely file an objection prior to the Other Assets Sale Objection Deadline shall be a bar to the assertion at the Sale Hearing or thereafter of any objection to the relief requested by the Debtors, or the consummation and performance of the Sale of the Other Assets to the Successful Bidder, including the Sale of the Other Assets free and clear of all liens, claims, interests, and other encumbrances (with the same to attach to the cash proceeds of the Sale to the same extent and with the same order of priority, validity, force and effect which they previously had against the Other Assets, subject to the rights and defenses of the

21

Debtors and the Debtors' estates with respect thereto), and the Debtors' assumption and assignment of the Potential Assumed Contracts to the Successful Bidder.

**VII.     Auction, Bidding Procedures, and Related Relief.**

30.     The Other Assets Bidding Procedures, substantially in the form attached hereto as **Exhibit 1-A** (for the Other Assets), are incorporated herein and are hereby approved in their entirety, and the Other Assets Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to the sale of the Other Assets.  Any party desiring to submit a Bid for the Other Assets shall comply with the Other Assets Bidding Procedures and this Order.  The Debtors are authorized to take any and all actions necessary to implement the Other Assets Bidding Procedures.

31.     **Noticing Procedures**.  The Noticing Procedures as set forth in this Order and the Motion, including the form of Sale Notice attached hereto as **Exhibit 2**, are hereby approved.  Within two (2) business days after entry of this Order, the Debtors shall serve the Sale Notice by first-class mail upon the Sale Notice Parties.  On or about the same date or as soon as reasonably practicable, the Debtors, in their discretion, may publish the Sale Notice on the Case Information Website and may publish a notice substantially similar to the Sale Notice in *The New York Times National Edition* or similar publication with national circulation.  Service of the Sale Notice on the Sale Notice Parties and publication thereof in the manner described in this Order constitutes good and sufficient notice of the Other Assets Auction and the Sale Hearing.  No other or further notice is required.

32.     **Cancellation or Adjournment of Auction**.   If the Debtors receive only one Qualified Bids for one or more groups of the Other Assets, or, if they have selected a stalking horse bidder for certain of the Other Assets and no other Qualified Bids are received other than the

applicable stalking horse bidder: (a) the Debtors, after consultation with the Consultation Parties, may choose not to hold the Other Assets Auction; (b) the applicable Qualified Bidder or stalking horse bidder may, in the Debtors' discretion, be deemed the Successful Bidder for the applicable Other Assets; and (c) the Debtors shall be authorized to seek approval of the sale agreement or stalking horse agreement, as applicable, for the Other Assets at the Sale Hearing; *provided, however*, that the Debtors may, in their discretion, open the Other Assets Auction solely for the purpose of reflecting on the record that no other Qualified Bids were received other than any applicable stalking horse bid for the Other Assets, if a stalking horse bidder was selected prior to the Auction.

33.     The Debtors reserve the right, in their business judgment, to adjourn the Other Assets Auction one or more times, to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Transaction at the prevailing Overbid amount.

34.     **Stalking Horse Selection and Bid Protections for Other Assets**. The Debtors may solicit a stalking horse bid and a stalking horse agreement from one or more interested parties for the Other Assets.  On or before **February 20, 2023**, to the extent that the Debtors have selected a stalking horse bidder for the Other Assets, the Debtors shall announce the designation of such stalking horse bidder by filing a stalking horse bid notice on the Court's docket identifying the stalking horse bidder and the Other Assets that are the subject of the stalking horse bid, and attaching any agreement accompanying the stalking horse bid.

DOCS_DE:241719.12 31213/001

35.    The Debtors may provide any stalking horse bidder for the Other Assets with customary bid protections (the "Other Assets Bid Protections"), such as a break-up fee and expense reimbursement as may be agreed between the Debtors and the stalking horse bidder, in the event the Stalking Horse Bid is contingent on such Bid Protections being awarded; provided, however, that such bid protections in the aggregate shall be no more than 3% of the cash amount of any sale and shall be subject to entry of an order approving such bid protections by the Court.  The Debtors may seek approval of the bid protections, either prior to or after any Auction, by filing a motion seeking a hearing on shortened notice.   The stalking horse bid notice shall be filed no later than two (2) business days prior to the date the Debtors seek to hold a hearing for approval of the bid protections, or as close to such deadline as is reasonably practicable under the circumstances in light of the shortened notice.

**Approval of the Assumption and Assignment Procedures for Bidding Procedures**

36.    The Assumption and Assignment Procedures set forth in the Motion and herein are hereby approved for purposes of both the Stalking Horse Assets and the Other Assets.  The Potential Assumption and Assignment Notice substantially in the form attached to this Order as **Exhibit 3** is approved for both the Stalking Horse Assets and Other Assets.  No other or further notice is required.  The Debtors may utilize the Potential Assumption and Assignment Notice for either the Stalking Horse Assets Sale or the Other Assets Sale, and the Debtors may make appropriate revisions to the form of Potential Assumption and Assignment Notice to address any differences between the Stalking Horse Assets Sale and the Other Assets Sale.

37.    No later than two (2) business days after entry of this Order, the Debtors shall file with the Court, and cause to be published on the Case Information Website, the Potential Assumption and Assignment Notice and serve such notice (a) by overnight delivery service upon

the Counterparties at the address set forth in the notice provision of the applicable Potential Assumed Contract (and their counsel, if known) and (b) by first class mail, email, or fax upon the Objection Notice Parties.  The Potential Assumption and Assignment Notice shall notify the Counterparties that the applicable Contracts and Leases are subject to potential assumption and assignment and of the Debtors' proposed Cure Amounts relating to such Contracts and Leases.

38.    Any Counterparty may object to the proposed assumption or assignment of its Potential Assumed Contract, the Debtors' proposed Cure Amounts with respect to its Potential Assumed Contract, if any, or the ability of the Stalking Horse Bidder or any other potential bidder to provide adequate assurance of future performance (collectively, an "Assumption and Assignment Objection"). All Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Amount the Counterparty believes is required to cure defaults (as that concept is contemplated by section 365 of the Bankruptcy Code) under the relevant Potential Assumed Contract, (d) be filed by no later than **4:00 p.m. (prevailing Eastern Time) on February 23, 2023**, and (e) be served on the Objection Notice Parties.

39.    If a Counterparty files a timely Assumption and Assignment Objection, the Court will hear and determine such objection at the Sale Hearing or such other date that the Debtors and the Successful Bidder shall determine (subject to the Court's calendar).

40.    If a Counterparty fails to file with the Court and serve a timely Assumption and Assignment Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Potential Assumed Contract; and, notwithstanding anything to the contrary in the Potential Assumed Contract, or any other

25

document, the Cure Amounts set forth in the Potential Assumption and Assignment Notice shall be controlling and shall be the only amount necessary to cure outstanding defaults under the applicable Potential Assumed Contract under section 365(b) of the Bankruptcy Code arising out of or related to the Potential Assumed Contract following the assumption and assignment thereof, whether known or unknown, due or to become due, accrued, absolute, contingent or otherwise; and the Counterparty shall be forever barred from asserting any cure or other pre-assignment amounts in excess of the Cure Amount set forth in the applicable Potential Assumption and Assignment Notice with respect to such Potential Assumed Contract against the Debtors, the Successful Bidder or the property of any of them.

41.    In the event that any Potential Assumed Contract is added to the Contracts Schedule or previously-stated Cure Amounts are modified in accordance with the Stalking Horse Agreement, the Successful Bidder's asset purchase agreement or the Assumption and Assignment Procedures, the Debtors will promptly serve a supplemental assumption and assignment notice, by overnight mail and, if known, e-mail, on the applicable Counterparties (collectively, a "Supplemental Assumption and Assignment Notice"). Each Supplemental Assumption and Assignment Notice will include the same information with respect to the applicable Potential Assumed Contract as is required to be included in the Potential Assumption and Assignment Notice.

42.    Any Counterparty listed on a Supplemental Assumption and Assignment Notice whose Potential Assumed Contract is proposed to be assumed and assigned and was not included in the Potential Assumption and Assignment Notice may object to the proposed assumption or assignment of its Potential Assumed Contract, the Debtors' proposed Cure Amounts with respect to its Potential Assumed Contract, if any, or the ability of the Successful Bidder to provide

26

adequate assurance of future performance (collectively, a "Supplemental Assumption and Assignment Objection"). All Supplemental Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Amounts the Counterparty believes is required to cure defaults (as that concept is contemplated by section 365 of the Bankruptcy Code) under the relevant Potential Assumed Contract, (d) be filed by no later than ten (10) calendar days after the date of service of such Supplemental Assumption and Assignment Notice and (e) be served on the Objection Notice Parties.  Each Supplemental Assumption and Assignment Objection, if any, shall be resolved in the same manner as an Assumption and Assignment Objection.  For the avoidance of doubt, if a Potential Assumed Contract was listed in the Potential Assumption and Assignment Notice and the previously-stated Cure Amount is modified in the Supplemental Assumption and Assignment Notice, the Counterparties to such Potential Assumed Contract may file a Supplemental Assumption and Assignment Objection only if such objection is to the modified Cure Amount.

43.    If a Counterparty fails to file with the Court and serve on the Assumption and Assignment Objection Notice Parties a timely Supplemental Assumption and Assignment Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Potential Assumed Contract; and, notwithstanding anything to the contrary in the Potential Assumed Contract, or any other document, the Cure Amounts set forth in the Supplemental Assumption and Assignment Notice shall be controlling and shall be the only amount necessary to cure outstanding defaults under the applicable Potential Assumed Contract under section 365(b) of the Bankruptcy Code arising out of or related to the Potential Assumed Contract following the assumption and assignment thereof, whether known or unknown,

due or to become due, accrued, absolute, contingent or otherwise; and the Counterparty shall be forever barred from asserting any cure or other pre-assignment amounts in excess of the Cure Amount set forth in the applicable Supplemental Assumption and Assignment Notice with respect to such Potential Assumed Contract against the Debtors, the Successful Bidder or the property of any of them.

### Miscellaneous Provisions for Bidding Procedures

44.     Notwithstanding anything in this Order to the contrary, unless Cigna (as defined in the Objection of Cigna to Motion of the Debtors for Entry of Orders: (I)(A) Approving Bidding Procedures for the Sale of (X) Stalking Horse Assets and (Y) Other Assets, (B) Authorizing the Debtors to Enter into Stalking Horse Agreement for Stalking Horse Assets and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief [D.I. 75] (the "Cigna Objection")) and the Debtors agree otherwise, the Debtors shall provide to Cigna, through its counsel of record, no later than two (2) business days prior to the Sale Hearing, written notice of Debtors' irrevocable (subject to closing of the proposed Sale) decision as to whether or not it proposes to assume and assign any or all of the Cigna Agreements (as defined in the Cigna Objection) to the Successful Bidder as part of the proposed Sale. This resolves the Cigna Objection.

DOCS_DE:241719.12 31213/001

45.    The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

46.    In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

47.    This Order, and the claims granted hereunder in favor of the Stalking Horse Bidder on account of the SH Bid Protections, shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

48.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

49.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

50.    To the extent the dates and deadlines herein are modified pursuant to the Bidding Procedures and such modification is inconsistent with the requirements of Local Rule 9006-1(b), such requirements shall be deemed satisfied.

51.    Notwithstanding any Bankruptcy Rule (including, without limitation, Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014) or Local Rule that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

52.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

53.     All persons or entities (whether or not Qualified Bidders) that participate in the bidding process, including submitting a bid for any of the Assets during the sale process and/or Auction, shall be deemed to have knowingly and voluntarily (a) submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of the Stalking Horse Assets or the Other Assets, the Auction, and any Transaction, (b) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes related to the bidding process, the Auction, and/or any Transaction) to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution, and (c) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

54.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.  The Court has the authority to fashion appropriate relief, on an emergency basis or otherwise, for any violations of this Order or the Bidding Procedures.

**Dated: February 8th, 2023**
**Wilmington, Delaware**

J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE

30