# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| GIGAMONSTER NETWORKS, LLC, *et al.*,[1] ) | Case No. 23-10051 (JKS) |
| ) | |
| Debtors. ) | (Jointly Administered) |
| ) | |
| ) | **Ref. Docket No. 70** |

**ORDER: (I) AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN
BANK STREET GROUP LLC AS INVESTMENT BANKER TO THE DEBTORS
EFFECTIVE AS OF THE PETITION DATE; (II) APPROVING THE TERMS OF THE
ENGAGEMENT AGREEMENT; (III) MODIFYING CERTAIN TIMEKEEPING
REQUIREMENTS; AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the application (the "Application")[2] filed by the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" or the "Company"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order (this "Order"): (i) authorizing the Debtors to employ and retain Bank Street Group LLC ("Bank Street") as investment banker effective as of the Petition Date in accordance with the terms and conditions set forth in that certain letter agreement dated as of January 12, 2023 (the "Engagement Agreement"); (ii) approving the terms of the Engagement Agreement, including the fee and expense structure and the indemnification, contribution,

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: GigaMonster Networks, LLC (2854); Gigasphere Holdings LLC (0250); GigaMonster, LLC (3014); Fibersphere Communications LLC (0163); and Fibersphere Communications of California LLC (5088). The Debtors' business address is 350 Franklin Gateway, Suite 300, Marietta, GA 30067.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Application.

reimbursement, and related provisions set forth therein; (iii) modifying certain information requirements of Local Rule 2016-2; and (iv) granting related relief, all as more fully set forth in the Application; and upon consideration of the Bank Street Declaration attached to the Application as Exhibit B; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that notice of the Application and a hearing on the Application was sufficient under the circumstances, and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein and that the terms and conditions of Bank Street's engagement, including but not limited to the fee and expense structure set forth in the Engagement Agreement and summarized in the Application, are reasonable as required by section 328(a) of the Bankruptcy Code; and the Court having found that Bank Street is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1. The Application is GRANTED as set forth herein.

2. The Debtors are hereby authorized, pursuant to sections 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1, to employ and retain Bank Street as their investment banker in accordance with the terms and conditions set forth in the Engagement Agreement, effective as of the Petition Date, and to pay fees and reimburse expenses to Bank Street on the terms and at the times specified in the Engagement Agreement, subject to the modifications set forth herein.

3. The terms of the Engagement Agreement, attached hereto as Exhibit 1, are approved in all respects except as limited or modified herein.

4. All of Bank Street's compensation set forth in the Engagement Agreement, including, without limitation, the Professional Fees and Expenses, is approved pursuant to section 328(a) of the Bankruptcy Code, and Bank Street shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Agreement, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders of the Court.

5. None of the fees payable to Bank Street shall constitute a "bonus" or fee enhancement under applicable law.

6. Bank Street shall file interim and final applications for allowance of compensation for services and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code; *provided*, however, that the final fee application

3

filed by Bank Street shall be subject to review only pursuant to the standard of review set forth in section 328 of the Bankruptcy Code and not subject to the standard of review set forth in section 330 of the Bankruptcy Code.

7. Notwithstanding any provision to the contrary in this Order, the U.S. Trustee shall have the right to object to Bank Street's request(s) for interim and final compensation based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code. This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Bank Street's fees under the standard set forth in the preceding sentence. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Bank Street's fees.

8. Bank Street is granted a waiver of the information requirements relating to compensation requests set forth in Local Rule 2016-2(d) to the extent requested in the Application. Among other things, Bank Street shall maintain records of services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in half-hour (.5) increments), and the identity of the individuals who provided those services. Bank Street shall include such records in its final fee application.

9. The Debtors shall be bound by the indemnification, contribution, reimbursement, exculpation, and other provisions of the Engagement Agreement and will indemnify and hold harmless Bank Street and the other Indemnified Parties (as defined in the

Engagement Agreement), pursuant to the Engagement Agreement, subject, during the pendency of the cases, to the following:

(a) The Indemnified Parties (as defined in the Engagement Agreement) shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court;

(b) The Debtors shall have no obligation to indemnify any Indemnified Party, or provide contribution or reimbursement to any Indemnified Party, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from any Indemnified Party's gross negligence, fraud, willful misconduct, breach of fiduciary duty, if any, bad faith, or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of any Indemnified Party's contractual obligations, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which the Indemnified Party should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order; and

(c) If, before the earlier of: (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal); and (ii) the entry of an order closing the Chapter 11 Cases, any of the Indemnified Parties believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, such Indemnified Party must file an application therefor in this Court, and the Debtors may not pay any such amounts to such Indemnified Party before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by the Indemnified Parties for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Parties. All parties in interest shall retain the right to object to any demand by

5

the Indemnified Parties for indemnification, contribution, or reimbursement.

10. Notwithstanding paragraph 4(g) of the Engagement Agreement, Bank Street does not hold or trade in any securities of the Debtors and will not hold or trade any securities of the Debtors throughout the pendency of the Chapter 11 cases.

11. Notwithstanding any Bankruptcy Rule or Local Rule that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

12. The relief granted herein shall be binding upon any chapter 11 trustee appointed in the Chapter 11 Cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

13. To the extent that there may be any inconsistency between the terms of the Application, the Bank Street Declaration, the Engagement Agreement, and this Order, the terms of this Order shall govern.

14. The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

15. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# EXHIBIT 1

## Engagement Agreement

# bankstreet

The Bank Street Group LLC
Four Landmark Square, 3rd Floor
Stamford, CT 06901

Tel: (203) 252-2800
Fax: (203) 252-2810
www.bankstreet.com

GigaSphere Holdings LLC
350 Franklin Gateway
Suite 300
Marietta, GA 30067

January 12, 2023

Attention:    Michael T. Sullivan
              Head of Restructuring Committee

This letter supersedes and replaces that certain Engagement Letter entered into between GigaSphere Holdings LLC and The Bank Street Group LLC dated October 27, 2021, and is effective as of September 1, 2022.

This letter (the "Agreement") confirms the agreement between GigaSphere Holdings LLC (the "Company") and The Bank Street Group LLC ("Bank Street") as follows:

1.  The Company hereby engages Bank Street to act as its exclusive financial advisor with respect to exploring the possible sale of the Company (hereinafter referred to as a "Sale" or the "Transaction").

2.  Bank Street hereby accepts the engagement and, in that connection, to the extent requested by the Company, agrees to:

    (a)   Undertake, in consultation with members of the Company's management, a business and financial analysis of the potential Sale;

    (b)   Assist in the preparation of marketing materials concerning the Company for distribution and presentation to prospective acquirors of the Company;

    (c)   Assist in the preparation and implementation of a marketing plan;

    (d)   Assist in the solicitation of interested prospective acquirors, the evaluation of proposals received from such acquirors;

    (e)   Assist in structuring and negotiating the Sale;



(f) Assist the Company and its advisors and lead the auction process during a potential bankruptcy filing and provide support in connection with such bankruptcy process; and

(g) Be available to meet with the Company's Board of Directors to discuss the Transaction and its financial implications.

3. For purposes hereof, a "Sale" of the Company or a "Transaction" shall mean any transaction or series of related transactions whereby, directly or indirectly, control of, or a material interest in, the Company or any of its businesses or assets is transferred for consideration, including, without limitation, a sale or exchange of stock (including shares issuable upon conversion of any securities convertible into stock) or assets, a lease or license of assets with or without a purchase option, or a merger, consolidation or reorganization.

4. In consideration of our services pursuant to this Agreement, the Company agrees to pay Bank Street the following compensation:

(a) If, during the duration of this Agreement or within 12 months after termination of this Agreement as discussed below, the Company consummates the Sale, a fee (the "Transaction Fee") equal to 4.0% of the Aggregate Consideration (as hereinafter defined).

(b) If a Transaction is not consummated, but the Company is or has been granted an option to purchase any securities or assets or becomes entitled to receive a "break-up" or "topping" fee or any other payment as a result of, without limitation, (i) the termination or cancellation of an acquiror's efforts to effect a Transaction, (ii) an amount in settlement of, or judgment in, any litigation or dispute relating to a Transaction or an acquiror's investment in the Company, or (iii) any payment from an acquiror not otherwise described in paragraph 4 (including any reimbursement of expenses), then the Company shall pay to Bank Street, upon receipt thereof, a cash fee (a "Break-Up Fee") in lieu of the Transaction Fee equal to the greater of 25% of such fee, judgment, amount or value of underlying securities or assets.

(c) Under no circumstances shall the Transaction Fee due to Bank Street be less than $750,000.00.

The compensation pursuant to paragraph 4 above shall be payable by the Company to Bank Street upon the acquisition of 50% or more voting power of the Company's



outstanding voting securities in the case of a tender offer or multiple-step acquisition, or in the case of merger, asset acquisition or other form of acquisition transaction, at the time of the closing of the Sale (the "Closing"), including any compensation that is attributable to that part of consideration which is contingent upon the occurrence of some future event (e.g., the realization of earnings projections, including the present value of any expected future earnout payments). Any fee payable with respect to a Transaction involving the acquisition of 50% or more of the voting power of the then outstanding voting securities of the Company will be computed as if all voting securities of the Company were acquired in such Transaction.

For purposes hereof, the term "Aggregate Consideration" shall mean the total fair market value of all cash, securities, or any other form of consideration paid or to be paid, directly or indirectly, by the acquiring party to the Company and its securityholders (treating any shares issuable upon exercise of "in-the-money" options, warrants or other "in-the-money" rights of conversion as outstanding) in connection with the Transaction plus the amount of any debt or preferred stock assumed or acquired (directly or indirectly) in connection with the Transaction.

If any portion of the Aggregate Consideration is paid in the form of securities, the value of such securities, for purposes of calculating the Transaction Fee, will be determined by the average of the last sales prices for such securities on the five trading days ending five trading days prior to the Closing. If such securities do not have an existing public trading market, the value of the securities shall be the mutually agreed upon fair market value on the day prior to the Closing.

(a) The Company will promptly reimburse Bank Street, periodically upon request, for all out-of-pocket expenses incurred in connection with this Agreement, including the fees and expenses of legal counsel and of any other consultant or advisor retained by Bank Street.

(b) In the event that, during the period of the engagement of Bank Street hereunder, the Company or any of its officers, directors, employees, appraisers, independent accountants, legal counsel and other consultants and advisors (collectively, the "Representatives") are contacted by or on behalf of any party concerning the possibility of a Transaction, the Company will promptly so inform Bank Street in order that Bank Street can evaluate such party and its interest and assist the Company in any subsequent discussions.

(c) In connection with Bank Street's engagement hereunder, the Company will furnish Bank Street with all information concerning the Company that Bank Street deems appropriate and will provide Bank Street with access to the Company's Representatives.



(d) The Company recognizes and confirms that, in providing our services pursuant to this Agreement, Bank Street will rely upon and assume the accuracy and completeness of all financial and other information furnished by or discussed with the Company and its Representatives or available from public sources and Bank Street does not assume responsibility for the accuracy or completeness of any such information. Bank Street will have no obligation to verify such information or to conduct any independent evaluation or appraisal of the assets or liabilities of the Company or any other party. It is understood and agreed that Bank Street will act under this Agreement as an independent contractor with duties solely to the Company and nothing in this letter or the nature of our services shall be deemed to create a fiduciary or agency relationship between Bank Street and the Company or its stockholders.

(e) The Company agrees to the indemnification provisions attached hereto as Annex A (the "Indemnification Provisions"), which provisions are incorporated herein in their entirety and shall survive the termination of this Agreement. Other than as set forth in the Indemnification Provisions, nothing in this letter is intended to confer upon any other person (including stockholders, employees or creditors of the Company) any rights or remedies hereunder or related hereto. The Company also agrees that Bank Street shall not have any liability (including without limitation, liability for any losses, claims, damages, obligations, penalties, judgments, awards, liabilities, costs, expenses or disbursements) in contract, tort or otherwise to the Company, or to any person claiming through the Company, in connection with the engagement of Bank Street pursuant to this Agreement and the matters contemplated hereby, except to the extent any such liability found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence or willful misconduct of Bank Street.

(f) Bank Street's engagement hereunder may be terminated at any time by either Bank Street or the Company upon written notice thereof to the other party; provided, however, that Bank Street will continue to be entitled to the full amount of the Transaction Fee, Milestone Fee, Opinion Fee, Break-Up Fee and any other fees pursuant to the terms and conditions set forth in paragraph 4 in the event that any of the applicable events occur prior to the expiration of 12 months after such termination; and provided, further, that any termination of Bank Street's engagement hereunder shall not affect the Company's obligation to pay any expenses incurred as provided in paragraph 5, and any indemnification or other obligation pursuant to paragraph 9.

(g) Bank Street is a private investment firm providing investment banking and financial advisory services. In the course of its activities, Bank Street or its affiliates may hold long or short positions and may trade or otherwise effect transactions for its own account or

January 12, 2023
Page 5 of 8



    the accounts of customers in debt or equity securities or senior debt of the Company or other companies which may be participants in the Transaction.

(h)     This Agreement embodies the entire agreement and understanding of the Company and Bank Street with respect to the subject matter.  The provisions of this Agreement may not be modified, amended or supplemented except in writing executed by the Company and Bank Street.

(i)     The validity and interpretation of this Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of New York.  New York law shall also govern any claims asserted in any suit, action or proceeding arising out of or relating to this Agreement or the Indemnification Provisions.  The Company irrevocably (a) submits to the jurisdiction of any court of the State of New York or the United States District Court for the Southern District of the State of New York for the purpose of any suit, action, or other proceeding arising out of this Agreement, or any of the agreements or transactions contemplated hereby (each, a "Proceeding"), (b) agrees that all claims in respect of any Proceeding may be heard and determined in any such court, (c) waives, to the fullest extent permitted by law, any immunity from jurisdiction of any such court or from any legal process therein, (d) agrees not to commence any Proceeding other than in such courts and (e) waives, to the fullest extent permitted by law, any claim that such Proceeding is brought in an inconvenient forum.

(J)     EACH OF BANK STREET AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY LAW, ON BEHALF OF ITS RESPECTIVE EQUITY HOLDERS AND CREDITORS) HEREBY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED UPON, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, ANY TRANSACTION).

January 12, 2023
Page 6 of 8



We are delighted to accept this engagement and look forward to working with you on this assignment. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter.

Very truly yours,

THE BANK STREET GROUP LLC

By: _____
James H. Henry
Senior Managing Director

ACCEPTED AND AGREED TO:

GIGASPHERE HOLDINGS LLC

By: _____
Michael T. Sullivan
Head of Restructuring Committee

January 12, 2023
Page 7 of 8



ANNEX A

The Company agrees to indemnify and hold harmless Bank Street, to the fullest extent permitted by law, from and against any and all losses, claims, damages, obligations, assessments, penalties, judgments, awards, and other liabilities (collectively, "Liabilities"), and will fully reimburse Bank Street for any and all fees, costs, expenses and disbursements (collectively, "Expenses"), as and when incurred, of investigating, preparing or defending any claim, action, suit, proceeding or investigation, whether or not in connection with pending or threatened litigation or arbitration, and whether or not Bank Street is a party (collectively, "Actions") (including any and all legal and other Expenses in giving testimony or furnishing documents in response to a subpoena or otherwise), arising out of or in connection with advice or services rendered or to be rendered by Bank Street pursuant to the agreement dated September 1, 2022 between Bank Street and the Company, as it may be amended from time to time (the "Agreement"), the transactions contemplated hereby or Bank Street's actions or inactions in connection with any such advice, services or transactions; provided, however, such indemnity agreement shall not apply to any portion of any such Liability or Expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence or willful misconduct of Bank Street.

These Indemnification Provisions shall be in addition to any liability which the Company may otherwise have to Bank Street or the persons indemnified below in this sentence and shall extend to the following: Bank Street Holding LLC, The Bank Street Group LLC, its affiliated entities, directors, officers, employees, associated persons, legal counsel, agents and controlling persons (within the meaning of the federal securities laws). All references to Bank Street in these Indemnification Provisions shall be understood to include any and all of the foregoing. Capitalized terms used herein without definition shall have the meanings ascribed thereto in the Agreement.

If any Action is commenced, as to which Bank Street proposes to demand indemnification, it shall notify the Company with reasonable promptness; provided, however, that any failure by Bank Street to notify the Company shall not relieve the Company from its obligations hereunder. Bank Street shall have the right to retain counsel of its own choice to represent it, and the Company shall pay the Expenses of such counsel; and such counsel shall, to the extent consistent with its professional responsibilities, cooperate with the Company and any counsel designated by the Company. The Company shall be liable for any settlement of any claim against Bank Street made without Bank Street's written consent. The Company shall not, without the prior written consent of Bank Street, settle or compromise any claim, or permit a default or consent to the entry of any judgment, in any Action in respect of which indemnification may be sought hereunder.

January 12, 2023
Page 8 of 8



      In order to provide for just and equitable contribution, if a claim for indemnification pursuant to these Indemnification Provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification in such case, then the Company, on the one hand, and Bank Street, on the other hand, shall contribute to the Liabilities and Expenses to which the indemnified persons may be subject in accordance with the relative benefits received by the Company, on the one hand, and Bank Street, on the other hand, and also the relative fault of the Company, on the one hand, and Bank Street, on the other hand, in connection with the statements, acts or omissions which resulted in such Liabilities and Expenses and the relevant equitable considerations shall also be considered. Notwithstanding the foregoing, Bank Street shall not be obligated to contribute any amount pursuant to this paragraph that exceeds the amount of fees previously received by Bank Street pursuant to the Agreement.

      Neither termination nor completion of the engagement of Bank Street referred to above shall affect these Indemnification Provisions which shall remain operative and in full force and effect.