**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| GigaMonster Networks, LLC, *et al.*,[1] | Case No. 23-10051 (JKS) |
| Debtors. | Jointly Administered |
|  | **Objection Deadline: February 28, 2023 @ 4:00 p.m. (by agreement)** |
|  | **Hearing Date: March 2, 2023 @ 1:00 p.m.** |
|  | **Related to Docket No. 113** |

**EQUINIX, INC.'S OBJECTION TO SALE**
**AND REQUEST FOR ADEQUATE PROTECTION**

Equinix, Inc. ("Equinix") submits this objection (the "Objection") to any sale or sales contemplated under the Court's February 8, 2023 Order [D.I. 113] (the "Bid Procedures Order").[2] In support of this Objection, Equinix states as follows:

**PRELIMINARY STATEMENT**

1. The Debtors seek to sell substantially all of their assets, but are not assuming and assigning any contract with Equinix relating to the Debtors' use of Equinix's data centers. Instead, the Debtors apparently seek to sell their servers and other property located at unspecified Equinix's data centers, allow a buyer (or buyers) to operate that property in Equinix's data centers, and provide transition services to the buyer through Equinix for an unspecified time period, leaving unspecified the buyer's and the Debtors' respective responsibilities to pay.

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number are: GigaMonster Networks, LLC (2854); Gigasphere Holdings LLC (0250); GigaMonster, LLC (3014); Fibersphere Communications LLC (0163); and Fibersphere Communications of California LLC (5088). The Debtors' business address is 350 Franklin Gateway, Suite 300, Marietta, GA 30067.

[2] Any capitalized term not otherwise defined herein shall have the same meaning as that ascribed to it in the Bid Procedures Order.

2. Presumably, the buyer will use this transition services period to move the servers and other equipment it purchases to another data center. While moving servers to another data center sounds like a simple process, the Court should understand that it is anything but. Changing data centers potentially involves physically moving equipment in sensitive, high-security data centers. If done incorrectly or by unqualified individuals, it can cause significant damage to Equinix and its many other customers at its data centers.

3. If the Proposed Sale Order Language (as later defined) is included in any order approving the sale, Equinix will consider its Objection resolved. The Proposed Sale Order Language requires the Debtors to advise Equinix of the specific property that is sold, abandons any remaining property at Equinix's data centers, provides that Equinix invoices the buyer and the Debtors simultaneously, and allows Equinix to terminate service on notice if not paid.

## BACKGROUND

**A.     Data Centers, Generally, and Equinix's MSA.**

4. A data center is any facility that houses centralized computer and telecommunications systems. A data center can be as small as a server closet, or as large as a millions-of-square-feet standalone building. When an organization requires a data center, it may not necessarily build and operate that data center on its own. Instead, an organization can turn to vendors to provide those services.

5. Equinix is the world's largest data center and colocation provider. Equinix connects the world's leading businesses to their customers, employees, and partners inside the world's most connected data centers, spread across twenty-four countries on five continents. As a colocation provider, Equinix supplies cooling, power, internet bandwidth, and physical security to many

customers in a particular data center, while Equinix's various customers provide their own servers and other computing hardware installed in that facility.

6. Typically, Equinix's relationship with its customer is governed by a master services agreement, a master country agreement, global terms and conditions, or similar governing agreement (an "MSA"), under which Equinix and the customer enter into individual orders. Among other details, the orders typically specify any services to be provided by Equinix, the specific Equinix data center(s) involved, the type of equipment the customer is entitled to install, the specific Equinix product description, and a specific allocation of the amount of electricity and cooling to which the customer is entitled.

7. Equinix's customers, through an MSA and orders, are granted a license to install their owned or leased servers within Equinix's data centers. A customer's license is limited to specified cabinets, cages, or subdivisions of cabinets or cages. The MSA generally limits assignment, delegation, and transfer of all or any part of the licensed space.

**B.  The Bid Procedures Order and Contract Assumption.**

8. As is typical, the Bid Procedures Order approved a process for assuming and assigning leases and executory contracts. On February 8, 2023, the Debtors filed two contract-assumption notices pursuant to the Bid Procedures Order [D.I. 117, 118]. Neither contract notice included a contract with Equinix. Accordingly, Equinix can only assume that the Debtors have no intention to assume and assign any contract with Equinix in connection with any sale of the Debtors' assets.

**C.     The Sale Motion and Transition Services Agreement.**

9.     The Sale Motion refers to a Transition Services Agreement several times, but no Transition Services Agreement is attached.  The Stalking Horse Agreement is attached to the Sale Motion, but the schedules to the Stalking Horse Agreement are not included.

10.     Because the key documents are not on the docket, this transaction is vague and fraught with risk, as to Equinix. For example:

  i.   <u>Ambiguity Regarding Property Sold</u>: The Debtors are selling "Specified Assets," defined by reference to exhibits and appendixes not attached to the Stalking Horse Agreement. Nor is any property identified by location. Accordingly, Equinix is left to guess what property at its data centers is sold, and what property would remain unsold at the data centers.

  ii.  <u>Ambiguity Regarding Insurance</u>: All Equinix MSAs require Equinix's customers to maintain insurance coverage.  Because the Transition Services Agreement is not attached, Equinix can only guess as to whether the Debtors' insurance policies required under the MSA are to remain in place, whether the buyer will obtain the requisite insurance, and other important details

  iii. <u>Improper Access to Equinix's Data Centers</u>: The Debtors' access to Equinix's data centers, through its own personnel or third parties, is limited by the applicable TSA.  Presumably, the buyer will want access to Equinix's data centers, and presumably the Transition Services Agreement gives the buyer that right.  Such an entitlement would improperly broaden the Debtors' rights at Equinix's data centers.

  iv.  <u>Lack of Detail Regarding Payment for Transition Services</u>: Presumably, the Transition Services Agreement obligates the buyer to pay the Debtors for transition services, but because there is no agreement to review, contract counterparties like Equinix can only speculate and hope.

## **OBJECTION**

**A.     The Debtors Should Specify the Property Being Sold.**

11.     If the Debtors intend to sell property currently located at Equinix's data centers, that should be specified.  If the Debtors intend to remove or abandon property at Equinix's data centers, the Debtors should be required to do so prior to the sale closing.  Otherwise, Equinix could be left to

deal with the untenable ambiguity of having two parties' property in the same licensed space.  Equinix submits that, before the sale can be approved, the Debtors should provide Equinix a list of any property sold or to be removed from Equinix's data centers.

**B.**     **All Access and Rights to Equinix Data Centers During the Transition Services Period Should Be Subject to the Debtors' MSA with Equinix.**

12.     Because the Debtors are not assuming and assigning any contract with Equinix, no buyer is obtaining any contractual rights as it relates to the use and access of Equinix's data centers.  Further, to the extent the Debtors continue to use Equinix's data centers, the Debtors' use should be subject to the applicable MSA in all respects, including security procedures and insurance requirements.

**C.**     **The Buyer Should Pay Equinix Directly, and the Buyer's and the Debtors' Obligations to Equinix Should Not Be Limited by any Asset Purchase Agreement or the Transition Services Agreement.**

13.     The obligation to fund the transition services remains unclear.  No Transition Services Agreement is before the Court, at this point.  The Debtors ability to operate during the transition services period remains an open question, with the Debtors' funding only budgeted through the sale hearing.  See Final DIP Order [D.I. 180] (providing a nine-week DIP budget, ending the week of March 15, 2023).  Suffice it to say that Equinix and other creditors are facing ambiguity and risk during this transition services period.

14.     Equinix should not be forced to bear such payment risk.  Any obligation to Equinix during the transition services period should be appropriately budgeted and paid in full in the ordinary course.

**D.     Equinix Demands Adequate Protection Consistent with This Objection.**

15.     Independent of the foregoing objections to the sale, Equinix is entitled to adequate assurance because its data centers are proposed to be "used" by the Debtors in connection with the transition services:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).  Section 361 of the Bankruptcy Code provides that, where adequate protection of an entity's interest in property is required by section 363, it may be provided in one of three ways: (i) cash payment, (ii) provision of "additional or replacement lien" on other property, and (iii) "granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."  11 U.S.C. § 361(1)–(3).  The Debtors bear the burden of proof on adequate protection at the sale hearing.  See 11 U.S.C. § 363(p)(1).  Equinix requests that the Court hold the Debtors to this burden at the hearing, and Equinix reserves the right to respond to any arguments that may be raised by the Debtors at that time.

**PROPOSED LANGUAGE RESOLVING OBJECTION**

16.     Equinix will consider this Objection resolved with the addition of the following paragraph (the "Proposed Sale Order Language") in any order approving the Sale Motion:

> *Equinix Inc.'s Objection to Sale and Request for Adequate Protection* [D.I. ____] (the "Equinix Objection") is resolved as set forth in this paragraph.  Any capitalized term not otherwise defined herein shall have the same meaning as that ascribed to it in the Equinix Objection. To the extent this paragraph number __ conflicts with any other portions of this Order, any asset purchase agreement, or any transition services agreement, this paragraph __ controls.  Within three days after the closing of the Approved Transaction, as to any of the Debtors' owned or leased property located at any data center owned by Equinix (the "Equinix-Located Property"), the Debtors will provide Equinix a list specifying the Equinix-Located Property that was sold in connection with the sale (the "Purchased Property").  All other Equinix-Located

Property that is not Purchased Property shall be deemed abandoned pursuant to section 554(a) of the Bankruptcy Code, effective as of the closing, and Equinix shall be free to dispose of such property without liability to any party and without further notice or order of the Court. Access to Equinix's data centers shall be subject to Equinix's security procedures and any applicable MSA.  All amounts invoiced by Equinix to the Debtors after the closing relating to Equinix's data centers shall be sent to the Debtors and any buyer, and paid within 15 days of receipt.  To the extent that Equinix is not paid within 15 days of receipt, Equinix shall have the right to terminate any agreement with the Debtors pursuant to the notice provisions set forth in the applicable MSA (with notice being provided via email to _____), notwithstanding section 362 of the Bankruptcy Code, and Equinix shall have any and all rights under the applicable MSA in the event of such termination.  Unless otherwise specified in this paragraph, the Debtors shall comply with the applicable MSA in all respects relating to Equinix, including complying with the Debtors' insurance obligations.  Equinix retains any and all rights to assert claims against the Debtors' estates.  The Court hereby retains jurisdiction to hear and determine any disputes or claims between or among the Debtors, Equinix, or any buyer of the Debtors' assets.

## **CONCLUSION**

**WHEREFORE**, Equinix respectfully requests that this Court sustain this Objection, and condition approval of any sale consistent with this Objection.

Dated: February 27, 2023

        **SAUL EWING LLP**

        */s/ Lucian B. Murley*
        Lucian B. Murley (DE Bar No. 4892)
        1201 N. Market Street, Suite 2300
        P.O. Box 1266
        Wilmington, DE 19899-1266
        Telephone:  (302) 421-6898
        luke.murley@saul.com

        *Attorneys for Equinix, Inc.*