**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GigaMonster Networks, LLC, *et al.*,[1] | ) Case No. 23-10051 (JKS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket Nos. 12, 113** |

**ORDER (I) APPROVING THE SALE OF ASSETS**
**FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS**
**AND ENCUMBRANCES, (II) APPROVING THE ASSUMPTION**
**AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED**
**LEASES IN CONNECTION THEREWITH AND (III) GRANTING RELATED RELIEF**

This matter coming before the Court on the *Motion of the Debtors for Entry of Orders:*

*(I)(A) Approving Bidding Procedures of the Sale of the Stalking Horse Assets and Other Assets,*

*(B) Authorizing the Debtors to Enter Into the Stalking Horse Agreement for Stalking Horse*

*Assets and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the*

*Form and Manner of Notice Thereof, (D) Approving the Assumption and Assignment Procedures*

*and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof;*

*(II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and*

*Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and*

*Unexpired Leases; and (III) Granting Related Relief* [Docket No. 12] (the "Sale Motion"), filed

by the debtors (collectively, the "Debtors") in the above-captioned chapter 11 cases

(the "Chapter 11 Cases"); and the Court having previously entered the *Order (I) Approving*

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number, are: GigaMonster Networks, LLC (2854); Gigasphere Holdings, LLC (0250); GigaMonster, LLC (3014); Fibersphere Communications, LLC (0163); and Fibersphere Communications of CA, LLC (5088).  The Debtors' business address is 350 Franklin Gateway, Suite 300, Marietta, GA 30067.

*Bidding Procedures and Bid Protections in Connection with the Sale of the Stalking Horse Assets and Other Assets, (II) Scheduling Bid Deadlines and the Auction, (III) Approving Form and Manner of Notice Thereof, and (IV) Granted Related Relief* [Docket No. 113] (the "Bidding Procedures Order"); and the Debtors having conducted an Auction on February 28, 2023, pursuant to the Bidding Procedures Order, and, at the conclusion of the Auction, the Debtors having determined that SkyWire Holdings, Inc. (the "Purchaser") as submitting the highest or best bid for certain of the Debtors' operating Assets, as described on the record of the Auction (the "Assets"), as reflected in that certain *Asset Purchase Agreement*, dated as of March 1, 2023, by and among Purchaser, as purchaser, and the Debtors, as sellers (the "Asset Purchase Agreement"),[2] a copy of which is attached hereto as Exhibit 1; and the Court having conducted a hearing to consider certain relief requested in the Sale Motion on March 2, 2023 (the "Sale Hearing"), at which time all objecting and interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and considered (i) the Sale Motion, (ii) the Asset Purchase Agreement, (iii) the Stalking Horse Bidding Procedures, (iv) the Bidding Procedures Order, (v) the record of the Bidding Procedures Hearing; and (vi) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation the Court having determined that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion and approval of the Asset Purchase Agreement is in the best interest

---

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Asset Purchase Agreement (as hereinafter defined), or, if not defined in the Asset Purchase Agreement, then as defined in the Sale Motion or Bidding Procedures Order, as applicable.

of the Debtors, their estates and their creditors, and the Debtors having demonstrated good, sufficient and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Final Order</u>.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.    <u>Statutory Predicates</u>.  The statutory and other legal predicates for the relief sought in the Sale Motion and granted herein are sections 105, 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6004, 6006, 9007 and 9014 of the Bankruptcy Rules and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

D.    <u>Notice and Opportunity to Be Heard</u>.  As evidenced with the certificates of service filed with the Court [Docket Nos. 116, 162], the Debtors have provided proper, timely, adequate and sufficient notice of, and a fair and reasonable opportunity to object and be heard

---

[3]    The findings and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during the Sale Hearing.

with respect to, the Sale Motion, the Bidding Procedures, the Bidding Procedures Order, the

Auction, the Sale Hearing, the sale of the Assets pursuant to the Asset Purchase Agreement

(the "Sale Transaction") free and clear of any Interests (as hereinafter defined) within the

meaning of section 363(f) of the Bankruptcy Code, the *Notice of Successful Bidder, Backup*

*Bidder, and Auction Results for Sale of the Stalking Horse Assets* [Docket No. 215] (the

"Notice of Successful Bidder"), the Assumption and Assignment Notices [Docket No. 117,

118, 168] and the assumption and assignment of the executory contracts and unexpired leases

to be assumed and assigned to the Purchaser at Closing pursuant to this Order and the terms of

the Asset Purchase Agreement (collectively, the "Purchased Contracts"), in accordance with

sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004,

6006, 9007 and 9014, Local Rules 2002-1, 6004-1 and 9006-1 and the Bidding Procedures

Order, to all persons and entities entitled to such notice, including the Sale Notice Parties (as

defined in the Bidding Procedures) and all other persons and entities as directed by the Court.

Such notice was good, sufficient and appropriate under the circumstances, including but not

limited to providing each Counterparty a full and fair opportunity to object to the assumption

and assignment of its Contract and its proposed Cure Cost; and no other or further notice of

any of the foregoing is required.  With respect to parties in interest whose identities could not

be reasonably ascertained by the Debtors, the Sale Notice published in The New York Times,

National Edition on February 13, 2023 [Docket No. 160] was sufficient and reasonably

calculated to provide notice to such parties under the circumstances.  The Debtors published

the Sale Motion, Bidding Procedures Order, the Bidding Procedures, the Stalking Horse

Agreement, the Sale Notice, the Assumption and Assignment Notice, and certain other

documents relevant to the Sale on the Claims Agent Website.

E.      Disclosures.  The disclosures made by the Debtors in the Sale Motion, the Sale

Notice, the Assumption and Assignment Notice, the Notice of Successful Bidder and all other

related notices and documents filed with the Court concerning the Asset Purchase Agreement

and Sale Transaction were complete and adequate.

F.      Sound Business Purpose.  The Debtors have demonstrated good, sufficient and

sound business purposes and justifications for approval of the Sale Motion and the approval of

and entry into the Sale Transaction, the Asset Purchase Agreement and any ancillary

agreements thereto (i) are a result of due deliberation by the Debtors and constitute a sound

and reasonable exercise of the Debtors' business judgment consistent with their fiduciary

duties; (ii) provide value and are beneficial to the Debtors' estates, and are in the best interests

of the Debtors, their estates and their stakeholders; and (iii) are reasonable and appropriate

under the circumstances.  Business justifications for entry into the Sale Transaction and the

Asset Purchase Agreement include, without limitation, the following:  (i) the Asset Purchase

Agreement constitutes the highest or best offer received for the Assets; (ii) the Asset Purchase

Agreement presents the best opportunity to maximize the value of the Assets on a going-

concern basis and to avoid decline and devaluation as a result of delay or liquidation;

(iii) failure to consummate the Sale Transaction expeditiously, as provided under the Asset

Purchase Agreement, could materially diminish creditor recoveries; and (iv) the immediate

consummation of the Sale Transaction is necessary to maximize the value of the Debtors'

estates.

G.      Marketing Process.  As demonstrated by (i) the evidence adduced or proffered

at the Sale Hearing, and (ii) the testimony adduced or proffered at the Bidding Procedures

Hearing and the Sale Hearing, the Debtors and their advisors thoroughly marketed the

Debtors' assets (including the Assets) and conducted the marketing and sale process as set forth in and in accordance with the Sale Motion and Bidding Procedures Order.  Based upon the record of these proceedings all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Debtor's assets (including the Assets).

H.    <u>Compliance with Bidding Procedures</u>.  The Debtors conducted an open and fair sale process.  The sale process was non-collusive in all respects, and all interested parties were provided a full, fair and reasonable opportunity to make an offer to purchase the Assets.  The Debtors, the Purchaser and their respective counsel and other advisors have complied with the Bidding Procedures and the Bidding Procedures Order.

I.    <u>Highest or Best Value</u>.  The Debtors determined, in their reasonable business judgment, in a manner consistent with their fiduciary duties and, in consultation with the Consultation Parties, that the Purchaser's Qualified Bid, as documented in the Asset Purchase Agreement, was the highest or otherwise best Qualified Bid for the Assets.  Consummating the Sale Transaction will yield greater value to the Debtors' estates than would have been provided by any other available alternative transaction.

J.    <u>Fair Consideration</u>.  The consideration the Purchaser will pay under the Asset Purchase Agreement constitutes (i) fair and reasonable consideration for the Assets; and (ii) reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act and other laws of the United States, any state, territory, possession thereof or the District of Columbia.

K.    <u>Free and Clear Sale</u>.  The Debtors may sell the Assets free and clear of all Interests (unless otherwise expressly assumed under, or expressly permitted by, the Asset

Purchase Agreement), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Any holders of Interests that objected to the Sale Transaction or the Sale Motion and that have an Interest on the Assets could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Interest pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f) and, therefore, are adequately protected by having their Interests on the Assets attach solely to the proceeds of the Sale Transaction ultimately attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force and effect that such Interests had prior to the consummation of the Sale Transaction, subject to any rights, claims or defenses of the Debtors and their estates.  Any Interest holders that did not object, or that withdrew their objections, to the Sale Motion or the Sale Transaction, are deemed to have consented to the sale of the Assets free and clear of their respective Interests on the Assets pursuant to section 363(f)(2) of the Bankruptcy Code.

      L.     <u>Purchaser's Reliance on Free and Clear Sale</u>.  The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction or the other transactions contemplated thereby if the sale of the Assets were not free and clear of all Interests (other than with respect to the Assumed Liabilities), or if the Purchaser would, or in the future could, be liable for any such Interests.  A sale of the Assets other than one free and clear of all Interests would adversely impact the Debtors, their estates and their creditors, and would yield substantially less value for the Assets and the Debtors' estates, with less certainty than provided by the Sale Transaction.  The total consideration to be provided under the Asset Purchase Agreement reflects the Purchaser's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to, and possession of,

the Assets free and clear of all Interests, including, without limitation, any potential derivative, vicarious, transferee or successor liability Interests.

M.    "Interests".  As used in this Order, the term "Interest" includes, in each case to the extent against or with respect to any of the Debtors or in, on, or against or with respect to any of the Assets:  Liens, claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, Liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or unknown, inchoate or not, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (i) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, encumbrances, easements, servitudes, leases, subleases, rights-of-way, encroachments, restrictive covenants, rights of first refusal (and similar provisions), restrictions on transferability or other similar restrictions, rights of offset or recoupment, rights of use or possession, subleases, leases, conditional sale arrangements, or any similar rights, (ii) all claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature

-8-

whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual or tort rights and claims, and labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Purchaser's interest in the Assets, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA")), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee claims, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their

-9-

predecessors, or (l) the WARN Act (29 U.S.C. §§ 2101, et seq.) or any state or other laws of similar effect; (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or businesses of the Debtors prior to the Closing; (x) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assumed Contract; (xi) any other Excluded Liabilities under the Asset Purchase Agreement; and (xii) Interests arising under or in connection with any acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, Affiliates, or Subsidiaries, including, but not limited to, Interests arising under any doctrines of successor, transferee, or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

     N.    <u>No Successor or Other Derivative Liability</u>.  By consummating the Sale Transaction pursuant to the Asset Purchase Agreement, the Purchaser is not a mere continuation of any of the Debtors or any Debtor's estate, and there is no continuity of enterprise or otherwise or common identity between the Purchaser and any Debtor.  The Purchaser is not holding itself out as a continuation of any Debtor.  The Purchaser is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, merger or <u>de</u> <u>facto</u> merger of the Purchaser and the Debtors or any of the Debtors' estates.  Neither the Purchaser nor any of its affiliates or their respective successors, assigns, members, partners, principals or shareholders (or the equivalent thereof) shall assume or in any way be responsible for any obligation or

DOCS_DE:241961.8 31213/001

liability of any Debtor (or any affiliate of any Debtor) or any Debtor's estate, except as expressly provided in the Asset Purchase Agreement.  The sale and transfer of the Assets to the Purchaser, including the assumption by the Debtors and assignment, transfer and/or sale to the Purchaser of any of the Purchased Contracts, will not subject the Purchaser to any liability with respect to the operation of the Debtors' businesses prior to the Closing or by reason of such transfer, except that, upon the Closing, the Purchaser shall remain liable for the applicable Assumed Liabilities.

O.    <u>Good Faith</u>.  The Debtors, the Purchaser and their respective counsel and other advisors have negotiated and entered into the Asset Purchase Agreement and each of the transactions contemplated thereby in good faith, without collusion and from arms'-length bargaining positions.  The Purchaser is a good faith purchaser, and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all of the protections afforded thereby.  The Debtors were free to deal with any other party interested in acquiring all or some of the Assets.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Sale Transaction, the Asset Purchase Agreement or any of the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) of the Bankruptcy Code.  The Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction.  Specifically, the Purchaser has not acted in a collusive manner with any person or entity, and the Purchaser's participation in and bidding at the Auction were not controlled by any agreement among bidders.  All payments to be made by the Purchaser and all agreements entered into by the Purchaser and the Debtors under the Asset Purchase Agreement in connection with the Sale Transaction have been disclosed and

-11-

are appropriate.  The Asset Purchase Agreement was not entered into, and the Sale Transaction

is not being consummated, for the purpose of hindering, delaying or defrauding creditors under

laws of the United States, any state, territory, possession thereof or the District of Columbia, or

any other applicable law.  Neither the Debtors nor the Purchaser have entered into the Asset

Purchase Agreement (or any ancillary documentation executed in connection therewith) or are

consummating the Sale Transaction with any fraudulent or otherwise improper purpose, or for

the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims,

whether under the Bankruptcy Code or under the laws of the United States, any state, territory,

possession thereof or the District of Columbia or any other applicable jurisdiction.

P.    <u>Insider Status</u>.  The Purchaser is not an "insider" of any Debtor, as that term is

defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or

controlling stockholders (or the equivalent thereof) exists between the Purchaser and any of

the Debtors.

Q.    <u>Assumption and Assignment of Purchased Contracts</u>.  The assumption and

assignment of the Purchased Contracts are an integral part of the Sale Transaction, are in the

best interests of the Debtors and their estates and represent the valid and reasonable exercise of

the Debtors' sound business judgment.  Specifically, the assumption and assignment of the

Purchased Contracts (i) are necessary to sell the Assets to the Purchaser as contemplated by

the Asset Purchase Agreement, (ii) allow the Debtors to sell the Assets to the Purchaser as a

going concern, (iii) limit the losses suffered by the Counterparties to the Purchased Contracts

and (iv) maximize the recoveries of other creditors of the Debtors by eliminating claims

against the Debtors' estates that would arise from the Debtors' rejection of the Purchased

Contracts.  Any Counterparty to any Contract that has not actually filed with the Court and

-12-

served on the Objection Notice Parties (as defined in the Bidding Procedures) an objection to the Debtors' assumption and assignment of such Contract, or to the applicable Cure Costs, as of the date specified in the Bidding Procedures Order (as such date may have been modified or extended in accordance with the terms of the Bidding Procedures Order) is deemed to have consented to the assumption and assignment of the Contract, and to the applicable Cure Costs.

R.      <u>Compliance with Section 365 of the Bankruptcy Code</u>.  The Debtors have met all requirements of section 365(b) of the Bankruptcy Code with respect to the assumption and assignment of each of the Purchased Contracts.  The Debtors have provided adequate assurance (within the meaning of section 365(b)(1) of the Bankruptcy Code) of cure of any default existing under any of the Purchased Contracts on or before the Closing Date and responsibility for satisfaction of such cure obligations will be addressed as provided for in the Asset Purchase Agreement.  The Purchaser has demonstrated adequate assurance of future performance of and under the Purchased Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Purchased Contracts shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in the Purchased Contracts or other restrictions prohibiting their assignment or transfer.

S.      <u>Modifications to Purchased Contracts</u>.  Subject to the terms and requirements of the Asset Purchase Agreement, including sections 1.6, 1.8, and 5.3 thereof, the Purchaser had the right to timely add or remove Contracts on the Appendix A list of Purchased Contracts. The Purchaser would not have agreed to the Sale Transaction without such modification rights. The notice and opportunity to object provided to Counterparties to such Purchased Contracts and to other parties in interest, as set forth in the Bidding Procedures Order and in this Order,

fairly and reasonably protect any rights that such Counterparties and other parties in interest may have with respect to such Purchased Contracts.

T.    <u>Property of the Estates</u>.  The Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

U.    <u>Validity of the Sale Transaction</u>.  The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) and all of the applicable requirements of such sections have been complied with in all respects in connection with the Sale Transaction.  As of the Closing, the sale and assignment of the Assets and the Purchased Contracts to the Purchaser will be a legal, valid and effective transfer of the Assets and the Purchased Contracts, and will vest the Purchaser with all right, title and interest of the Debtors in and to the Assets and the Purchased Contracts free and clear of all Interests (other than any Interests expressly assumed under, or expressly permitted by, the Asset Purchase Agreement) to the fullest extent permitted section 363 of the Bankruptcy Code.  The Debtors have full corporate or other applicable authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate action of the Debtors.  Upon entry of this Order, other than any consents identified in the Asset Purchase Agreement, no consent or approval from any other person, entity or legal authority is required to consummate the Sale Transaction.

V.    <u>No Sub Rosa Plan</u>.  Neither the Sale Transaction nor the Asset Purchase Agreement impermissibly restructures the rights of any of the Debtors' creditors or impermissibly dictates the terms of a liquidating plan of reorganization of the Debtors. Neither the Sale Transaction nor the Asset Purchase Agreement constitutes a <u>sub rosa</u> or <u>de</u>

<u>facto</u> plan of reorganization or liquidation.

W.    <u>No Stay of Order</u>.  Time is of the essence to implement the Asset Purchase Agreement and consummate the Sale Transaction.  The Sale Transaction must be approved and consummated promptly in order to preserve the value of the Assets and to maximize the value to the Debtors, their estates, their creditors and all other parties in interest and to ensure the Debtors' compliance with their obligations under their post-petition financing agreements. The Debtors have demonstrated compelling circumstances and sound business justifications for the immediate approval and consummation of the Sale Transaction as contemplated by the Asset Purchase Agreement. Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), 7062 or any applicable provisions of the Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.

X.    <u>Consumer Privacy</u>. The Asset Purchase Agreement and the Sale Transaction comply with the recommendations of the Consumer Privacy Ombudsman appointed in these Chapter 11 Cases.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    <u>Sale Motion Granted</u>.  The Sale Motion and the relief requested therein (to the extent not previously granted by the Court pursuant to the Bidding Procedures Order or otherwise) are GRANTED and approved as set forth herein.

2.    <u>Objections Overruled</u>.  Any objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, adjourned or settled and all reservations of rights included in such objections are hereby overruled on the merits with prejudice.

3.    <u>Sale Transaction Approved</u>.  The Debtors are authorized to enter into the Asset Purchase Agreement and all transactions contemplated thereby.

4.      Prior Findings of Fact and Conclusions of Law.  The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, and the findings of fact recited above are incorporated herein by reference. In the event that the terms of this Order and the Bidding Procedures Order are in conflict, this Order will control.

5.      Debtors' Performance.  The Debtors are hereby authorized to enter into and perform their obligations under the Asset Purchase Agreement, and to take such other actions as may be necessary or desirable to effectuate the terms of the Asset Purchase Agreement and other instruments or documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Asset Purchase Agreement, the Sale Transaction or this Order, including, without limitation, deeds, assignments, stock powers, transfers of membership interests and any other instruments of transfer, without further order of the Court.  In accordance with the terms of the Asset Purchase Agreement, the Debtors are hereby further authorized to take all other actions as may reasonably be requested by the Purchaser or otherwise for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to the Purchaser's possession any or all of the Assets and the Purchased Contracts, as may be necessary or appropriate for the Debtors to perform their obligations under the Asset Purchase Agreement and consummate the Sale Transaction, without further order of the Court.

6.      The Debtors are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases and other documents with respect to the Assets that are necessary or appropriate to effectuate the Asset Purchase Agreement, the Sale Transaction or this Order, including, as applicable, amended and restated certificates or articles of

-16-

incorporation and by-laws or certificates or articles of amendment, and all such other actions,
filings or recordings as may be required under appropriate provisions of the applicable laws of
all applicable governmental units or as any of the officers of the Debtors may determine are
necessary or appropriate (in all cases subject to the terms of the Asset Purchase Agreement).

7.      <u>Valid Transfer</u>.  Effective as of the Closing Date, the sale and assignment of the
Assets and the Purchased Contracts by the Debtors to the Purchaser shall constitute a legal,
valid and effective transfer of the Assets and the Purchased Contracts, notwithstanding any
requirement for approval or consent by any person, and will vest the Purchaser with all right,
title and interest of the Debtors in and to the Assets and the Purchased Contracts, free and clear
of all Interests (other than any Interests expressly assumed under, or expressly permitted by, the
Asset Purchase Agreement), pursuant to section 363(f) of the Bankruptcy Code.

8.      <u>Free and Clear Sale</u>.  Except to the extent specifically provided in the Asset
Purchase Agreement, upon the Closing Date, the Debtors shall be, and hereby are, authorized
and empowered, pursuant to sections 105, 363(b), 363(f) and 363(k) of the Bankruptcy Code, to
sell and transfer to the Purchaser the Assets.  The sale and transfer of the Assets to the
Purchaser shall vest the Purchaser with all right, title and interest of the Debtor in and to the
Assets free and clear of any and all Interests of any person or entity (other than any Interests
expressly assumed under, or expressly permitted by, the Asset Purchase Agreement) to the
maximum extent permitted by section 363 of the Bankruptcy Code, with all such Interests to
attach to the proceeds of the Sale Transaction attributable to the sale of the property on which
such holders have an Interest, in the same order of priority, and with the same validity, force
and effect that such Interests had prior to the consummation of the Sale Transaction, subject to
any rights, claims or defenses of the Debtors or their estates.  Following the Closing, no holder

-17-

of any Interest on any of the Assets shall interfere with the Purchaser's use or enjoyment of any of the Assets based on or related to such Interest or any actions that the Debtors have taken or may take in their Chapter 11 Cases and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale Transaction.

9.      The provisions of this Order authorizing the sale and transfer of the Assets free and clear of Interests shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate or implement the provisions of this Order.  For the avoidance of doubt, on or after the Closing Date, the Debtors and/or the Purchaser shall be authorized, but not directed, to file any such releases, termination statements, assignments, consents or other instruments in any jurisdiction to record the release, discharge and termination of Interests on the Assets pursuant to the terms of this Order.

10.      <u>Direction to Creditors</u>.  This Order shall be (a) effective as a determination that, as of the Closing Date, all Interests on the Assets (except as otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement) shall be unconditionally released, discharged and terminated as to the Purchaser and the Assets; and (b) binding upon all persons and entities, including all the Debtors' creditors and any holder of an Interest on any of the Assets, and all such persons and entities are hereby authorized to execute such documents and take all other actions as may be reasonably necessary to release their respective Interests on the Assets, if any.  If any person or entity that has filed a financing statement, mortgage, mechanics lien, <u>lis pendens</u> or other document, instrument, notice or agreement evidencing any Interest on the Assets has not delivered to the Debtors on or before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or

-18-

instruments of satisfaction that the person or entity has with respect to the Assets, subject to the terms of the Asset Purchase Agreement, the Debtors and/or the Purchaser are authorized to (x) execute and file such termination statements, releases, instruments of satisfaction or other documents with respect to the Assets on behalf of the applicable person or entity; and (y) file, register or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests on the Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal or foreign government agency, department or office.

11.     <u>Authorization of Recording Officers</u>.  This Order shall be binding upon all persons and entities, including filing agents or officers, title agents or companies, recorders of mortgages or deeds, registrars, administrative agencies, governmental units or departments, secretaries of state, governmental officials and all other persons or entities that may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments regarding the Assets or who may be required to report or insure any title or state of title in or to the Assets, (collectively, the "<u>Recording Officers</u>").  All Recording Officers are hereby authorized to (a) accept any and all documents or instruments necessary and appropriate to consummate the Sale Transaction or to record and reflect that the Purchaser is the owner of the Assets free and clear of all Interests (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement) and (b) strike all recorded Interests on the Assets from their records.

12.     <u>Direction to Surrender the Assets</u>.  All persons or entities in possession or control of any of the Assets, either presently or on or before the Closing Date, are authorized to

-19-

surrender possession or control of the Assets to the Purchaser on the Closing Date.

13.  <u>No Successor Liability</u>.  The Purchaser and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or the equivalent thereof) are not and shall not be (a) deemed a "successor" in any respect to any of the Debtors or any of their estates as a result of the consummation of the Sale Transaction or any other event occurring in the Debtors' Chapter 11 Cases under any theory of law or equity; (b) deemed to have, <u>de facto</u> or otherwise, merged or consolidated with or into any of the Debtors or any of their estates; (c) deemed to be an alter ego of or have a common identity with any of the Debtors; (d) deemed to have a continuity of enterprise with any of the Debtors; or (e) deemed to be a continuation or substantial continuation of any of the Debtors or any enterprise of any of the Debtors, including (with respect to clause (a) through (e) of this paragraph) within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, products liability or other law, doctrine rule or regulation (including any filing requirements under any such laws, rules or regulations) with respect to the Debtors' liability under such law, doctrine, rule or regulation.

14.  The Purchaser shall not assume, nor be deemed to have assumed or in any way be responsible for any liability or obligation, of any of the Debtors or any of their estates including, but not limited to, any Excluded Liabilities, any bulk sales law, successor or vicarious liability, liability or responsibility for any claim against any of the Debtors or against any insider of any of the Debtors or similar liability, except as otherwise expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities.  The Sale Motion, Sale Notice and Notice of Successful Bidder contain sufficient notice of such limitation in accordance with applicable law.  Except for the Purchaser's assumption of the Assumed

Liabilities pursuant to the Asset Purchase Agreement, the transfer of the Assets and the

Purchased Contracts to the Purchaser under the Asset Purchase Agreement will not result in

(a) the Purchaser, its affiliates or any of their respective predecessors, successors, assigns,

members, partners, officers, directors, principals or shareholders (or the equivalent thereof) or

any of the Assets having any liability or responsibility for any claim against any of the Debtors

or against any insider of any of the Debtors (including, without limitation, Excluded

Liabilities); (b) the Purchaser, its affiliates or any of their respective predecessors, successors,

assigns, members, partners, officers, directors, principals or shareholders (or the equivalent

thereof) or any of the Assets having any liability whatsoever with respect to or be required to

satisfy in any manner, whether at law or in equity, whether by payment, setoff, recoupment or

otherwise, directly or indirectly, any Interests or Excluded Liabilities; or (c) the Purchaser, its

affiliates or any of their respective predecessors, successors, assigns, members, partners,

officers, directors, principals or shareholders (or the equivalent thereof) or any of the Assets

having any liability or responsibility to any of the Debtors except as is expressly set forth in the

Asset Purchase Agreement.

15.     Effective upon the Closing Date, all persons and entities are forever prohibited

and enjoined from commencing or continuing in any manner any action or other proceeding,

whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the

Purchaser, its assets (including the Assets) or its successors or assigns, with respect to any

(a) Interest on the Assets or (b) successor, transferee, vicarious or other similar liability or

theory of liability, including (i) commencing or continuing any action or other proceeding

pending or threatened, in any manner or place, that does not comply with, or is inconsistent

with, the provisions of this Order or other orders of the Court or the agreements or actions

contemplated or taken in respect hereof or thereof; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Interest; (iv) asserting any setoff, right of subrogation or recoupment of any kind; or (v) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets.

16.   <u>Assumption and Assignment of Purchased Contracts</u>.  Under sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale Transaction, the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser free and clear of all Interests pursuant to the terms of the Asset Purchase Agreement, as modified by the terms of any amendments reached by the Purchaser and the respective Counterparty, is hereby approved, and the requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Upon the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser, each applicable Counterparty shall be forever barred, estopped and permanently enjoined from raising or asserting against the Debtors, the Purchaser or their respective property, any assignment fee, default, breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, known or unknown, liquidated or unliquidated senior or subordinate), counterclaim, defense, setoff or any other matter arising under or out of, in connection with or in any way related to, the Purchased Contracts existing as of the Closing Date or arising by reason of the Closing.  Upon the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser, the Purchaser shall be fully and irrevocably vested with all right, tile and interest of the Debtors in and to the Purchased Contracts and the Purchased Contracts shall be deemed to be valid and binding and

-22-

in full force and effect and enforceable in accordance with their terms.  The Debtors'

assumption and assignment of the Purchased Contracts to the Purchaser shall not constitute a

default under or a termination of any Contract.

17.    <u>Cure Obligations</u>.  Any defaults or other obligations under the Purchased

Contracts shall be deemed cured by the Purchaser's payment or other satisfaction of the cure

amounts, if any, associated with the Purchased Contracts, and established through the process

set forth in the Bidding Procedures Order (the "<u>Cure Costs</u>").

18.    <u>Cure Objections</u>.  Except as provided herein, all objections to the Debtors'

calculation of Cure Costs with respect to any of the Purchased Contracts (each such objection, a

"<u>Cure Objection</u>") have been overruled, withdrawn, waived, adjourned, settled or otherwise

resolved.  Any Cure Objections as to applicable Cure Costs that have not been resolved by the

parties may be heard at a later date as set by the Court.  The pendency of a dispute relating to a

particular Contract shall not prevent or delay the assumption or assignment of any other

Contract or the closing of the Sale Transaction.

19.    <u>Adequate Assurance</u>.  The Purchaser has provided adequate assurance of future

performance under the Purchased Contracts within the meaning of sections 365(b)(1)(C) and

365(f)(2)(B) of the Bankruptcy Code.  Any Adequate Assurance Objections that have not been

withdrawn, waived, or adjourned or settled and all reservations of rights included in such

objections are hereby overruled on the merits with prejudice.  All other requirements and

conditions under sections 363 and 365 of the Bankruptcy Code for the Debtors' assumption and

assignment of the Purchased Contracts to the Purchaser have been satisfied.

20.    <u>Anti-Assignment Provisions Unenforceable</u>.  No section or provision of any

Contract that purports to (a) prohibit, restrict or condition the assignment of a Contract,

including, but not limited to, the conditioning of such assignment on the consent of any Counterparty to such Contract, or the granting of any right of first refusal or similar right to a Counterparty; (b) authorize the termination, cancellation or modification of a Contract based on the filing of a bankruptcy case, an assignment of a Contract, the financial condition of the Debtors, or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtors; or (d) provide for additional payments, profit sharing, penalties, conditions, renewals, extensions, charges or other financial accommodations in favor of the Counterparty to a Contract, or modification of any term or condition upon the assignment of a Contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force or effect, and any such section or provision constitutes an unenforceable anti-assignment provision under section 365(f) of the Bankruptcy Code and/or is otherwise unenforceable under section 365(e) of the Bankruptcy Code.

21.     <u>Direction to Contract Counterparties</u>.  All Counterparties to Purchased Contracts assigned to the Purchaser in accordance with the terms of this Order and the Asset Purchase Agreement shall cooperate with, and expeditiously execute and deliver upon, any reasonable request of the Purchaser, subject to the Transition Services Agreement executed by and between the Debtors and the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents or other documents that may be required or requested by any governmental unit or other public or quasi-public authority or other party to effectuate the applicable transfers in connection with the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser; *provided that* this paragraph 21 shall be subject in all respects to provisions of the Purchased Contract that are otherwise not unenforceable during the pendency of any bankruptcy proceeding.

-24-

22.    <u>Modification of Purchased Contracts List</u>.  Subject to the terms and requirements of the Asset Purchase Agreement, including sections 1.6, 1.8, and 5.3 thereof, the Purchaser had the right to timely add or remove Contracts on the Appendix A list of Purchased Contracts.  The Purchaser would not have agreed to the Sale Transaction without such modification rights.  The notice and opportunity to object provided to Counterparties to such Purchased Contracts and to other parties in interest, as set forth in the Bidding Procedures Order and in this Order, fairly and reasonably protect any rights that such Counterparties and other parties in interest may have with respect to such Purchased Contracts.

23.    <u>Rejection Procedures</u>. Within five (5) days of the date of the Closing Date under the Asset Purchase Agreement, the Debtors shall file a motion to establish procedures to govern the rejection of executory contracts and unexpired leases of non-residential real property (a "<u>Contract</u>" or "<u>Lease</u>") in the chapter 11 case (the "<u>Rejection Motion</u>").  The Rejection Motion shall request that procedures be established in order for the Debtors to reject any Contract or Lease via notice procedures immediately upon Purchaser electing to terminate any Transition Service pursuant to Section 2.1 of the Transition Services Agreement so that further administrative expense related to such Contract or Lease under the Transition Services Agreement will cease as promptly as possible.  The Debtors shall not assume or reject any Contract or Lease that relates to, or effects, the Assets being purchased by Purchaser without the express written consent of Purchaser.

24.    <u>Licenses and Permits</u>.  To the extent provided in the Asset Purchase Agreement and available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Assets and the Purchased Contracts, and all such

licenses, permits, registrations and governmental authorizations and approvals are deemed to

have been, and hereby are authorized to be transferred to the Purchaser as of the Closing Date.

To the extent any license or permit necessary for the operation of the Assets is determined not

to be an executory contract that may be assumed and assigned under section 365 of the

Bankruptcy Code, the Purchaser shall apply for and obtain any necessary license or permit

promptly after the Closing Date, and such license or permit of the Debtors shall remain in place

for the Purchaser's benefit until a new license or permit is obtained.

25.    To the extent provided by section 525 of the Bankruptcy Code, no governmental

unit may revoke or suspend any permit or license relating to the operation of the Assets sold,

transferred or conveyed to the Purchaser on account of the filing or pendency of these Chapter

11 Cases or the consummation of the Sale Transaction.

26.    All persons and entities are prohibited and enjoined from taking any action to

adversely affect or interfere with the ability of the Debtors to transfer the Assets to the

Purchaser in accordance with the Asset Purchase Agreement and this Order.

27.    <u>Purchase of Avoidance Actions</u>.  Pursuant to this Order and the Asset Purchase

Agreement, (a) the Purchaser is authorized to and shall purchase and acquire all of the rights

and claims of Debtors available under the Bankruptcy Code in the Included Avoidance Actions

(as defined in the Asset Purchase Agreement), and (b) Purchaser, or any other person claiming

by, through or on behalf of the Purchaser (including by operation of law, sale, assignment,

conveyance or otherwise) shall not pursue, prosecute, litigate, institute or commence an action

based on, assert, sell, convey, assign or file any claim that relates to the Included Avoidance

Actions.

28.    <u>Good-Faith Purchaser</u>.  The Purchaser is a good-faith purchaser within the

-26-

meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the protections

afforded thereby.  Pursuant to section 363(m) of the Bankruptcy Code, the reversal or

modification on appeal of this Order approving the Sale Transaction under subsection (b) or (c)

of the Bankruptcy Code does not affect the validity of the Sale Transaction under this Order to

the Purchaser, which purchased the Purchased Assets in good faith, whether or not the

Purchaser knew of the pendency of the appeal, unless this Order and the Sale Transaction were

stayed pending appeal.

29.    <u>No Avoidance</u>.  Neither the Sale Transaction nor the Asset Purchase Agreement

is subject to avoidance, and no party is entitled to any damages or other recovery in connection

therewith under section 363(n) of the Bankruptcy Code.

30.    <u>Bulk Sales</u>.  No bulk sales law, bulk transfer law or similar law of any state or

other jurisdiction shall apply in any way to the Sale Transaction.

31.    <u>Consumer Privacy Ombudsman Recommendations</u>. On February 23, 2023, the

Consumer Privacy Ombudsman ("CPO") appointed in these Chapter 11 Cases filed his report

[Docket No. 193] (the "<u>CPO Report</u>").  As requested by the CPO in the CPO Report, the

Purchaser shall (i) be bound by, and succeed to, the Debtors' existing privacy policy, which was

most recently updated on January 12, 2023 (as updated, "Privacy Policy") for a period of at

least 180 days after the Closing Date (as defined in the Purchase Agreement); (ii) be responsible

for any violation of the Privacy Policy after the Closing Date; (iii) abide by applicable data

privacy laws; and (iv) not to change the Privacy Policy or migrate the Debtors' customers

(collectively, "Customers") to another privacy policy without first providing the Customers

timely and adequate notice of the change or migration and allowing Customers to opt out of any

such change or migration.  The Debtors shall comply with the CPO's recommendations set

forth in paragraphs 3 through 6 of the CPO Report; provided, however, that the Debtors shall have until ninety (90) days after the end of the Services Period or Extended Services Period (each as defined in the Transition Services Agreement) to comply with paragraph 5 of the CPO Report.

32.    <u>Back-Up Bidder</u>.  In the event that the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of the Successful Bidder, the Debtors are authorized, but not required, without any other or further order or authorization from the Court and without any other or further notice, to consummate the sale with Bel Air Internet LLC and Everywhere Wireless, LLC ("<u>BAI/EW</u>"), who is the Back-up Bidder(s) pursuant to the Auction,  pursuant to the terms of the asset purchase agreement(s) with any Back-up Bidder(s) that was approved on the record at the Auction (each, a "<u>Back-up Bidder APA</u>").  Upon two (2) days' prior notice by the Debtors, each Back-up Bidder must immediately proceed with the transaction contemplated under the applicable Back-up Bidder APA (subject to the terms and conditions (including outside dates) set forth in each such Back-up Bidder APA).  The bids of each Back-up Bidder shall be irrevocable as provided on the record of the Auction (subject to the terms and conditions (including outside dates) set forth in each such Back-up Bidder APA).  In the event the Debtors consummate the transaction with a Back-up Bidder, such Back-up Bidder shall have all of the rights and privileges of the Successful Bidder for purposes of this Order, and shall be treated in all respects as the Successful Bidder under the terms of this Order.  Solely in the event that the Debtors close a Back-up Bidder APA with BAI/EW, then BAI/EW shall, as the valid assignee of the DIP Lender, have the right to credit bid the full amount of the DIP Obligations (as defined in the Final DIP Order) in any sale of DIP Collateral (as defined in the Final DIP Order).

33.    <u>Amendments</u>.  The Asset Purchase Agreement and any related agreements may be amended, supplemented or otherwise modified by the parties thereto and in accordance with the terms thereof, without further action or order of the Court; <u>provided</u>, <u>that</u>, any such amendment, supplement or modification shall not have a material adverse effect on the Debtors' estates or contravene the provisions of the Interim Order, the Final DIP Order or any other order of this Court.

34.    <u>Binding Order</u>.  This Order and the Asset Purchase Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case of any of the Debtors if any of these Chapter 11 Cases is converted from a case under chapter 11 to a case under chapter 7, all creditors of any and all of the Debtors (whether known or unknown), all Counterparties to any Purchased Contracts and all Recording Officers.  Neither the Sale Transaction nor the Asset Purchase Agreement shall be subject to rejection or avoidance under any circumstances.  This Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser and its respective successors and assigns.

35.    [<u>Reserved</u>.]

36.    <u>Failure to Specify Provisions; Conflicts</u>.  The failure specifically to include or mention any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Purchaser that the Asset Purchase Agreement be authorized and approved in its entirety, including any amendments thereto as may be made by the parties thereto in accordance

-29-

with the terms thereof and this Order.  Likewise, all of the provisions of this Order are

nonseverable and mutually dependent.

37.     <u>Release of DIP Lender and Affiliates</u>.  Pursuant to footnote 8 of the *Final Order*

*Pursuant to Sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy*

*Rule 4001, and Local Rule 4001-2, (I) Authorizing Debtors to (A) Obtain Postpetition*

*Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition*

*Secured Parties and (III) Granting Related Relief* [Docket No. 180] (the "<u>Final DIP Order</u>"),

section 5.3 of the Stalking Horse Agreement (as defined in the Sale Motion and attached as

Exhibit B thereto) is hereby incorporated by reference, and the Debtors' releases as to the DIP

Lender and its affiliates as set forth in section 5.3 of the Stalking Horse Agreement are deemed

to apply.

38.     <u>Payment of Stalking Horse Bid Protections</u>.  Pursuant to the Bidding Procedures

Order and section 4.2 of the Stalking Horse Agreement, the Termination Payment (as defined in

the Stalking Horse Agreement) shall be paid by the Debtors to Bel Air Internet LLC and

Everywhere Wireless, LLC (the "<u>Stalking Horse Bidder</u>") out of the proceeds from the Sale

Transaction with the Purchaser.  The Debtors shall pay the Termination Payment to the Stalking

Horse Bidder in immediately available funds to such account or accounts as specified in written

notice by the Stalking Horse Bidder.

39.     <u>Repayment of DIP Obligations</u>.  Pursuant to the Bidding Procedures Order and

DIP Order, the DIP Obligations shall be paid by the Debtors to DIP Lender out of the proceeds

from the Sale Transaction with the Purchaser. The Debtors shall pay the DIP Obligations at

closing to the DIP Lender in immediately available funds to such account or accounts as

specified in written notice by the DIP Lender.

40.     IP Address Adjustment.  There shall be no required payment of the IP Address Adjustment as the Transferred IP Addresses (as defined in the Stalking Horse Agreement) are agreed and deemed to have transferred to the purchaser under the Prior Transaction Agreement (as defined in the Stalking Horse Agreement).  The IP Address Adjustment is deemed moot by completion of the transfer of the Transferred IP Addresses to the purchaser under the Prior Transaction Agreement.

41.     Cigna Objection.   Notwithstanding anything to the contrary in this Order, or any notice related thereto, the Cigna Agreements (as defined in the *Objection of Cigna to Motion of the Debtors for Entry of Orders: (I)(A) Approving Bidding Procedures for the Sale of (X) Stalking Horse Assets and (Y) Other Assets, (B) Authorizing the Debtors to Enter into Stalking Horse Agreement for Stalking Horse Assets and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [D.I. 75] (the "Cigna Objection")) shall not be assumed and assigned to the Purchaser as part of the Sale Transaction.  This fully resolves the Cigna Objection.

42.     Texas Taxing Authorities.  Notwithstanding any provisions of this Order or any orders pertaining to the sale of the debtors' assets, or any agreements validated by any such orders, from the proceeds of the sale of any of the debtors' assets located in the state of Texas, the amount of $39,000 shall be set aside by the Debtors in a segregated account as adequate protection for the secured claims of the Texas Taxing Authorities (City of Allen, Allen

-31-

Independent School District, Dallas County, Fort Bend County, City of Frisco, Gregg County, Harris County, Montgomery County, Rockwall CAD, San Marcos CISD, Tarrant County, Hockley County Tax Office, Clear Creek Independent School District, City of Houston, Spring Branch Independent School District, City of Katy, West Harris County MUD #2, Richardson Independent School District, Eagle Mountain-Saginaw Independent School District, Crowley Independent School District, Plano Independent School District, and Frisco Independent School District) prior to the distribution of any proceeds to any other creditor. The 2022 and prior year's tax liens of the Texas Taxing Authorities shall attach to these proceeds to the same extent and with the same priority as the liens they now hold against the property of the debtors. These funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Texas Taxing Authorities, nor a cap on the amounts they may be entitled to receive. Furthermore, the claims and liens of the Texas Taxing Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens. These funds may be distributed only upon agreement between the Texas Taxing Authorities and the Debtors, or by subsequent order of the Court, duly noticed to the Texas Taxing Authorities.  For the avoidance of doubt, the Purchaser assumes full responsibility for the 2023 ad valorem taxes and shall be responsible for paying the ad valorem taxes in full, in the ordinary course of businesses, when due.  If not timely paid, the Texas Taxing Authorities may proceed with non-bankruptcy collections against the Purchaser, without leave or approval of the Court.  Any proration between the Debtors and Purchaser of the ad valorem taxes shall have no effect on Purchaser's responsibility to pay the 2023 ad valorem taxes.  The Texas Taxing Authorities shall retain their respective 2023 tax liens against the assets until paid in full, including any applicable penalties or interest.

-32-

43.     <u>Kuenzli Rental Operation LLC</u>.  Notwithstanding any provision to the contrary in the Sale Motion, the Asset Purchase Agreement, the Assumption and Assignment Notice, this Sale Order, and any implementing sale documents, the Cure Objection filed by Kuenzli Rental Operation LLC, d/b/a Nevada Communications and Satellite ("Kuenzli") has not been resolved and is being adjourned to a later hearing date and Kuenzli, the Debtors and the Purchaser agree to attempt to resolve any and all Cure Costs relating to the Agreement (as defined in the Cure Objection) after the assumption and assignment of the Agreement.

44.     Equinix Inc.'s Objection to Sale and Request for Adequate Protection [D.I. 207] (the "Equinix Objection") is resolved as set forth in this paragraph. Any capitalized term not otherwise defined herein shall have the same meaning as that ascribed to it in the Equinix Objection. To the extent this paragraph conflicts with any other portions of this Order, any asset purchase agreement, or any transition services agreement, this paragraph controls. The Debtors acknowledge that they are not selling any physical property or assuming and assigning any leases or contracts related to physical property at the Equinix data centers.  Access to Equinix's data centers shall be subject to Equinix's security procedures and any applicable MSA. The Debtors shall pay Equinix in advance of each upcoming month based on the Debtors' historical average monthly usage (subject to any true up based on actual usage). Equinix shall have the right to terminate any agreement with the Debtors pursuant to the notice and termination provisions set forth in the applicable MSA, including any cure period for a breach (with notice being provided via email to Rian Branning (rbranning@novo-advisors.com), counsel for the Debtors, and counsel for the Purchaser), provided that Equinix first files a motion for relief from the automatic stay with this Court, and Equinix shall have any and all rights under the applicable MSA in the event of such termination. The Debtors agree not to oppose any motion

-33-

for expedited consideration of such a motion for relief of the automatic stay; provided that any expedited hearing is on at least five (5) business days' notice to the Debtors. Unless otherwise specified in this paragraph, the Debtors shall comply with the applicable MSA in all respects relating to Equinix, including complying with the Debtors' insurance obligations. Equinix retains any and all rights to assert claims against the Debtors' estates. The Court hereby retains jurisdiction to hear and determine any disputes or claims between or among the Debtors, Equinix, or any buyer of the Debtors' assets.

45.    Crown Castle's Objection to Sale and Request for Adequate Protection [D.I. 210] (the "Crown Castle Objection") is resolved as set forth in this paragraph. Any capitalized term not otherwise defined herein shall have the same meaning as that ascribed to it in the Crown Castle Objection. To the extent this paragraph conflicts with any other portions of this Order, any asset purchase agreement, or any transition services agreement, this paragraph controls. The Debtors acknowledge that they are not selling any physical property or assuming and assigning any leases or contracts related to any property at any Crown Castle facility or site ("Crown Castle Located Property"). Within ten (10) business days following the end of the transition services period under the Transition Services Agreement, as to any of the Debtors' owned or leased property at any Crown Castle Located Property, the Debtors will provide notice to Crown Castle of any property they intend to retain that may reside at any Crown Castle Located Property. Otherwise, any and all property located at a Crown Castle Located Property shall be abandoned to Crown Castle pursuant to section 554(a) of the Bankruptcy Code, effective as of Crown Castle's receipt of said notice. Upon receipt of such notice, Crown Castle shall be free to dispose of such abandoned property without liability to any party and without further notice or order of the Court. Access to Crown Castle's facilities and sites

shall be subject to Crown Castle's security procedures and any applicable Crown Castle Contract. The Debtors shall pay Crown Castle in advance of each upcoming month based on the Debtors' historical average monthly usage (subject to any true up based on actual usage). Crown Castle shall have the right to terminate any agreement with the Debtors pursuant to the notice and termination provisions set forth in the applicable Crown Castle Contracts, including any cure period for a breach (with notice being provided via email to Rian Branning (rbranning@novo-advisors.com), counsel for the Debtors, and counsel to the Purchaser), provided that Crown Castle first files a motion for relief from the automatic stay with this Court), and Crown Castle shall have any and all rights under the applicable Crown Castle Contracts in the event of such termination. The Debtors agree not to oppose any motion for expedited consideration of such a motion for relief of the automatic stay, provided that any expedited hearing is on at least five (5) business days' notice to the Debtors Unless otherwise specified in this paragraph, the Debtors shall comply with the applicable Crown Castle Contracts in all respects relating to Crown Castle, including complying with the Debtors' insurance obligations. Crown Castle retains any and all rights to assert claims against the Debtors' estates. The Court hereby retains jurisdiction to hear and determine any disputes or claims between or among the Debtors, Crown Castle, and any Purchaser(s) of the Debtors' assets.

46.     <u>Automatic Stay</u>.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified to the extent necessary, without further order of the Court, to allow the Purchaser to deliver any notice provided for in the Asset Purchase Agreement and to take any and all actions permitted or required under the Asset Purchase Agreement in accordance with the terms and conditions thereof.

47.    <u>No Stay of Order</u>.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 and any applicable Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.  The provisions of this Order shall be self-executing. Time is of the essence in implementing the Asset Purchase Agreements and closing the Sale Transaction.

48.    <u>Governing Terms</u>.  To the extent there is any inconsistency between the terms of this Order and the terms of the Asset Purchase Agreement, the terms of this Order shall govern.

49.    <u>Wind-Down Reserve</u>.  Cash proceeds derived from the sale of the Assets will be used by the Debtors to fund the Wind-Down Reserve in accordance with the provisions of the Interim Order and Final DIP Order.

50.    <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order and the Asset Purchase Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith; and (b) decide any issues or disputes concerning this Order, the Asset Purchase Agreement or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions and provisions hereof and thereof, and the status, nature and extent of the Assets and the Purchased Contracts.

-36-

51.    The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

**Dated: March 3rd, 2023**
**Wilmington, Delaware**                    -37-

**J. KATE STICKLES**
**UNITED STATES BANKRUPTCY JUDGE**