## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| GIGAMONSTER NETWORKS, LLC, *et al.*,[1] | ) | Case No. 23-10051 (JKS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**Objection Deadline: September 6, 2023 at 4:00 p.m. (ET)**
**Hearing Date: September 13, 2023 at 2:00 p.m. (ET)**

### DEBTORS' OMNIBUS MOTION SEEKING ENTRY OF AN ORDER (I) AUTHORIZING THE REJECTION OF CERTAIN EXECUTORY CONTRACTS, EACH EFFECTIVE AS OF THE REJECTION DATES, AND (II) GRANTING RELATED RELIEF

> **THIS MOTION SEEKS TO REJECT CERTAIN EXECUTORY CONTRACTS. PARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR NAMES AND UNEXPIRED EXECUTORY CONTRACTS IN THE SCHEDULE ATTACHED AS SCHEDULE 1 TO EXHIBIT A OF THIS MOTION.**

The above-captioned debtors and debtors in possession (the "Debtors") file this motion (the "Motion") pursuant to sections 105(a) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 6006 (the "Bankruptcy Rules") for entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the rejection of the executory contracts listed on **Schedule 1** to the Order, including any including amendments, modifications, addenda, or supplements thereto (collectively, the "Contracts"), with the counterparties to the Contracts (the "Counterparties"), effective as of the applicable rejection dates identified in **Exhibit A** to the Order (each, a "Rejection Date" and

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: GigaMonster Networks, LLC (2854); Gigasphere Holdings LLC (0250); GigaMonster, LLC (3014); Fibersphere Communications LLC (0163); and Fibersphere Communications of California LLC (5088). The Debtors' business address is 350 Franklin Gateway, Suite 300, Marietta, GA 30067.

collectively, the "Rejection Dates").  In support of the Motion, the Debtors respectfully state as follows:

## Jurisdiction and Venue

1.  The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The bases for the relief requested herein are sections 105(a), 365(a), and 554(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6004, 6006, and 6007 and Bankruptcy Local Rule 9013-1.

## Background

4.  On January 16, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases are

DOCS_DE:244348.1

procedurally consolidated and jointly administered pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  On January 30, 2023, Andrew R. Vara, United States Trustee for Region Three (the "U.S. Trustee"), appointed an official committee of unsecured creditors (the "Committee") [Docket No. 78].

5.      Prior to the Petition Date, the Debtors developed and deployed universal access networks ("UANs") in multi-family and commercial real estate properties, providing internet, video, and other network services to approximately 400 customer properties and nearly 35,000 end-user subscribers.  The Debtors' differentiated UAN platform enabled seamless connectivity across all internet devices, mobile devices, nonstandard computing devices that connect wirelessly to a network, and smart home devices.  Through the use of a common network in a building, the Debtors provided connectivity solutions such as energy tools, smart door locks, and security systems.  The Debtors' best-in-class sales, marketing, and customer care practices drove strong relationships with property owners and resulted in top subscriber satisfaction.

6.      Additional background regarding the Debtors, including their business operations and the events precipitating their chapter 11 filings, is set forth in the *Declaration of Rian Branning in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 3].

7.      The Debtors filed their statements of financial affairs and schedules of assets and liabilities (the "Schedules") with the Court on February 13, 2023.  The statutory meeting of creditors under section 341 of the Bankruptcy Code was conducted on February 23, 2023.

8.      On January 17, 2023, the Debtors filed the *Motion of the Debtors for Entry of Orders:  (I)(A) Approving Bidding Procedures of the Sale of the Stalking Horse Assets and Other Assets, (B) Authorizing the Debtors to Enter Into the Stalking Horse Agreement for Stalking Horse Assets and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the*

3

*Form and Manner of Notice Thereof, (D) Approving the Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 12] (the "Sale Motion").

9.      On February 8, 2023, the Court entered the *Order (I) Approving Bidding Procedures and Bid Protections in Connection with the Sale of the Stalking Horse Assets and Other Assets, (II) Scheduling Bid Deadlines and the Auction, (III) Approving Form and Manner of Notice Thereof, and (IV) Granting Related Relief* [Docket No. 113] (the "Bidding Procedures Order").

10.     On February 28, 2023, pursuant to the Bidding Procedures Order, the Debtors conducted an Auction (the "Auction") for the Stalking Horse Assets, as modified at the Auction. At the conclusion of the Auction, the Debtors declared SkyWire Holdings, Inc. ("SkyWire") as the Successful Bidder for the Stalking Horse Assets.  *See* Docket No. 215.

11.     On March 3, 2023, the Court entered the order approving the Sale to SkyWire [Docket No. 235] (the "Sale Order") and approving the Asset Purchase Agreement dated March 1, 2023 (the "SkyWire APA") between the Debtors and SkyWire.  On March 14, 2023, the Sale to SkyWire closed.

12.     The Debtors have continued liquidating their assets and winding down their affairs. The Debtors have obtained approval for certain de minimis asset sales.  *See* Docket Nos. 325, 390, 442, 461, and 462.  In addition, pursuant to approved procedures [Docket No. 326], the Debtors have also rejected various executory contracts and unexpired leases that are no longer needed for the estates.  *See* Docket Nos. 415, 470, 506.

**Contracts to Be Rejected**

13.    Through this Motion, the Debtors seek to reject a certain subset of their executory contracts primarily related to master service agreements with certain circuit providers.

14.    The Debtors have determined in their business judgment and in consultation with their advisors that the costs incurred under the Contracts constitute an unnecessary drain on the Debtors' already limited resources and such Contracts are no longer needed by any other purchaser of the Debtors' assets.  The transactional costs and postpetition carrying costs associated with marketing the Contracts exceed any potential benefit that may be realized from potential assignments.  Accordingly, in an effort to reduce postpetition administrative costs and in the exercise of the Debtors' business judgment, the Debtors believe that the rejection of the Contracts, as set forth on **Schedule 1** attached to **Exhibit A**, effective as of the Rejection Date, is in the best interests of the Debtors, their estates, and all parties in interest.

**Basis for Relief**

I.    **Rejection of the Contracts Effective as of the Rejection Dates Is Appropriate and Provides the Debtors with Significant Cost Savings.**

15.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor.  *See Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)); *see also Glenstone Lodge, Inc. v. Buckhead Am. Corp. (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (Bankr. D. Del. 1995).  Application of the business judgment standard requires a court to approve a debtor's business decision unless the decision is

the product of bad faith, whim, or caprice. *See Lubrizol Enters., Inc. v. Richmond Metal Finishes*, 756 F.2d 1043, 1047 (4th Cir. 1985). Further, "[t]his provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citation omitted).

16.    Rejection of an unexpired contract or lease is appropriate where such rejection would benefit the estate. *See Sharon Steel Corp. v. Nan Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 39–40 (3d Cir. 1989). Upon finding that a debtor has exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of its creditors and all parties in interest, a court should approve the rejection under section 365(a). *See In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re Bradlees Stores, Inc.*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996), *appeal dismissed*, 210 B.R. 506 (S.D.N.Y. 1997); *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtors' decision to assume or reject an executory contract "should be granted as a matter of course").

17.    The Contracts are not a source of potential value for the Debtors' estates or stakeholders. Each rejected Contract provides services that the Debtors no longer need or utilize, resulting in a waste of the Debtors' resources. Accordingly, the Debtors have determined that the Contracts are an unnecessary drain on the Debtors' resources and, therefore, rejection of the Contracts reflects the Debtors' exercise of sound business judgment.

## II.    This Court Should Deem the Contracts Rejected as of the Rejection Dates.

18.    Section 365 of the Bankruptcy Code does not restrict a bankruptcy court from applying rejection retroactively. *See In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (stating that section 365 does not include "restrictions as to the manner in which the court can

6

approve rejection"); *see also In re CCI Wireless, LLC*, 297 B.R. 133, 138 (D. Colo. 2003) (noting that section 365 "does not prohibit the bankruptcy court from allowing the rejection . . . to apply retroactively"). Courts have held that a bankruptcy court may, in its discretion, authorize rejection retroactively to a date prior to entry of an order authorizing such rejection where the balance of equities favors such relief. *See In re Thinking Machs. Corp.*, 67 F.3d 1021, 1028–29 (1st. Cir. 1995) (stating "rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively"); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (stating "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)"); *CCI Wireless*, 297 B.R. at 140 (holding that a "court has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject"); *BP Energy Co. v. Bethlehem Steel Corp.*, 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) ("We cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution."); *see also In re At Home Corp.*, 392 F.3d 1064, 1065-66 (9th Cir. 2004) (holding "that a bankruptcy court may approve retroactively the rejection of an unexpired nonresidential lease").

19.    Here, the balance of equities favors rejection of the Contracts effective as of the Rejection Date. Without such relief as to the Contracts, the Debtors will potentially incur unnecessary administrative expenses related to agreements that provide no benefit to the Debtors' estates. *See* 11 U.S.C. § 365(d)(3). The counterparties to the Contracts will not be unduly prejudiced if the rejection is deemed effective as of the Rejection Date. Contemporaneously with the filing of this Motion, the Debtors will cause notice of this Motion to be served on the Contract

counterparties, thereby allowing each party sufficient opportunity to respond accordingly.  The Debtors have sought the relief requested at the earliest possible time after they determined that the services provided under the Contracts are no longer necessary, and the Debtors do not seek to reject the Contracts effective as of the Rejection Date due to any undue delay on their own part.

20.     Courts in this jurisdiction have approved relief similar to that requested herein. *See, e.g.*, *In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. July 19, 2023) (authorizing rejection of unexpired leases *nunc pro tunc* to petition date); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) (authorizing rejection of unexpired leases *nunc pro tunc* to petition date); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Sept. 19, 2019) (authorizing rejection of unexpired leases and executory contracts *nunc pro tunc* to specified dates); *In re Charming Charlie Holdings, Inc.*, No. 17-12906 (CSS) (Bankr. D. Del. Jan. 10, 2018) (authorizing rejection of unexpired leases *nunc pro tunc* to specified date); *In re Samson Resources Corporation*, No. 15-11934 (CSS) (Bankr. D. Del. Sept. 2, 2016) (same); *In re Dex Media, Inc.*, No. 16-11200 (KG) (Bankr. D. Del. June 8, 2016) (authorizing rejection of unexpired leases and executory contracts *nunc pro tunc* to petition date).

21.     Accordingly, the Debtors respectfully submit that the Court should deem the Contracts identified on **Schedule 1** to **Exhibit A** attached hereto rejected, effective as of the Rejection Dates listed on **Schedule 1**.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

22.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

8

**Notice**

23.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) counsel to the Prepetition Lenders; (d) the Contract counterparties listed on **Schedule 1** to **Exhibit A**; and (e) all persons who have requested notice pursuant to Bankruptcy Rule 2002

**No Prior Request**

24.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated:  August 22, 2023                   PACHULSKI STANG ZIEHL & JONES LLP

                                          */s/ Laura Davis Jones*
                                          Laura Davis Jones (DE Bar No. 2436)
                                          David M. Bertenthal (CA Bar No. 167624)
                                          Timothy P. Cairns (DE Bar No. 4228)
                                          919 North Market Street, 17th Floor
                                          P.O. Box 8705
                                          Wilmington, Delaware  19899 (Courier 19801)
                                          Telephone:  (302) 652-4100
                                          Facsimile:   (302) 652-4400
                                          Email:  ljones@pszjlaw.com
                                                  dbertenthal@pszjlaw.com
                                                  tcairns@pszjlaw.com

                                          *Counsel for the Debtors and Debtors in Possession*