IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| GIGAMONSTER NETWORKS, LLC, *et al.*,[1] | ) ) ) | Case No. 23-10051 (JKS) |
| Debtors. | ) ) ) ) | (Jointly Administered) |

Hearing Date: March 27, 2024, at 11:00 a.m. ET
Objection Deadline: March 20, 2024, at 4:00 p.m. ET

**DEBTORS' FOURTH MOTION FOR AN ORDER EXTENDING THE
EXCLUSIVE PERIODS DURING WHICH DEBTORS MAY FILE A PLAN AND
DISCLOSURE STATEMENT AND SOLICIT ACCEPTANCES THEREOF
PURSUANT TO 11 U.S.C. § 1121(d)**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move the Court (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"): (i) further extending the period during which the Debtors have the exclusive right to file a plan (the "Exclusive Filing Period") by ninety one (91) days from March 11, 2024 through and including June 10, 2024; and (ii) further extending the period during which the Debtors have the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusive Periods") from May 13, 2024 through and including August 12, 2024. In support of the Motion, the Debtors respectfully state as follows:

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: GigaMonster Networks, LLC (2854); Gigasphere Holdings LLC (0250); GigaMonster, LLC (3014); Fibersphere Communications LLC (0163); and Fibersphere Communications of California LLC (5088). The Debtors' business address is 350 Franklin Gateway, Suite 300, Marietta, GA 30067.

DE:4882-2334-6599.3 31213.001

**JURISDICTION AND VENUE**

1. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are sections 105(a) and 1121(d) of the Bankruptcy Code.

**BACKGROUND**

4. On January 16, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases are procedurally consolidated and jointly administered pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On

January 30, 2023, Andrew R. Vara, United States Trustee for Region Three (the "U.S. Trustee"), appointed an official committee of unsecured creditors (the "Committee") [Docket No. 78].

5.  Prior to the Petition Date, the Debtors developed and deployed universal access networks ("UANs") in multi-family and commercial real estate properties, providing internet, video, and other network services to approximately 400 customer properties and nearly 35,000 end-user subscribers. The Debtors' differentiated UAN platform enabled seamless connectivity across all internet devices, mobile devices, nonstandard computing devices that connect wirelessly to a network, and smart home devices. Through the use of a common network in a building, the Debtors provided connectivity solutions such as energy tools, smart door locks, and security systems. The Debtors' best-in-class sales, marketing, and customer care practices drove strong relationships with property owners and resulted in top subscriber satisfaction.

6.  Additional background regarding the Debtors, including their business operations and the events precipitating their chapter 11 filings, is set forth in the *Declaration of Rian Branning in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 3].

7.  The Debtors filed their statements of financial affairs and schedules of assets and liabilities (the "Schedules") with the Court on February 13, 2023. The statutory meeting of creditors under section 341 of the Bankruptcy Code was conducted on February 23, 2023.

8.  On January 17, 2023, the Debtors filed the *Motion of the Debtors for Entry of Orders: (I)(A) Approving Bidding Procedures of the Sale of the Stalking Horse Assets and Other Assets, (B) Authorizing the Debtors to Enter Into the Stalking Horse Agreement for Stalking Horse Assets and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving the Assumption and*

*Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 12] (the "Sale Motion").[2]

9. On February 8, 2023, the Court entered the *Order (I) Approving Bidding Procedures and Bid Protections in Connection with the Sale of the Stalking Horse Assets and Other Assets, (II) Scheduling Bid Deadlines and the Auction, (III) Approving Form and Manner of Notice Thereof, and (IV) Granting Related Relief* [Docket No. 113] (the "Bidding Procedures Order").

10. On February 28, 2023, pursuant to the Bidding Procedures Order, the Debtors conducted an Auction (the "Auction") for the Stalking Horse Assets, as modified at the Auction. At the conclusion of the Auction, the Debtors declared SkyWire Holdings, Inc. ("SkyWire") as the Successful Bidder for the Stalking Horse Assets. *See* Docket No. 215.

11. On March 3, 2023, the Court entered the order approving the Sale to SkyWire [Docket No. 235] (the "Sale Order") and approving the Asset Purchase Agreement dated March 1, 2023 (the "SkyWire APA") between the Debtors and SkyWire. On March 14, 2023, the Sale to SkyWire closed.

12. On April 18, 2023, the Court entered an order setting the general claims bar date for May 31, 2023, at 5:00 p.m. (ET), the governmental bar date for July 17, 2023, at 5:00 p.m. (ET), and an administrative claims bar date for May 31, 2023, at 5:00 p.m. (ET) [Docket No. 328] (the "Bar Date Order").

---

[2]  A capitalized term used but not defined herein shall have the meaning ascribed to it in the Sale Motion.

13. On April 25, 2023, the Debtors filed their first motion to extend the Exclusive Periods [Docket No. 340]. On May 16, 2023, the Court entered an order approving the first motion to extend the Exclusive Periods [Docket No. 367].

14. On September 8, 2023, the Debtors filed their second motion to extend the Exclusive Periods [Docket No. 527]. On September 27, 2023, the Court entered an order approving the second motion to extend the Exclusive Periods [Docket No. 551].

15. On December 12, 2023, the Debtors filed their second motion to extend the Exclusive Periods [Docket No. 623]. On December 27, 2023, the Court entered an order approving the third motion to extend the Exclusive Periods [Docket No. 643] (the "Third Extension Order").

## RELIEF REQUESTED

16. By this Motion, the Debtors seek to extend the Exclusive Filing Period for an additional 91 days, from March 11, 2024 through and including June 10, 2024, and to extend the Exclusive Solicitation Period for an additional 91 days, from May 13, 2024, through and including August 12, 2024. The Debtors further request that the order be without prejudice to their right to seek additional extensions of the Exclusive Periods for cause in accordance with section 1121(d) of the Bankruptcy Code.

## BASIS FOR RELIEF

17. Section 1121 of the Bankruptcy Code provides for exclusive periods in which a chapter 11 debtor may formulate and propose a confirmable plan of reorganization or liquidation and to solicit acceptances thereof without the disruption that might be caused by the filing of competing plans by non-debtor parties. However, section 1121(d) allows the court to extend the debtor's exclusive periods for "cause." Specifically, section 1121(d) provides that:

> (1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of

> this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>
> (2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>
> (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

**I.    Section 1121(d) of the Bankruptcy Code Permits the Court to Extend the Exclusive Periods for "Cause."**

18. A bankruptcy court has the discretion to extend a debtor's exclusive periods based upon the facts and circumstances of a particular case. *See First Am. Bank of New York v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *203 N. LaSalle St. P'ship v. Bank of Am., N.A.*, No. 99 C 7110, 1999 U.S. Dist. LEXIS 19425, at *12 (N.D. Ill. 1999); *In re Mid-State Raceway, Inc.*, 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005); *In re Reetz*, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). Although the Bankruptcy Code does not define "cause" for purposes of an extension request under section 1121(d), courts have looked to the legislative history of section 1121(d) for guidance. *See In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989); *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). Such legislative history indicates that Congress did not intend that the initial exclusive periods be set in stone. *See Amko Plastics*, 197 B.R. at 77 (finding that courts should have flexibility in dealing with extensions of exclusivity); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of . . . [section 1121(d)] is flexibility.").

19. Instead, Congress intended that the debtor's exclusive periods be of sufficient length to afford the debtor a full and fair opportunity to negotiate, formulate, and draft a

confirmable chapter 11 plan without the disruptions that would occur with the filing of competing plans. *See Geriatrics Nursing Home, Inc. v. First Fidelity Bank, N.A.*, 187 B.R. 128, 133 (D.N.J. 1995) ("The opportunity to negotiate its plan unimpaired by competition . . . is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business."). Indeed, Congress has recognized that, depending on the facts and circumstances of a particular case, an exclusive period of only 120 days may not provide a debtor with adequate time in which to propose such plan:

> The court is given the power, though, to increase . . . the 120-day period depending on the circumstances of the case. [T]he bill allows the flexibility for individual cases that is not available today. For example, if an unusually large company were to seek reorganization under chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement.

H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (footnotes omitted).

20. In determining whether cause exists for an extension of exclusivity, bankruptcy courts consider a variety of factors, including:

a) the size and complexity of the case;

b) the necessity of sufficient time to negotiate and prepare adequate information;

c) the existence of good faith progress toward reorganization;

d) whether the debtor is paying its debts as they come due;

e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

f) whether the debtor has made progress in negotiating with creditors;

g) the length of time the case has been pending;

h) whether the debtor is seeking the extension to pressure creditors; and

i) whether unresolved contingencies exist.

*See, e.g.*, *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *Cont'l Cas. Co. v. Burns & Roe Enters., Inc.*, No. 05-2529 (KSH), 2005 U.S. Dist. LEXIS 26247, at *11–12 (D.N.J. 2005); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *In re Dow Corning Corp.*, 208 B.R. 661, 664–65 (Bankr. E.D. Mich. 1997).

21. Importantly, however, not all of the above factors are necessary or relevant in determining whether to grant an extension of the exclusivity periods in a particular case. *See, e.g.*, *In re Express One Int'l, Inc.*, 194 B.R. 98, 100–01 (Bankr. E.D. Tex. 1996) (relying upon only four factors in determining whether cause exists to support an extension); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that cause existed to extend exclusivity based on only three factors). As explained more fully below, the application of the above factors to the facts and circumstances of these chapter 11 cases demonstrates that good cause exists to extend the Debtors' Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

## II. Cause Exists for an Extension of the Debtors' Exclusive Periods.

22. Pursuant to this Motion, the Debtors are seeking a further extension of the Exclusive Periods. For the reasons set forth below, cause exists for such an extension.

23. The Debtors satisfy the various factors that courts rely on in connection with granting extensions of the Exclusive Periods as set forth in section 1121(d) of the Bankruptcy Code.

- *The Debtors Have Made Good-Faith Progress.* Since the Third Extension Order, the Debtors have: (a) continued winddown efforts; and (b) continued to negotiate and resolve open cure issues following the Court's approval of the SkyWire sale.

- *Extending the Exclusivity Periods Will Not Prejudice Creditors.* Since the Third Extension Order, the Committee and Barings Asset-Based Income Fund (US) LP ("Barings"), the prepetition agent, have reached a settlement of the pending adversary proceeding filed by the Committee against Barings

[Adv. Pro. No. 23-50404] (the "UCC-Barings Adversary"). The Debtors, the Committee, and Barings have reached agreement in principle on the terms of a chapter 11 plan and are finalizing documentation. The combined disclosure statement and plan (the "Combined DS/Plan") will incorporate the settlement reached in the UCC-Barings Adversary. Pending the Court's approval and confirmation of the Combined DS/Plan, continued exclusivity will permit the Debtors to maintain flexibility so that a competing plan by another third party does not derail the parties' efforts to confirm the Combined DS/Plan. All stakeholders will benefit from such continued stability and predictability.

- *The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan.* Since the Third Extension Order, as noted above, the Debtors, the Committee, and Barings have reached agreement on the terms of a chapter 11 plan and expect to file the Combined DS/Plan in the near term..

- *The Debtors Are Not Pressuring Creditors by Requesting an Extension of the Exclusive Periods.* The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods. The requested relief is not being sought to pressure the Debtors' creditors, and the Debtors submit that no pressure would result from the requested extension of the Exclusive Periods.

- *The Chapter 11 Cases Are Approximately Thirteen Months Old.* The Debtors' request for a further extension of the Exclusive Periods is the Debtors' fourth such request and comes approximately thirteen months after the Petition Date. As discussed above, during this short time, the Debtors have accomplished a great deal and are working toward the goal of confirming their filed Combined DS/Plan.

24. Moreover, termination of the Exclusive Periods would adversely impact the substantial progress made by the Debtors in the chapter 11 cases to date and the Debtors' efforts to confirm the Combined DS/Plan.

25. Accordingly, the Debtors submit that good cause exists to extend the Exclusive Periods and request that the Court grant the Motion.

**NOTICE**

26. The Debtors have provided notice of this Motion to the following parties, or their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) counsel to the Prepetition Lenders; and (d) all persons who have requested notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice of this Motion is required.

WHEREFORE, the Debtors respectfully request that this Court enter an Order granting the Motion and granting such other and further relief as the Court deems just and proper.

Dated: March 8, 2024              PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
        dbertenthal@pszjlaw.com
        tcairns@pszjlaw.com

*Counsel for the Debtors and Debtors in Possession*